1  CAMPEAU GOODSELL SMITH, L.C.
   SCOTT L. GOODSELL, #122223
2  WILLIAM J. HEALY, #146158
   440 N. 1st Street, Suite 100
3  San Jose, California   95112
   Telephone:   (408) 295-9555
4  Facsimile:   (408) 295-6606

5  ATTORNEYS FOR Debtors

6

7

8                          UNITED STATES BANKRUPTCY COURT

9                          NORTHERN DISTRICT OF CALIFORNIA

10

11  IN RE:                              )   Case No. 09-51900 ASW
                                        )
12  BENYAM and PAULA R. MULUGETA,       )   CHAPTER 11
                                        )   R.S. No. RKN/001
13                        Debtors.      )   R.S. No. RKN/002
                                        )
14                                      )
                                        )
15                                      )
                                        )
16                                      )
                                        )
17  _____    )

18            **OPPOSITION TO MOTION FOR RELIEF FROM STAY**

19          Debtors BENYAM and PAULA R. MULUGETA (jointly "Debtors" ) submit this

20  opposition to the Motion For Relief From Automatic Stay filed by Sterling Savings Bank

21  ("Sterling") regarding Debtor's real property located at 353 Grand Avenue, Oakland, CA

    94601 (A.P.N. 010-0767-001) ("Grand") and Debtor's real property located at 240 O'Keefe,
22
    Palo Alto, CA 94303 (A.P.N. 063-441-260) ("O'Keefe") as follows:
23
24  **I.    The Motions Must Be Denied Because They Were Served On Other Secured
            Creditors And The Largest 20 Unsecured Creditors In Compliance With B.R.
25          4001 and 1007 and B.L.R. 4001-1.**

26          Pursuant to Bankruptcy Rule 4001 "A motion for relief from an automatic stay
27
    provided by the Code . . . shall be made in accordance with Rule 9014 and shall be served on
28

---

OPPOSITION TO MOTION FOR RELIEF FROM STAY

. . .a chapter 11 reorganization case and no committee of unsecured creditors has been appointed . . . on the creditors included on the list filed pursuant to Rule 1007 (d)[1], and on such other entities as the court may direct." In short, the 20 largest creditors must receive notice of a motion for relief from stay.

Debtors initially filed a List of 20 Largest Unsecured Creditors on March 18, 2008 (Docket No. 5), weeks before Sterling's motions were filed. Sterling's motions were not served on any creditors (Docket Nos. 35 and 43).

Accordingly, Sterling's motions must be denied because they were not served in accordance with B.R. 4001-1 and 1007 (d) and B.L.R. 4001-1.

## II.     The Court Should Require Service Of Any Motions For Relief From Stay On Junior Secured Creditors.

The Court should also, in addition to the 20 largest unsecured creditors, require service of any motions for relief from stay on junior secured creditors. The interests of the junior lien holders in a particular property or particular properties may be significantly affected by an order granting relief from the stay to the holder of a senior lien so they should receive notice of any motions for relief from stay.

Sterling's motions for relief from stay significantly affect several junior secured creditors, namely California Mortgage Fund or CMR (aka CMR Mortgage Fund II, LLC), Tomoko Nakama, and Robert Taylor[2].

According to Debtors' schedules (Schedule D) California Mortgage holds a blanket lien on several of Debtors' properties, including Grand and O'Keefe (as well as Sevier, Chaucer, and Brann), Tomoko Nakama has a lien against Grand (although Sterlin's motion list her as having liens against both Grand and O'Keefe), and Robert Taylor has a lien against O'Keefe (although Sterling's motion does not list him).

These junior secured creditors, in addition to the 20 largest unsecured creditors should

---

[1] List of 20 largest Creditors.

[2] Robert Taylor, according to Debtor's schedules (Schedule D)

Case: 09-51900    Doc# 64    Filed: 04/21/09    Entered: 04/21/09 15:30:03    Page 2 of 9

receive notice of Sterling's motions so the have the opportunity to assert their rights which would be affected by the motions.

### A. Debtors' Note That CMR Mortgage Fund II, LLC File Chapter 11 Voluntary Petition On March 31, 2009 (USBC CA #09-30788).

Debtors note that CMR Mortgage Fund II, LLC, holder of secured claims against the Debtors, filed a Chapter 11 Voluntary Petition for bankruptcy on March 31, 2009, with the Honorable Thomas E. Carlson presiding.

Debtors' submit that the automatic stay generated by CMR Mortgage Fund II, LLC's filing may directly impact Sterling's rights to affect CMR Mortgage Fund II, LLC's rights and remedies against the Debtors and at a minimum entitles that formal notice of these motions is sent.

### III. The Court Should Deny The Motions Through Its Equitable Powers As They Are Premature.

The motions seek premature relief from stay before Debtors have had any opportunity to retain counsel, take a breath, and develop and pursue a plan and thereby deny Debtors the fundamental protection afforded by bankruptcy.

Debtors commenced this case on March 18, 2009, first retained counsel on April 2, 2009, submitted to an Initial Debtor Interview on April 16, 2009, and have their Meeting of Creditors scheduled for April 22, 2009.

