CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California   95112
Telephone:   (408) 295-9555
Facsimile:   (408) 295-6606

ATTORNEYS FOR Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | Case No. 09-51900 ASW |
| BENYAM and PAULA R. MULUGETA, | CHAPTER 11 |
| Debtors. | Date: May 26, 2009<br>Time: 2:00 p.m.<br>Room: 3020 |
| | Judge: The Honorable Arthur Weissbrodt |

**STATUS CONFERENCE STATEMENT**

Debtors BENYAM and PAULA R. MULUGETA (jointly "Debtors" ) submit this Status Conference Statement.

**I.  Summary Background Regarding Debtors, The Cause Of The Bankruptcy, And Debtors' Anticipated Plan.**

Debtors are the owners of seven (7) distinct residential and commercial properties, generally described as follows:

*Harker (Debtors' residence-a 5 bedroom 3 bath property located in Palo Alto);

*Harrison (a 5 story, 156 room hotel located in Oakland);

*Grand (a four story 21-unit apartment building with associated commercial units);

*O'Keefe (a 21-unit apartment building located in East Palo Alto);

* Chaucer (2 single family homes (duplex) located in Berkeley);

\*Sevier (a single family residence located in Menlo Park used as a rental property); and

\*Brann (a single family home used as a rental).

Debtors commenced this bankruptcy for two primary reasons: first, the conversion the hotel at Harrison increased Debtors' debt, impacted their cash flow, and drained resources and second, the primary lender on Harrison, immediately upon learning of a pending sale and escrow for Harrison at $7,000,000, significantly more than its first lien of approximately $3,500,000, moved for appointment of a receiver. In addition, Debtors were also subject to impending trustee sales on their two other properties

Harrison was purchased by Debtors' in approximately April 2002 for $4,100,000. Thereafter, in order to maximize the potential value of the hotel and property, Debtors' investigated several options which were subject to the City of Oakland's restrictions. Debtors' elected to develop the Harrison hotel to a similar, albeit slightly different use, but the City of Oakland required the property to be empty for one year. Debtors pursued this development opportunity in light of the potential return on the investment and increase to the property's value.

The cost of this development and the vacancy required by the City of Oakland impacted Debtors' income, cash flow at all properties, and drained resources.

**A. Bankruptcy.**

Debtors commenced this case on March 18, 2009, first retained counsel on April 2, 2009, submitted to an Initial Debtor Interview on April 16, 2009, and had their Meeting of Creditors scheduled for April 22, 2009. Debtors will be filing monthly operating reports and amended schedules and providing the United States Trustee with request information.

**B. Sale/Lease of Harrison Hotel.**

Pre-petition Debtors entered into a contract to sell the Harrison hotel for $7,000,000 to Trading Spaces, LLC, an operator of assisted living facilities, as part of series of real estate purchases by Trading Spaces, LLC and with an appraised "as is" value of $8,100,000 and a projected value after renovation at $14,310,000 (April 17, 2009). Debtors believe that Trading Spaces, LLC has the ability to close this transaction.

Debtors anticipate filing a motion to sell the Harrison hotel to Trading Spaces, LLC

within the next week. Debtors have remained in contact with Trading Spaces, LLC which appears to have completed its due diligence and is securing its financing.

Debtors anticipate approximately $3,000,000 in net proceeds from the sale of the Harrison hotel. Debtors anticipate using the sale proceeds to address its post-petition and pre-petition arrearages and debts and exiting bankruptcy by way of a dismissal or plan.

In February 2009, Debtors received a similar purchase offer at $9,000,000, subject to other terms and conditions relating to construction costs.

In addition, Debtors are negotiating a potential long term lease of Harrison, one to the Veterans Association ("VA") and to one of the potential purchasers. The potential terms of the lease opportunities allows Debtors to maintain ownership of the property, receive approximately $500,000 in cash, become cash flow positive with estimated monthly rents revenue of $45,000, and propose a plan to reorganize their debts and exit bankruptcy.

**C. Debtors' Status On Grand (a four story 21-unit apartment building with associated commercial units) and O'Keefe (a 21-unit apartment building located in East Palo Alto).**

As to Grand, Debtors have been working diligently to ready Grand for leasing/renting, anticipate making their June payment on Grand, and anticipate making subsequent payment on Grand. Grand should generate approximately $27,500 a month against an approximate $10,000 first mortgage. Grand was purchased in March 2002 for $2,100,000.00, was appraised by the lender in March 2004 at $2,510,000.00 when it generating approximately $16,000-$17,000/month in rent revenue and was appraised in December 2008 by the lender (Holberg & Associates, appraiser) in December 2008. Although the lender has refused to provide a complete copy of the December 2008 appraisal, the limited portions of the appraisal reference three different appraisal values: "As If Completed and Stabilized": $3,380,000; "As If Completed": $3,160,000; and "As Is": $1,960,000. Debtors' submit Grand has, using the appraisals own terminology, a value of $3,160,000 or $3,380,000.

As to O'Keefe, Debtors have been working diligently on renting O'Keefe, have the various units rented, and on May 14, 2009, Debtors attempted to make a post-petition

payment on O'Keefe, but the lender refused to accept payment. O'Keefe should generate approximately $21,000 a month against an approximate $9,500 monthly first mortgage. Debtor's schedules list the value of O'Keefe at $2,800,000 based on Debtors' own valuation and two offers from sophisticated commercial property owners, including a July 2007 purchase contract with Page Mill Properties, LLC. at $2,800,000. Debtors' lender secured an appraisal at $2,180,000.00.

Grand and O'Keefe are necessary elements to Debtors' potential plans for reorganization, necessary to pay various secured creditors, and potentially necessary to pay unsecured creditors and part of Debtors' real estate portfolio which they are committed to maintain.

**E. Debtors Have Several Junior Secured Creditors On The Various Properties.**

Debtors have various junior creditors on the various properties, including CMR Fund II, LLC, (file a Chapter 11 Voluntary Petition for bankruptcy on March 31, 2009, the Honorable Thomas E. Carlson presiding, USBC CA #09-30788)[1], Tomoko Nakama, and Robert Taylor.

Debtors have opposed and will oppose motions for relief from stay to protect their investments, protect the equity and cash flows associated with these properties, and protect the interest of these various junior secured creditors. A foreclosure sale relative to Debtors' properties, including Grand and O'Keefe will severely jeopardize Debtors' ability to pay their junior creditors.

Debtors anticipate paying these junior creditors from the lease/rent proceeds and/or sale of property(ies).

**F. Other Actions By Debtors.**

Debtors are working with the lenders on their residence for loan modification in order to address associated payment obligations. Debtors are working diligently to lease/rent available units and become cash flow positive sufficient to once again timely making

---

[1] Apparently Bay View Asset Services, LLC took assignment of CMR's rights

**STATUS CONFERENCE STATEMENT**
4
Case: 09-51900    Doc# 79    Filed: 05/22/09    Entered: 05/22/09 10:56:21    Page 4 of 5

1  required payments.

**II. Recommendation.**

Debtors recommend the Court continue the Status Conference for 60-90 days so Debtors can file the motion to sell the Harrison hotel, continue to increase lease/rent revenue, become cash flow positive, and either move to dismiss this case or submit a formal plan of reorganization.

Dated: May 21, 2009  /s/ William J. Healy
William J. Healy