CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California 95112
Telephone: (408) 295-9555
Facsimile: (408) 295-6606

ATTORNEYS FOR Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | Case No. 09-51900 ASW |
| BENYAM and PAULA R. MULUGETA, | CHAPTER 11 |
| Debtors. | Date: July 1, 2009 |
| | Time: 1:45 p.m. |
| | Room: 3020 |
| | Place: United States Bankruptcy Court |
| | 280 S. First St. Room 3020 |
| | San Jose, CA 95113 |
| | Judge: The Honorable Arthur Weissbrodt |

**DECLARATION OF WILLIAM J. HEALY RE: MOTION TO SELL REAL PROPERTY ("Harrison") FREE AND CLEAR OF LIENS**

I, William J. Healy, do hereby declare:

1. I, William J. Healy, do hereby declare:

2. I am an attorney at law duly licensed to practice before all the courts of the State of California and several districts and divisions of the United States District Court in the State of California, including this court. I am a member of the law firm of Campeau Goodsell Smith ("CGS"), attorney herein for Debtors and involved in the above entitled bankruptcy.

3. I submit his declaration of my own personal knowledge except as to those matters upon which I am informed and believe and as to those matters I am informed and believe them to be true. If called to testify as to the matters stated herein I could do so in an honest and competent manner. By

way of this declaration I do not intend to waive any attorney client or work product privileges.

4. I submit this declaration in support of Debtors Benyam and Paula R. Mulugeta's ("Debtors") motion to sell Debtors' real property commonly known as 2332 Harrison Street, Oakland, CA (Assessor Parcel Number (A.P.N.) 010-0769-005-00 ("Merrit Hotel[1]" or "The Property"), and as described herein, pursuant to Bankruptcy Code 363 (f), 363 (f)(1), (2), (4), and (5), Bankruptcy Code 506, 506 (d), and Bankruptcy Rule 6004, free and clear of all liens.

5. Attached hereto as Exhibit A is a Commercial Property Purchase Agreement And Joint Escrow Instructions dated February 12, 2009 ("Purchase Agreement") whereby Debtors have agreed to sell Debtors' real property commonly known as 2332 Harrison Street, Oakland, CA to Trading Spaces, LLC for $7,000,000.00.

6. According to Debtors' schedules, Debtors are the owners of seven (7) distinct residential and commercial properties, generally described as follows:

*Harker (Debtors' residence-a 5 bedroom 3 bath property located in Palo Alto); *Harrison (a 5 story, 156 room hotel located in Oakland);

*Grand (a four story 21-unit apartment building with associated commercial units);

*O'Keefe (a 21-unit apartment building located in East Palo Alto);

*Chaucer (2 single family homes (duplex) located in Berkeley);

*Sevier (a single family residence located in Menlo Park used as a rental property); and

*Brann (a single family home used as a rental).

7. According to Debtors' schedules and other pleadings before this Court, Debtors commenced this bankruptcy because the conversion the hotel at Harrison increased Debtors' debt, impacted their cash flow, and drained resources. Harrison was purchased by Debtors' in approximately April 2002 for $4,100,000. Thereafter, in order to maximize the potential value of the hotel and property, Debtors' investigated several options which were subject to the City of Oakland's restrictions. Debtors' elected to develop the Harrison hotel to a similar, albeit slightly different use, but the City of Oakland required the property to be empty for one year. Debtors pursued this development

---

[1] Debtors and Debtors' counsel recognize Merritt is spelled incorrectly throughout, but has done so purposely to match the spelling contained in the Purchase Agreement.

**DECLARATION OF WILLIAM J. HEALY RE: MOTION TO SELL REAL PROPERTY ("Harrison") FREE AND CLEAR OF LIENS**
2
Case: 09-51900   Doc# 83-3   Filed: 05/29/09   Entered: 05/29/09 17:10:23   Page 2 of 20

opportunity in light of the potential return on the investment and increase to the property's value. The cost of this development and the vacancy required by the City of Oakland impacted Debtors' income, cash flow at all properties, and drained resources.

8. Debtors commenced this case on March 18, 2009 and first retained counsel on April 2, 2009.

9. According to Debtors' schedules and other pleadings on file with this Court, pre-petition Debtors entered into a contract to sell the Harrison property for $7,000,000 to Trading Spaces, LLC, an operator of assisted living facilities, as part of series of real estate purchases by Trading Spaces, LLC and with an appraised "as is" value of $8,100,000 and a projected value after renovation at $14,310,000 (April 17, 2009). Debtors believe that Trading Spaces, LLC has the ability to close this transaction. This transaction is part of series of real estate purchases by Trading Spaces, LLC, in connection with Argent Asset Management Inc. with a total monetary value of $81,000,000 for the six purchases. Debtors have continued progress towards closure of this transaction.

10. I have spoken directly with Mark Patton, Buyer's broker and confirmed that funding is no longer a contingency, remaining contingencies should be formally removed by June 2, 2009, and the matter is moving towards closing and should close promptly.

11. I have also spoke with Ronald Morgan, CEO of Argent Asset Management Inc., Buyer's financier, and confirmed that the Buyer's funding was approved and the transaction moving towards closure.

12. Debtors' schedules and information provided to the Court during this bankruptcy indicate Debtors' primary business is real estate and, as indicated above, own and operated several commercial properties in the Bay Area; Debtor Benyam Mulugeta is also a real estate professional; Debtors, pre-petition and post-petition investigated the marketing and sale of their properties to determine value and in order to pay their creditors; and Debtors considered various proposals for the purchase or lease of their properties for purposes of determining potential value and in order to pay their creditors. Further, Debtors' believe the price and terms of the Purchase Agreement appear commercially reasonable and for reasonable value and is the highest and best offer for prompt payment to creditors and Buyer appears ready, willing, and able to perform on the Purchase Agreement.