One of the primary purposes of the automatic stay is to give "the debtor a breathing spell form its creditors" and "permit "the debtor to attempt a repayment or reorganization plan'. Dean v. Trans World Airlines, Inc., 72 F.3d 754 (9th Cir. 1995); see also In re LPM Corp., 300 F.3d 1134, 1137 (9th Cir. 2002) (The automatic stay "grants the debtor breathing room and provides time to attempt reorganization.")

Section 105 of the Bankruptcy Code, entitled Power of Court, provides, in pertinent part:

"(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this time provided

for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." . . .
(d) The court, on its own motion or on the request of a party in interest, (1) shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case; and (2) unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically . ."

Unless the Court denies the motions the Debtors, and various of their secured and unsecured creditors, will be denied the fundamental protection and purpose of bankruptcy and the opportunity to take a breath, develop a plan, and pursue a plan to reorganize themselves and pay their creditors.

In the bankruptcy setting, the court balances the following factors: there be a danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize; second a reasonable likelihood of successful reorganization; a balance the relative harm as between the debtor and the creditor who would be restrained; and the public interest-public interest in successful bankruptcy reorganization and other  societal interest. (In re Monroe Well Serv., Inc. 67 B.R. 746, 752-53 Bankr. E.D. Pa. 1986) In applying this standard it "is important to recognize that the four considerations are factors to be balanced and not prerequisites that must be satisfied . . . These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." American Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 963 F.2d 855, 859 (6th Cir. 1992) (citations omitted) As a consequence, the overwhelming presence of one of the factors may lead a court to issue, or to deny, an injunction without a particularly strong showing on the others." American Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 963 F.2d 855, 860 (6th cir. 1992) The balance of harms considers evidence as to whether creditor sought to be enjoined has other avenues to pursue relief, and the impact on that creditor by delay.

Debtor submits that the balance of equities weighs so heavily in Debtors' favor that the Court must exercise its equitable powers and deny the motions. If the motions are granted and Sterling is allowed to proceed then not only will the Debtors suffer, but their creditors will suffer significant harm and Debtors's ability to reorganize will be severely jeopardized.

**IV.   Debtors Are Entitled To A Full Evidentiary Hearing After Discovery.**

Debtors are entitled to a full evidentiary hearing on the issues asserted by Sterling after discovery, namely discovery regarding the actual value of the properties and the confirmation of secured creditors potential affected by these motions.

**A. Debtors Are Entitled To A Complete Copy Of The Appraisals And Discovery Related To The Appraisals Not Just Limited And Selected Portions.**

Sterling's motion includes selected portions of appraisals done on Grand by Hulberg & Associates (only pages 1-11 of at least 56 pages plus a series of addendums are attached to motion) and on O'Keefe by Hulberg & Associates (only pages 1-9 of at least 52 pages plus a series of addendums are attached to the motion).

On April 9, 2009 and on April 10, 2009, Debtors' counsel requested Sterling's counsel provide complete copies of both appraisal reports, but has not received any response or cooperation from Sterling's counsel.

In addition, Debtors have noted a difference between the secured creditors identified in their schedules and those referenced in Sterling's motions asserting liens against Grand and against O'Keefe and believe this issue must be clarified before proceeding further.

Further, Debtor notes some areas of concern relative to the limited portions of the appraisal for Grand, in particular Grand was purchased in March 2002 for $2,100,000.00, was appraised by Sterling in March 2004 at $2,510,000.00 when it was approximately 80% occupied and generating approximately $16,000-$17,000/month in rent revenue, was appraised by Sterling (Holberg & Associates) in December 2008 when it was almost vacant; and now that the sole remaining tenant was evicted Debtors anticipate, after some repairs, the property will be occupied and generate approximately $27,500/month in rent revenue. Also, the limited portions of the Grand appraisal attached to Sterling's motion reference

Case: 09-51900   Doc# 64   Filed: 04/21/09   Entered: 04/21/09 15:30:03   Page 5 of 9

three different appraisal values (page 2):

"As If Completed and Stabilized": $3,380,000

"As If Completed": $3,160,000

"As Is": $1,960,000

Debtors' submit Grand has, using the appraisals own terminology, a value of $3,160,000 or $3,380,000.

Debtor also noted similar concerns relative to O'Keefe. For example, Debtor's schedules list the value of O'Keefe at $2,800,000 based on Debtors' own valuation and two offers from sophisticated commercial property owners, including a July 2007 purchase contract with Page Mill Properties, LLC. at $2,800,000.

Debtors submit that some basic discovery relative to the value of Grand and O'Keefe are in order.

**B. Sterling Has Significant Equity In Grand And In O'Keefe And Both Are Necessary Elements To Debtors' Reorganization Plans.**

Sterling's motions attempt to argue there is not equity in Grand and in O'Keefe and as such are not necessary to Debtors' reorganization plan. Debtors' reject Sterling's claims and submit that the junior secured creditors and unsecured creditors will agree once they receive notice of Sterling's claims.

Sterling's own motions, using the valuations reflected by Sterling's appraisals, reveal that Sterling has significant equity in Grand and in O'Keefe.