13. Debtors' schedules and information provided to the Court during this bankruptcy indicate that in February 2009, Debtors received a similar purchase offer at $9,000,000, subject to other terms and conditions relating to construction costs. Debtors were in contract, the first transaction appeared superior, and the first transaction's buyer appeared to have the ability to close and had secured financing. In addition, Debtors have negotiated, but not accepted, the terms of a potential long term lease of Harrison, to the Veterans Association ("VA") and to another party (also a potential purchaser). The potential terms of a lease opportunity would allow Debtors to maintain ownership of the property, receive approximately $500,000 in cash, become cash flow positive, propose a plan to reorganize their debts, and exit bankruptcy.

14. At the time of commencement of this case and according to Debtors' schedules and other information, Debtors appeared to have the following secured claims relative to The Property:

| | | |
|---|---|---|
| (1) Lone Oak Fund, LLC | | $3,500,000.00 |
| (2) Robert Taylor | | $ 200,000.00 |
| (3) Tomoko Nakama | | $ 185,000.00 |
| (4) Aglala Panos | | $ 250,000.00. |
| Estimated Total[2]: | | $4,135,000.00 |

I declare under penalty of perjury under the laws of the United States Of America that the foregoing is true and correct and executed this 29th day of May 2009, in San Jose, California

    /s/ William J. Healy
    William J. Healy
    Attorneys For Debtors

---

[2]These figures are estimated.

# EXHIBIT A

# COMMERCIAL PROPERTY PURCHASE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS
(NON-RESIDENTIAL)
(C.A.R. Form CPA, Revised 10/02)

**CALIFORNIA ASSOCIATION OF REALTORS®**

Date **February 12, 2009**, at **SAN LORENZO**, California.

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** **TRADING SPACES LLC Gary G. Gornick Managing Member** ("Buyer").
      ☐ Individual(s), ☐ A Corporation, ☐ A Partnership, ☒ An LLC, ☒ An LLP, or ☐ Other _____.
   B. **THE REAL PROPERTY TO BE ACQUIRED** is described as **MERRIT HOTEL** **2332 HARRISON STR**, Assessor's Parcel No. **010-0768-005-00**, situated in **OAKLAND**, County of **ALAMEDA**, California, ("Property").
   C. **THE PURCHASE PRICE** offered is **Seven Million** Dollars $ **7,000,000.00**.
   D. **CLOSE OF ESCROW** shall occur on **90 DAYS OR SOONER** (date) (or ☒ **90** Days After Acceptance).

2. **FINANCE TERMS:** Obtaining the loans below **is a contingency** of this Agreement unless: (i) either 2L or 2M is checked below; or (ii) otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs **is not a contingency**. Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Buyer has given a deposit in the amount of .............................. $ **1,000.00**
      to the agent submitting the offer (or to ☐ **OLD REPUBLIC TITLE COMPANY**), by Personal Check
      (or ☐ _____), made payable to **OLD REPUBLIC TITLE COMPANY**,
      which shall be held uncashed until Acceptance and then deposited within **3** business days after Acceptance or ☐ _____,
      with Escrow Holder, or ☐ into Broker's trust account.
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of .. $ _____
      within ____ Days After Acceptance, or ☐ _____.
   C. **FIRST LOAN IN THE AMOUNT OF** ........................................................... $ _____
      NEW First Deed of Trust in favor of ☐ Lender, ☐ Seller,
      OR ☐ ASSUMPTION of (or ☐ "subject to") Existing First Deed of Trust encumbering the Property, securing a note payable at maximum interest of _____ % fixed rate, or _____ % initial adjustable rate with a maximum interest rate of _____ %, balance due in _____ years, amortized over _____ years. (If checked: ☐ and with a margin not to exceed _____ %, tied to the following index _____.) Buyer shall pay loan fees/points not to exceed _____.
      Additional terms _____.
   D. **SECOND LOAN IN THE AMOUNT OF** ....................................................... $ _____
      NEW Second Deed of Trust in favor of ☐ Lender, ☐ Seller,
      OR ☐ ASSUMPTION of (or ☐ "subject to") Existing Second Deed of Trust encumbering the Property, securing a note payable at maximum interest of _____ % fixed rate, or _____ % initial adjustable rate with a maximum interest rate of _____ %, balance due in _____ years, amortized over _____ years. (If checked: ☐ and with a margin not to exceed _____ %, tied to the following index: _____.) Buyer shall pay loan fees/points not to exceed _____.
      Additional terms _____.
   E. **ADDITIONAL FINANCING TERMS:** ......................................................... $ _____
   F. **BALANCE OF PURCHASE PRICE** (not including costs of obtaining loans and other closing costs) in the amount of ... $ **6,999,000.00**
      to be deposited with Escrow Holder within sufficient time to close escrow.
   G. **PURCHASE PRICE (TOTAL):** ........................................................... $ **7,000,000.00**
   H. **LOAN APPLICATIONS:** Within 7 (or ☐ ____) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified above.
   I. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 2H) shall, within 7 (or ☐ ____) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
   J. **LOAN CONTINGENCY REMOVAL:** (i) Within 17 (or ☐ ____) Days After Acceptance Buyer shall, as specified in Paragraph 17, remove the loan contingency or cancel this Agreement; OR (ii) (if checked) ☐ loan contingency shall remain in effect until the designated loans are funded.
   K. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (OR, if checked, ☐ is NOT) contingent upon the Property appraising at no less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, ☒ within 17 (or **60**) Days After Acceptance), Buyer shall, as specified in paragraph 17, remove the appraisal contingency or cancel this Agreement. If there is no loan contingency, Buyer shall, as specified in paragraph 17, remove the appraisal contingency within 17 (or ____) Days After Acceptance.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
CPA REVISED 10/02 (PAGE 1 OF 10)