As to Grand, Sterling asserts a valuation between $1,960,000 "As Is", $3,160,000 "As If Completed", and $3,380,000 "As If Completed and Stabilized". Thus, assuming Sterling is correct that its debt claim is $1,787,414.02[3] and using the lowest presented valuation, there is at approximately $200,000 in equity above Sterling's lien. Debtor's submit the value is significantly greater than $1,960,000 and Sterling's appraiser concurs.

As to O'Keefe, Sterling's outdated valuation still confirms that there is equity to

_____

[3]Debtors have maintained insurance on all of their properties and have not yet confirmed the exact figures owed to Sterling.

Sterling's position (proposed valuation of $2,180,000.00 debt $1,666,135.55).

Grand and O'Keefe are necessary elements to Debtors' potential plans for reorganization, necessary to pay various secured creditors, and potentially necessary to pay unsecured creditors and part of Debtors' real estate portfolio which they are committed to maintain.

### C. The Junior Secured And Unsecured Creditors' Positions Are Jeopardized By Sterling's Motions For Relief.

Sterling's position as to Grand and as to O'Keefe are secure with sufficient equity cushions even adopting the values asserted in their outdated appraisals, but the junior secured and unsecured creditors' positions and returns are jeopardized by Sterling's motions for relief.

The junior secured and various unsecured creditors' positions will suffer immediate harm if relief was granted to Sterling at this time.

Further, as California Mortgage is cross collateralized on several properties its rights relative to Grand and O'Keefe directly impact the return to secured creditors on other properties and payment to unsecured creditors.

### V. Summary Background Regarding Debtors, The Cause Of The Bankruptcy, And Debtors' Anticipated Plan.

Debtors are the owners of seven (7) distinct residential and commercial properties, generally described as follows: Harker (Debtors' residence-a five bedroom 3 bath property located in Palo Alto); Harrison (a five story, 156 room hotel located in Oakland); Grand (a four story twenty one unit apartment building with associated commercial units); O'Keefe (a twenty unit apartment building located in East Palo Alto), Chaucer (two single family homes (duplex) located in Berkeley); Sevier (a single family residence located in Menlo Park used as a rental property; and Brann (a single family home used as a rental).

Debtors commenced this bankruptcy for two primary reasons: first, the conversion the hotel at Harrison increased Debtors' debt, impacted their cash flow, and drained resources and second, the primary lender on Harrison, immediately upon learning of a pending sale and escrow for Harrison at $7,000,000, significantly more than its first lien of approximately

$3,500,000, moved for appointment of a receiver.

Harrison was purchased by Debtors' in approximately April 2002 for $4,100,000. Thereafter, in order to maximize the potential value of the hotel and property, Debtors' investigated several options which were subject to the City of Oakland's restrictions. Debtors' elected to develop the Harrison hotel to a similar, albeit slightly different use, but the City of Oakland required the property to be empty for one year. Debtors pursued this development opportunity in light of the potential return on the investment and increase to the property's value.

The cost of this development and the vacancy required by the City of Oakland impacted Debtors' income, cash flow at all properties, and drained resources.

Recently, Debtors entered into a contract to sell Harrison for $7,000,000 to Trading Spaces, LLC, an operator of assisted living facilities, as part of series of real estate purchases by Trading Spaces, LLC and with an appraised "as is" value of $8,100,000 and a projected value after renovation at $14,310,000 (April 17, 2009). In February 2009, Debtors received a similar purchase offer at $9,000,000, subject to other terms and conditions relating to construction costs. In addition, Debtors are negotiating a potential long term lease of Harrison, one to the Veterans Association ("VA") and to one of the potential purchasers. The potential terms of the lease opportunities allows Debtors to maintain ownership of the property, receive approximately $500,000 in cash, become cash flow positive, and propose a plan to reorganize their debts and exit bankruptcy.

**VI. Debtors Acknowledge That They Must Attribute Property Income To Property Related Debtors And Anticipate Full Payments To Sterling On And After June 1, 2009.**

Debtors acknowledge that the property income must be attributed to property related debts. Debtors anticipate full payments to Sterling on Grand and on O'Keefe commencing June 1, 2009 and thereafter. Debtors have provided the United States Trustee and will provide Sterling with related rent rolls for Grand and O'Keefe.

**IV. Conclusion.**

Debtors submit the motions are defective as notice was not provided as required by law,

Case: 09-51900    Doc# 64    Filed: 04/21/09    Entered: 04/21/09 15:30:03    Page 8 of 9

1    notice should be sent to affected junior secured creditors in addition to the unsecured

2    creditors, the motions are premature, Debtors' submit Sterling has equity above its secured

3    claims and related discovery and a full hearing will so establish, Debtors' anticipate making

4    full monthly payments to Sterling commencing June 1, 2009 and thereafter, and good cause

5    does not exist to grant relief from stay at this time.

6    Dated: April 21, 2009       /s/ William J. Healy_____
                             William J. Healy

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 09-51900    Doc# 64    Filed: 04/21/09    Entered: 04/21/09 15:30:03    Page 9 of 9