Buyer's Initials (_____)(_____)
Seller's Initials (_____)(_____)
Reviewed by _____ Date _____

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 1 OF 10)**

| Agent: Mark Patton | Phone: (510)7949922 | Fax: (510) | Prepared using WINForms® software |
|---|---|---|---|
| Broker: Realty World-Viking Realty | 360 Thornton Ave | Fremont | CA 94536 |

Property Address: *MERRIT HOTEL OAKLAND , CA 94513*      Date: *February 12, 2009*

- L. ☐ **NO LOAN CONTINGENCY** (If checked): Obtaining any loan, in paragraphs 2C, 2D, 2E or elsewhere in this Agreement, is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
- M. ☒ **ALL CASH OFFER** (If checked): No loan is needed to purchase the Property. Buyer shall, within 7 (or ☐ __21__ ) Days After Acceptance, provide Seller written verification of sufficient funds to close this transaction.
- N. **SELLER FINANCING:** For any Seller financing designated above, Buyer is to execute a note secured by a deed of trust in favor of Seller, on the terms and conditions set forth in the attached addendum (C.A.R. Form SFA).
- O. **ASSUMED OR "SUBJECT TO" FINANCING:** Seller represents that Seller is not delinquent on any payments due on any loans. Seller shall, within the time specified in paragraph 17, provide Copies of all applicable notes and deeds of trust, loan balances and current interest rates to Buyer. Buyer shall then, as specified in paragraph 17, remove this contingency or cancel this Agreement. Differences between estimated and actual loan balances shall be adjusted at Close Of Escrow by cash down payment. Impound accounts, if any, shall be assigned and charged to Buyer and credited to Seller. Seller is advised that Buyer's assumption of an existing loan may not release Seller from liability on that loan. If the Property is acquired subject to an existing loan, Buyer and Seller are advised to consult with legal counsel regarding the ability of an existing lender to call the loan due, and the consequences thereof.

3. **CLOSING AND OCCUPANCY:**
   A. **Seller-Occupied or Vacant Units:** Occupancy shall be delivered to Buyer at __4__ ☐ AM ☒ PM, ☒ on the date of Close Of Escrow; ☐ on _____ ; or ☐ no later than _____ Days After Close Of Escrow. (C.A.R. Form PAA, paragraph 2.) If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: **(i)** enter into a written occupancy agreement; and **(ii)** consult with their insurance and legal advisors.
   B. **Tenant-Occupied Units:** Possession and occupancy, subject to the rights of tenants under existing leases, shall be delivered to Buyer on Close Of Escrow.
   C. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.
   D. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If the Property is a unit in a condominium or located in a common-interest subdivision, Buyer may be required to pay a deposit to the Owners' Association ("OA") to obtain keys to accessible OA facilities.

4. **SECURITY DEPOSITS:** Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the Civil Code.

5. **ALLOCATION OF COSTS** (if checked): Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service is by the method specified in paragraph 17.
   A. **INSPECTIONS AND REPORTS:**
     (1) ☐ Buyer ☐ Seller shall pay for sewer connection, if required by Law prior to Close Of Escrow __N/A__ .
     (2) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal system inspected __N/A__ .
     (3) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity __N/A__ .
     (4) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by *SELLER CHOICE* .
     (5) ☒ Buyer ☐ Seller shall pay for the following inspection or report *TERMITE INSPECTIONS* .
     (6) ☒ Buyer ☐ Seller shall pay for the following inspection or report *PROPERTY AND ROOF ISPECTIONS* .
   B. **GOVERNMENT REQUIREMENTS AND RETROFIT:**
     (1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
     (2) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law.
     (3) ☐ Buyer ☒ Seller shall pay for installation of approved fire extinguisher(s), sprinkler(s), and hose(s), if required by Law, which shall be installed prior to Close Of Escrow. Prior to Close Of Escrow Seller shall provide Buyer a written statement of compliance, if required by Law.
   C. **ESCROW AND TITLE:**
     (1) ☒ Buyer ☐ Seller shall pay escrow fee *OLD REPUBLIC TITLE COMPANY* .
       Escrow Holder shall be *OLD REPUBLICK TITLE COMPANY* .
     (2) ☒ Buyer ☐ Seller shall pay for **owner's** title insurance policy specified in paragraph 16 _____
       Owner's title policy to be issued by *OLD REPUBLICK TITLE COMPANY* .
       (Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)
   D. **OTHER COSTS:**
     (1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee _____
     (2) ☒ Buyer ☒ Seller shall pay City transfer tax or transfer fee *50/50*
     (3) ☐ Buyer ☐ Seller shall pay OA transfer fees *N/A*
     (4) ☐ Buyer ☐ Seller shall pay OA document preparation fees *N/A*
     (5) ☐ Buyer ☐ Seller shall pay for _____
     (6) ☐ Buyer ☐ Seller shall pay for _____

Buyer's Initials ( ____ )( ____ )
Seller's Initials ( ____ )( ____ )
Reviewed by _____ / Date _____



Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 2 OF 10)**

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 2 OF 10)**

Case: 09-51900 Doc# 83 Filed: 04/03/09 Entered: 04/03/09 07:10:23 Page 7 of NTWO
20

Property Address: *MERRIT HOTEL OAKLAND, CA 94513*      Date: *February 12, 2009*

## 6. SELLER DISCLOSURES:

**A. NATURAL AND ENVIRONMENTAL DISCLOSURES:** Seller shall, within the time specified in paragraph 17, if required by Law: **(i)** deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; **(ii)** even if exempt from the obligation to provide an NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**B. ADDITIONAL DISCLOSURES:** Within the time specified in paragraph 17, Seller shall provide to Buyer, in writing, the following disclosures, documentation and information:

**(1) RENTAL SERVICE AGREEMENTS: (i)** All current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; and **(ii)** a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates, or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any concession, rebate, or other benefit, except as set forth in these documents.

**(2) INCOME AND EXPENSE STATEMENTS:** The books and records, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.

**(3) ☐ TENANT ESTOPPEL CERTIFICATES:** (If checked) Tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: **(i)** that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); **(ii)** that no lessor defaults exist; and **(iii)** stating the amount of any prepaid rent or security deposit.

**(4) SURVEYS, PLANS AND ENGINEERING DOCUMENTS:** Copies of surveys, plans, specifications and engineering documents, if any, in Seller's possession or control.

**(5) PERMITS:** If in Seller's possession, Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.

**(6) STRUCTURAL MODIFICATIONS:** Any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.

**(7) GOVERNMENTAL COMPLIANCE:** Any improvements, additions, alterations or repairs made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.

**(8) VIOLATION NOTICES:** Any notice of violations of any Law filed or issued against the Property and actually known to Seller.

**(9) MISCELLANEOUS ITEMS:** Any of the following, if actually known to Seller: **(i)** any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property, or the right to use and occupy it; **(ii)** any unsatisfied mechanic's or materialman's lien(s) affecting the Property; and **(iii)** that any tenant of the Property is the subject of a bankruptcy.

## 7. ☒ ENVIRONMENTAL SURVEY (If checked): Within _____7_____ Days After Acceptance, Buyer shall be provided a phase one environmental survey report paid for and obtained by ☐ Buyer ☐ Seller. Buyer shall then, as specified in paragraph 17, remove this contingency or cancel this Agreement.

## 8. CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:

**A. SELLER HAS: 7 (or ☐ _____ ) Days** After Acceptance to disclose to Buyer whether the Property is a condominium, or located in a planned unit development or other common interest subdivision.

**B.** If Property is a condominium, or located in a planned unit development or other common interest subdivision, Seller has **3 (or ☐ _____ ) Days** After Acceptance to request from the OA (C.A.R. Form HOA): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the OA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of OA minutes for regular and special meetings; and **(v)** the names and contact information of all OA's governing the Property. (Collectively, "CI Disclosures.") Seller shall itemize and deliver to Buyer all CI Disclosures received from the OA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 17.

## 9. SUBSEQUENT DISCLOSURES: In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

## 10. CHANGES DURING ESCROW:

**A.** Prior to Close Of Escrow, Seller may only engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 17: **(i)** rent or lease any vacant unit or other part of the premises; **(ii)** alter, modify, or extend any existing rental or lease agreement; **(iii)** enter into, alter, modify or extend any service contract(s); or **(iv)** change the status of the condition of the Property.

**B.** At least **7 (or ☐ _____ ) Days** prior to any Proposed Changes, Seller shall give written notice to Buyer of any Proposed Changes.

Buyer's Initials (_____)(_____)
Seller's Initials (_____)(_____)
Reviewed by _____ Date _____



Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 3 OF 10)

COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 3 OF 10)

Property Address: *MERRIT HOTEL OAKLAND, CA 94513*      Date: *February 12, 2009*

**11. CONDITIONS AFFECTING PROPERTY:**
   A. Unless otherwise agreed: **(i)** the **Property is sold (a)** in its **PRESENT** physical condition as of the date of Acceptance and **(b) subject to Buyer's Investigation rights; (ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.
   B. **SELLER SHALL,** within the time specified in paragraph 17, **DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS** affecting the Property, including known insurance claims within the past five years, **AND MAKE OTHER DISCLOSURES REQUIRED BY LAW.**
   C. **NOTE TO BUYER:** You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.
   D. **NOTE TO SELLER:** Buyer has the right to inspect the Property and, as specified in paragraph 17, based upon information discovered in those inspections: **(i)** cancel this Agreement; or **(ii)** request that you make Repairs or take other action.

**12. ITEMS INCLUDED AND EXCLUDED:**
   A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 12B or C.
   B. **ITEMS INCLUDED IN SALE:**
      (1) All **EXISTING** fixtures and fittings that are attached to the Property.
      (2) Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms.
      (3) A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 17.
      (4) Seller represents that all items included in the purchase price are, unless otherwise specified, owned by Seller. Within the time specified in paragraph 17, Seller shall give Buyer a list of fixtures not owned by Seller.
      (5) Seller shall deliver title to the personal property by Bill of Sale, free of all liens and encumbrances, and without warranty of condition.
      (6) As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.
   C. **ITEMS EXCLUDED FROM SALE:** _____

**13. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   A. Buyer's acceptance of the condition of, and any other matter affecting the Property is a contingency of this Agreement, as specified in this paragraph and paragraph 17. Within the time specified in paragraph 17, Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: **(i)** inspect for lead-based paint and other lead-based paint hazards; **(ii)** inspect for wood destroying pests and organisms; **(iii)** confirm the insurability of Buyer and the Property; and **(iv)** satisfy Buyer as to any matter of concern to Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations; or **(ii)** inspections by any governmental building or zoning inspector, or government employee, unless required by Law.
   B. Buyer shall complete Buyer Investigations and, as specified in paragraph 17, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make Property available for all Buyer Investigations. Seller shall have water, gas, electricity, and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

**14. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of receipts and statements to Buyer prior to final verification of condition.

**15. BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** Repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

Buyer's Initials ( _____ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 4 OF 10)
**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 4 OF 10)**   BRENTWOOD

Case: 09-51900   Doc#: 83-3   Filed: 05/29/09   Entered: 05/29/09 17:10:23   Page 9 of 20

Property Address: *MERRIT HOTEL OAKLAND , CA 94513* Date: *February 12, 2009*

## 16. TITLE AND VESTING:
  A. Within the time specified in paragraph 17, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 17.
  B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
  C. Within the time specified in paragraph 17, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
  D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
  E. Buyer shall receive a standard coverage owner's CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

## 17. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:
The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).
  A. SELLER HAS: 7 (or ☐ _____ ) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 5, 6A and B, 8A, 11B, 12B (3) and (4) and 16.
  B. BUYER HAS: 17 (or ☒ _60_ ) Days After Acceptance, unless otherwise agreed in writing, to:
    (1) Complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 6 and insurability of Buyer and the Property).
    (2) Within the time specified in 17B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.
    (3) By the end of the time specified in 17B(1) (or 2J for loan contingency or 2K for appraisal contingency), Buyer shall remove, in writing, the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if the following inspections, reports or disclosures are not made within the time specified in 17A, then Buyer has **5 (or ☐ _____ ) Days** after receipt of any such items, or the time specified in 17B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing: (i) government-mandated inspections or reports required as a condition of closing; (ii) Common Interest Disclosures pursuant to paragraph 8B; (iii) a subsequent or amended disclosure pursuant to paragraph 9; (iv) Proposed Changes pursuant to paragraph 10B; and (v) environmental survey pursuant to paragraph 7.
  C. CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:
    (1) **Seller right to Cancel: Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in the Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow in time may be a breach of this Agreement.
    (2) **Continuation of Contingency:** Even after the expiration of the time specified in 17B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 17C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 17C(1).
    (3) **Seller right to Cancel: Buyer Contract Obligations:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 2A or 2B; (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2H; (iv) if Buyer fails to provide verification as required by 2I or 2M; or (v) if Seller reasonably disapproves of the verification provided by 2I or 2M. **Seller is not required to give Buyer a Notice to Perform regarding Close Of Escrow.**
    (4) **Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall (i) be in writing; (ii) be signed by Seller and (iii) give Buyer at least 24 (or ☐ _____ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than **2 Days** Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel the Agreement or meet an 17C(3) obligation.
  D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility, and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )
Reviewed by _____ Date _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 5 OF 10)

COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 5 OF 10) BRENTWOOD

Property Address: *MERRIT HOTEL OAKLAND , CA   94513*            Date: *February 12, 2009*

- E. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, less fees and costs, to the party entitled to the funds. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award.**

18. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) **Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11A; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement.

19. **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: **(i)** Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; **(ii)** Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; **(iii)** Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and **(iv)** Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

20. **AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer's or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

21. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.**

    Buyer's Initials ____/____      Seller's Initials ____/____

22. **DISPUTE RESOLUTION:**
    - A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 22B(2) and (3) below apply to mediation whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action.THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
    - B. **ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 22B(2) and (3) below.The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of real estate transactional Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law.The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.**
    (2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: **(i)** a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in Civil Code §2985; **(ii)** an unlawful detainer action; **(iii)** the filing or enforcement of a mechanic's lien; and **(iv)** any matter that is within the jurisdiction of a probate, small claims, or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.
    (3) **BROKERS:** Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 22A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

Buyer's Initials ( ____ )( ____ )
Seller's Initials ( ____ )( ____ )
Reviewed by _____ Date _____



Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 6 OF 10)
COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 6 OF 10)
BRENTWOOD

Property Address: *MERRIT HOTEL OAKLAND , CA 94513*  Date: *February 12, 2009*

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials _MYY_ / _____    Seller's Initials ___ / ___

23. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interests in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld, unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement.
24. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.
25. **COPIES:** Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.
26. **NOTICES:** Whenever notice is given under this Agreement, each notice shall be in writing, and shall be delivered personally, by facsimile, or by mail, postage prepaid. Notice shall be delivered to the address set forth below the recipient's signature of acceptance. Either party may change its notice address by providing notice to the other party.
27. **AUTHORITY:** Any person or persons signing this Agreement represent(s) that such person has full power and authority to bind that person's principal, and that the designated Buyer and Seller has full authority to enter into and perform this Agreement. Entering into this Agreement, and the completion of the obligations pursuant to this contract, does not violate any Articles of Incorporation, Articles of Organization, ByLaws, Operating Agreement, Partnership Agreement or other document governing the activity of either Buyer or Seller.
28. **GOVERNING LAW:** This Agreement shall be governed by the Laws of the state of California.
29. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.
30. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Form AS).
31. **MULTIPLE LISTING SERVICE/PROPERTY DATA SYSTEM:** If Broker is a participant of a Multiple Listing Service ("MLS") or Property Data System ("PDS"), Broker is authorized to report to the MLS or PDS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS or PDS.
32. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local antidiscrimination Laws.
33. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the nonprevailing Buyer or Seller, except as provided in paragraph 22A.
34. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.
35. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

Buyer's Initials ( _MYY_ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 7 OF 10)



COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 7 OF 10)    BRENTWOOD

Property Address: MERRIT HOTEL OAKLAND, CA 94513       Date: February 12, 2009

**36. OTHER TERMS AND CONDITIONS**, including attached supplements:
   A. ☒ Buyer Inspection Advisory (C.A.R. Form BIA)
   B. ☐ Seller Financing Addendum and Disclosure (C.A.R. Form SFA)
   C. ☒ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _____ )
   D. ☐ Buyer Intent To Exchange Supplement (C.A.R. Form BES)
   E. ☐ Seller Intent to Exchange Supplement (C.A.R. Form SES)
   F. COMMISSION TO REALTY WORLD- VIKING 3.25%
   G. ALL ITEMS PERSONAL BUSINESS AND PURCHASE FOR REMODEL WILL STAY.
   SEE ADDENDUM #1

**37. DEFINITIONS:** As used in this Agreement:
   A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with this offer or a final counter offer.
   B. **"Agreement"** means the terms and conditions of this accepted Commercial Property Purchase Agreement and any accepted counter offers and addenda.
   C. **"C.A.R. Form"** means the specific form referenced, or another comparable form agreed to by the parties.
   D. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
   E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
   F. **"Days"** means calendar days, unless otherwise required by Law.
   G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
   H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   I. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either one to modify or alter the content or integrity of the Agreement without the knowledge and consent of the other.
   J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
   K. **"Notice to Buyer to Perform"** means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (**or as otherwise specified in paragraph 17C(4)**) to remove a contingency or perform as applicable.
   L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications and retrofitting of the Property provided for under this Agreement.
   M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.
   N. **Singular and Plural** terms each include the other, when appropriate.

**38. BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultations and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify, defend, and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representations in this paragraph.

**39. AGENCY:**
   A. **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
   Listing Agent _____ MULUGETA DEVELOPMENT _____ (Print Firm Name) is the agent
   of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
   Selling Agent _____ REALTY WORLD-VIKING _____ (Print Firm Name) (if not same as Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
   Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

Buyer's Initials ( ) ( )
Seller's Initials ( ) ( )
Reviewed by _____ Date _____



Property Address: *MERRIT HOTEL OAKLAND, CA 94513*      Date: *February 12, 2009*

### 40. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:
**A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 5, 16, 17E, 29, 30, 35, 36B-F, 37, 40, 42, 45A, 46 and paragraph D of the section titled Real Estate Broker on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 42 or 45A, or paragraph D of the section titled Real Estate Broker on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

**B.** A Copy of this Agreement shall be delivered to Escrow Holder within **3** business days after Acceptance (or ☐ _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

**C.** Brokers are a party to the Escrow for the sole purpose of compensation pursuant to paragraphs 42, 45A and paragraph D of the section titled Real Estate Broker on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 42 and 45A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow, or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: **(i)** if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**D.** A Copy of any amendment that affects any paragraph for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

### 41. SCOPE OF BROKER DUTY:
Buyer and Seller acknowledge and agree that: Brokers: **(i)** do not decide what price Buyer should pay or Seller should accept; **(ii)** do not guarantee the condition of the Property **(iii)** do not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** shall not be responsible for identifying defects that are not known to Broker(s); **(v)** shall not be responsible for inspecting public records or permits concerning the title or use of the Property; **(vi)** shall not be responsible for identifying location of boundary lines or other items affecting title; **(vii)** shall not be responsible for verifying square footage, representations of others or information contained in inspection reports, MLS or PDS, advertisements, flyers or other promotional material, unless otherwise agreed in writing; **(viii)** shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller in the course of this representation; and **(ix)** shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

### 42. BROKER COMPENSATION FROM BUYER:
If applicable, upon Close Of Escrow, **Buyer** agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

### 43. TERMS AND CONDITIONS OF OFFER:
This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

### 44. EXPIRATION OF OFFER:
This offer shall be deemed revoked and the deposit shall be returned, unless the offer is Signed by Seller, and a Copy of the Signed offer is personally received by Buyer, or by _____ *AGENT* _____, who is authorized to receive it by 5:00 PM on the third Day after this offer is signed by Buyer (OR, if checked ☒ by *February 16, 2009* (date), at **4** ☐ AM ☒ PM).

Buyer *TRADING SPACES LLC Gary G. Gornick*
By *Gary G Gornick*     Date *February 11, 2009*
Print name *Gary G. Gornick Managing Member*
Address _____ City *SAN LORENZO* State *CA* Zip *97580*
Telephone _____ Fax _____ E-mail _____

Buyer _____
By _____ Date _____
Print name _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____
Notice Address, If Different _____

Buyer's Initials ( *GG* )( ____ )
Seller's Initials ( ____ )( *PM* )

Reviewed by _____ Date _____



Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 9 OF 10)**

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 9 OF 10)**    BRENTWOOD

Property Address: *MERRIT HOTEL OAKLAND , CA 94513*      Date: *February 12, 2009*

**45. BROKER COMPENSATION FROM SELLER:**
    A. Upon Close Of Escrow, **Seller** agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
    B. If escrow does not close, compensation is payable as specified in that separate written agreement.

**46. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.

☒ (If checked) **SUBJECT TO ATTACHED COUNTER OFFER, DATED** _2-20-09_

Seller _[signature]_
By _____ Date _2-20-09_
Print name _BENYAM MULUGETA_ Address _____ City _PALO ALTO_ State _CA_ Zip _____
Telephone _____ Fax _____ E-mail _____

Seller _[signature]_
By _____ Date _____
Print name _PHELA Jr. MULUGETA_
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____
Notice Address, If Different _____

( _____ / _____ ) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's
(Initials) authorized agent on (date) _____ at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 39 above.
C. If specified in paragraph 2A, Agent who submitted offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: **(i)** the amount specified in the MLS or PDS, provided Cooperating Broker is a Participant of the MLS or PDS in which the property is offered for sale or a reciprocal MLS or PDS; or **(ii)** ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) _REALTY WORLD-VIKING_ DRE Lic. # _____
By _[signature] MARK PATTON_ DRE Lic. # _____ Date _November 19, 2008_
Address _2698 MOWRY AVE_ City _FREMONT_ State _CA_ Zip _94538_
Telephone _(510) 794-9922_ Fax _(510) 619-5634_ E-mail _MARKPATTON@PRODIGY.NET_

Real Estate Broker (Listing Firm) _MULUGETA DEVELOPMENT_ DRE Lic. # _____
By _____ _BENYAM MULUGETA_ DRE Lic. # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), counter offer numbers _____ and _____, and agrees to act as Escrow Holder subject to paragraph 40 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _OLD REPUBLICK TITLE COMPANY_ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _//_
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

---

( _____ / _____ )    **REJECTION OF OFFER:** No counter offer is being made. This offer was reviewed and rejected by Seller on
(Seller's Initials) _____ (Date)

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

CPA REVISED 10/02 (PAGE 10 OF 10)    Reviewed by _____ Date _____
**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 10 OF 10)**
Case: 09-51900 Doc# 203 Filed: 05/29/09 Entered: 05/29/09 17:10:23   Page 15 of 20



**CALIFORNIA ASSOCIATION OF REALTORS®**

# BUYER'S INSPECTION ADVISORY
(C.A.R. Form BIA-A, Revised 10/02)

Property Address: 2332 HARRISON STR, OAKLAND  CA  94612 ("Property").

**A. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. For this reason, you should conduct thorough investigations of the Property personally and with professionals who should provide written reports of their investigations. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**B. BUYER RIGHTS AND DUTIES:** You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. The purchase agreement gives you the right to investigate the Property. If you exercise this right, and you should, you must do so in accordance with the terms of that agreement. This is the best way for you to protect yourself. It is extremely important for you to read all written reports provided by professionals and to discuss the results of inspections with the professional who conducted the inspection. You have the right to request that Seller make repairs, corrections or take other action based upon items discovered in your investigations or disclosed by Seller. If Seller is unwilling or unable to satisfy your requests, or you do not want to purchase the Property in its disclosed and discovered condition, you have the right to cancel the agreement if you act within specific time periods. If you do not cancel the agreement in a timely and proper manner, you may be in breach of contract.

**C. SELLER RIGHTS AND DUTIES:** Seller is required to disclose to you material facts known to him/her that affect the value or desirability of the Property. However, Seller may not be aware of some Property defects or conditions. Seller does not have an obligation to inspect the Property for your benefit nor is Seller obligated to repair, correct or otherwise cure known defects that are disclosed to you or previously unknown defects that are discovered by you or your inspectors during escrow. The purchase agreement obligates Seller to make the Property available to you for investigations.

**D. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as soil stability, geologic or environmental conditions, hazardous or illegal controlled substances, structural conditions of the foundation or other improvements, or the condition of the roof, plumbing, heating, air conditioning, electrical, sewer, septic, waste disposal, or other system. The only way to accurately determine the condition of the Property is through an inspection by an appropriate professional selected by you. If Broker gives you referrals to such professionals, Broker does not guarantee their performance. You may select any professional of your choosing. In sales involving residential dwellings with no more than four units, Brokers have a duty to make a diligent visual inspection of the accessible areas of the Property and to disclose the results of that inspection. However, as some Property defects or conditions may not be discoverable from a visual inspection, it is possible Brokers are not aware of them. If you have entered into a written agreement with a Broker, the specific terms of that agreement will determine the nature and extent of that Broker's duty to you. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

**E. YOU ARE ADVISED TO CONDUCT INVESTIGATIONS OF THE ENTIRE PROPERTY, INCLUDING, BUT NOT LIMITED TO THE FOLLOWING:**
1. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof, plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa, other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property. (Structural engineers are best suited to determine possible design or construction defects, and whether improvements are structurally sound.)
2. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. (Professionals such as appraisers, architects, surveyors and civil engineers are best suited to determine square footage, dimensions and boundaries of the Property.)
3. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms and other infestation or infection. Inspection reports covering these items can be separated into two sections: Section 1 identifies areas where infestation or infection is evident. Section 2 identifies areas where there are conditions likely to lead to infestation or infection. A registered structural pest control company is best suited to perform these inspections.
4. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage. (Geotechnical engineers are best suited to determine such conditions, causes and remedies.)

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Buyer's Initials (_____)(_____)
Seller's Initials (_____)(_____)
Reviewed by _____ Date _____


EQUAL HOUSING OPPORTUNITY

BIA-A REVISED 10/02 (PAGE 1 OF 2)

**BUYER'S INSPECTION ADVISORY (BIA-A PAGE 1 OF 2)**

| Agent: Mark Patton | Phone: (510)7949922 | Fax: (510) | Prepared using WINForms® software |
|---|---|---|---|
| Broker: Realty World-Viking Realty | 3661 Thornton Ave Fremont | 94536 | |

Property Address: 2332 HARRISON STR, OAKLAND CA 94612                                              Date: February 12, 2009

5. **ROOF:** Present condition, age, leaks, and remaining useful life. (Roofing contractors are best suited to determine these conditions.)
6. **POOL/SPA:** Cracks, leaks or operational problems. (Pool contractors are best suited to determine these conditions.)
7. **WASTE DISPOSAL:** Type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
8. **WATER AND UTILITES; WELL SYSTEMS AND COMPONENTS:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components.
9. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants). (For more information on these items, you may consult an appropriate professional or read the booklets "Environmental Hazards: A Guide for Homeowners, Buyers, Landlords and Tenants," "Protect Your Family From Lead in Your Home" or both.)
10. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood. (A Geologist or Geotechnical Engineer is best suited to provide information on these conditions.)
11. **FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies. (An insurance agent is best suited to provide information on these conditions.)
12. **BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. (Such information is available from appropriate governmental agencies and private information providers. Brokers are not qualified to review or interpret any such information.)
13. **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants; and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements. (Government agencies can provide information about these restrictions and other requirements.)
14. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property. Compliance requirements differ from city to city and county to county. Unless specifically agreed, the Property may not be in compliance with these requirements. (Local government agencies can provide information about these restrictions and other requirements.)
15. **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (x) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a Copy of this Advisory, Buyer is encouraged to read it carefully.

Buyer Signature _Gary D. Gornick, Managing M_ Date 02/11/2009        Buyer Signature _____ Date

TRADING SPACES LLC Gary G. Gornick
MANAGING MEMBER
Seller Signature _____ Date                                 Seller Signature _Paul R McGill_ Date 2-20-09

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |

BIA-A REVISED 10/02 (PAGE 2 OF 2)

**BUYER'S INSPECTION ADVISORY (BIA-A PAGE 2 OF 2)**

## CIVIL CODE SECTIONS 2079.13 THROUGH 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
(a) "Agent" means a person acting under provisions of title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. (b) "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (e) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (f) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (g) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (h) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (i) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent which becomes the contract for the sale of the real property upon acceptance by the seller. (j) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property which constitutes or is improved with one to four dwelling units, any leasehold in this type of property exceeding one year's duration, and mobile homes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (k) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (l) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (m) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (n) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (o) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

> **2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: (a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). (c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. (d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.17** (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.
(c) The confirmation required by subdivisions (a) and (b) shall be in the following form.

**(DO NOT COMPLETE, SAMPLE ONLY)** _____ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

**(DO NOT COMPLETE, SAMPLE ONLY)** _____ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or
(Name of Selling Agent if not the same as the Listing Agent) ☐ both the buyer and seller.

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Seller's/Landlord Initials ( _____ ) ( _____ )
Buyer's/Tenant's Initials ( _____ ) ( _____ )

Copyright © 1991-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
AD REVISED 4/06 (PAGE 2 OF 2)

| Reviewed by _____ Date _____ |

EQUAL HOUSING OPPORTUNITY

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)** BRENTWOOD



CALIFORNIA
ASSOCIATION
OF REALTORS®

# ADDENDUM

(C.A.R. Form ADM, Revised 10/01)

No. 1.

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☒ Commercial Property Purchase Agreement, ☐ other _____

dated _February 11, 2009_, on property known as _2332 HARRISON STR, OAKLAND, CA 94612 KNOWN AS MERRIT HOTEL_
in which _TRADING SPACES LLC GARY G GORNICK MANAGING MEMBER_ is referred to as ("Buyer/Tenant")
and _MULUGETA DEVELOPMENT_ is referred to as ("Seller/Landlord").

1. PURCHASE OF THE PROPERTY IS SUBJECT TO BUYER FINAL APPROVAL OF ALL INSPECTIONS AND DOCUMENTATION PORIVIDED BY SELLER AND INPECTORS.
2. AT THE COE SELLER CREDIT BUYER $ 300,000 FOR IMPROVEMENTS.
3. SELLER TO PAY FOR ALL REPAIRS FOR SECTION 1.
4. BUYER IS PURCHASING A VACANT PROPERTY.
5. SUBJECT TO TERMS AND CONDITIONS OF THE PURCHASE AGREEMENT, ADDENDUMS AND OTHERS.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _February 11, 2009_
Buyer/Tenant _Gary D Gornick_
_TRADING SPACES LLC GARY G GORNICK_
Buyer/Tenant _MANAGING MEMBER_

Date _2-20-09_
Seller/Landlord _MULUGETA DEVELOPMENT_
Seller/Landlord

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____
Broker or Designee _____ Date _____

SURE TRAC — The System for Success

ADM-11 REVISED 10/01 (PAGE 1 OF 1)

ADDENDUM (ADM-11 PAGE 1 OF 1)

Realty World-Viking Realty  3661 Thornton Ave  , Fremont  CA 94536
Phone: (510)7949022  Fax: (510)  Mark Patten

# ARGENT ASSET MANAGEMENT INC.

**NEWPORT BEACH    CHICAGO    LAS VEGAS**
PHONE: 702-630-1784 LAS VEGAS 224-717-6018 CHICAGO
Las Vegas Office
4590 Belevedere Park Lane
Las Vegas, NV 89142

## LETTER OF APPROVAL

January 28, 2009
Gary Gornick
Managing Member
Trading Spaces LLC
132 E. Lewelling Blvd
San Lorenzo, Ca. 94580

RE: Approval

Dear Mr. Gornick:

This Letter of Approval is for the following projects under the assisted living Business Plan that you submitted for our review:

| Project | Cost | Consulting Fee | Angel Investor | 2 Yr Bond Reserve | Loan Amount |
|---|---|---|---|---|---|
| Merced (90) | 14,185,000 | 485,000 | 630,000 | 3,825,000 | 19,125,000 |
| Lake Merritt (98) | 11,550,000 | 404,000 | 630,000 | 3,146,000 | 15,730,000 |
| Brentwood (70) | 7,425,000 | 260,000 | 315,000 | 2,000,000 | 10,000,000 |
| Villa Diamante | 6,120,000 | 214,200 | 65,800 | 1,600,000 | 8,000,000 |
| Lake Oroville | 2,015,000 | 70,000 | 315,000 | 600,000 | 3,000,000 |
| Atherton (160) | 18,600,000 | 650,000 | 315,000 | 4,891,250 | 24,456,250 |
| Total Funds | | | | | 80,311,250 |

The total approval is in the amount of Eighty-one Million Dollars ($81,000,000 USD). Your loan agreement paperwork will be completed on Friday January 30, 2009 for your review and signature. Funding will take place approximately 70 days from the date of the Agreement.

We look forward to a long and prosperous relationship in this endeavor.
Sincerely,

*[signature]*

Ronald Morgan CEO
Argent Asset Management Inc.