CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California   95112
Telephone:   (408) 295-9555
Facsimile:   (408) 295-6606

ATTORNEYS FOR Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ) | Case No. 09-51900 ASW |
| ) | |
| BENYAM and PAULA R. MULUGETA, ) | CHAPTER 11 |
| ) | R.S. No. RKO90014 |
| Debtors. ) | |
| ) | |
| ) | Hearing Date: July 14, 2009 |
| ) | Hearing Time: 2:00 p.m. |

**OPPOSITION TO MOTION FOR RELIEF FROM STAY**

Debtors BENYAM and PAULA R. MULUGETA (jointly "Debtors" ) submit this opposition to the Motion For Relief From Automatic Stay filed by Lone Oak Fund, LLC ("Lone Oak") regarding Debtors' real property commonly known as 2332 Harrison Street, Oakland, CA (Assessor Parcel Number (A.P.N.) 010-0769-005-00 ("Merritt Hotel[1]" or "The Property") as follows:

//

//

//

---

[1] Debtors and Debtors' counsel recognize Merritt is spelled incorrectly in the Purchase Agreement (as Merrit), but spell it correctly herein.

**OPPOSITION TO MOTION FOR RELIEF FROM STAY**

## I. Introduction And Statement of Facts:

At the time this case was commenced, Debtors were the owners of seven (7) distinct residential and commercial properties, generally described as follows:

*Harker (Debtors' residence-a 5 bedroom 3 bath property located in Palo Alto);

*Merritt Hotel (a 5 story, 156 room hotel located in Oakland);

*Grand (a four story 21-unit apartment building with associated commercial units);

*O'Keefe (a 21-unit apartment building located in East Palo Alto);

*Chaucer (2 single family homes (duplex) located in Berkeley);

*Sevier (a single family residence located in Menlo Park used as a rental property); and *Brann (a single family home used as a rental).

The Merritt Hotel was purchased by Debtors' in approximately April 2002 for $4,100,000 as a residential hotel. In order to maximize the potential value of the hotel and property, Debtors' investigated several options, including options which were subject to the City of Oakland's restrictions. Debtors' elected to develop the Merritt Hotel from a residential hotel to a commercial hotel, but the City of Oakland required the property to be empty for one year prior as part of the conversion process. Debtors pursued this development opportunity in light of the potential return on the investment and increase to the property's value. The cost of this development and the vacancy required by the City of Oakland impacted Debtors' income, cash flow at all properties, and drained resources.

In late 2006 Lone Oak lent monies to Debtors for the Merritt Hotel and at that time the Merritt Hotel was appraised for more than $6,200,000 "as is".

In 2008 Debtors received an offer from Parkside Development, Inc. for $6,500,000.

In February 2009, Debtors received another purchase offer for $9,000,000, with a $2,000,000 credit for remodeling of the hotel. This same party has also presented a lease option to purchase.

In addition, the Veteran's Association ("VA") has expressed interest in leasing the hotel, which would allow the Debtors to maintain ownership of the property, receive $500,000 for the lease option, and have significant cash flow sufficient to allow Debtors to

pay creditors and propose a plan to reorganize their debts and exit bankruptcy.

Debtors commenced this case on March 18, 2009 and first retained counsel on April 2, 2009.

According to Debtors' schedules and other pleadings on file with this Court, pre-petition Debtors entered into a contract to sell the Harrison property for $7,000,000 to Trading Spaces, LLC ("Trading Spaces"), an operator of assisted living facilities, as part of series of real estate purchases by Trading Spaces and with an appraised "as is" value of $7,500,000 and a projected value after renovation at $13,500,000 (May 4, 2009). Detailed Analysis provided an appraisal of the Merritt Hotel at $7,500,000 "as is' and $13,500,000 after renovation. The underlying appraisal was performed by Patrick J. O'Malley, MAI certified general real estate appraiser.

Debtors believe that Trading Spaces has the ability to close this transaction. This transaction is part of series of real estate purchases by Trading Spaces in connection with Argent Asset Management Inc. with a total monetary value of $81,000,000 for the six purchases. Debtors have continued progress towards closure of this transaction and the Court approved the sale on July 1, 2009[2]. The sale is anticipated to close on or before August 15, 2009.

## II. The Court Should Deny The Motion Through Its Equitable Powers It Is Premature.

The motion seeks premature relief from stay before Debtors have had sufficient opportunity to retain counsel, take a breath, and develop and pursue a plan and attempts to deny Debtors the fundamental protection afforded by bankruptcy.

Debtors commenced this case on March 18, 2009, first retained counsel on April 2, 2009, submitted to an Initial Debtor Interview on April 16, 2009, and had their Meeting of Creditors scheduled for April 22, 2009. Debtors have moved forward with generating rental income at their various properties and securing the sale of the Merritt Hotel.

One of the primary purposes of the automatic stay is to give "the debtor a breathing

---

[2]A formal order is in process.

spell form its creditors" and "permit "the debtor to attempt a repayment or reorganization plan'. <u>Dean v. Trans World Airlines, Inc.</u>, 72 F.3d 754 (9th Cir. 1995); see also <u>In re LPM Corp.</u>, 300 F.3d 1134, 1137 (9th Cir. 2002) (The automatic stay "grants the debtor breathing room and provides time to attempt reorganization.")

Section 105 of the Bankruptcy Code, entitled Power of Court, provides, in pertinent part:

> "(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this time provided for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." . . .
> (d) The court, on its own motion or on the request of a party in interest, (1) shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case; and (2) unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically . ."

Unless the Court denies the motion the Debtors, and various of their secured and unsecured creditors, will be denied the fundamental protection and purpose of bankruptcy and the opportunity to take a breath, develop a plan, and pursue a plan to reorganize themselves and pay their creditors.

In the bankruptcy setting, the court balances the following factors: there be a danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize; second a reasonable likelihood of successful reorganization; a balance the relative harm as between the debtor and the creditor who would be restrained; and the public interest-public interest in successful bankruptcy reorganization and other societal interest. (<u>In re Monroe Well Serv., Inc.</u> 67 B.R. 746, 752-53 Bankr. E.D. Pa. 1986) In applying this standard it "is important to recognize that the four considerations are factors to be balanced and not prerequisites that must be satisfied . . . These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." <u>American Imaging Servs., Inc. v. Eagle-</u>

Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 963 F.2d 855, 859 (6th Cir. 1992) (citations omitted) As a consequence, the overwhelming presence of one of the factors may lead a court to issue, or to deny, an injunction without a particularly strong showing on the others." American Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 963 F.2d 855, 860 (6th cir. 1992) The balance of harms considers evidence as to whether creditor sought to be enjoined has other avenues to pursue relief, and the impact on that creditor by delay.

### A. Debtors, Junior Secured Creditors, And Unsecured Creditors Will Suffer If Relief From Stay Is Granted.

Lone Oak's position is secured with sufficient equity cushion.

Debtors submit the balance of equities weighs so heavily in Debtors' favor that the Court must exercise its equitable powers and deny the motion. If the motion is granted and Lone Oak is allowed to proceed then not only will the Debtors suffer, but their creditors will suffer significant harm and Debtors's ability to reorganize will be severely jeopardized.

To the extent there is an order granting relief from stay and there is a trustee sale, there will be a cascading impact on all of Debtors' secured creditors and various properties as several, but not all, of Debtors' secured creditors are cross-collateralized and the cascading impact will fall to the unsecured creditors and likely the entire case.

### III. Debtors Are Entitled To A Full Evidentiary Hearing After Discovery.

Debtors are entitled to a full evidentiary hearing on the issues asserted by Lone Oak after discovery, namely discovery regarding the actual value of the Merritt Hotel.

Debtors require discovery into the self-serving 'valuations' provided by Lone Oak.

Debtors also require discovery into Lone Oak's actions in advertising the Merritt Hotel for sale prior to its ownership and the impact Lone Oak's action had on Debtors' ability to fully market and sell the property.

### A. Lone Oak Has Significant Equity In The Merritt Hotel And The Merit Hotel Is A Necessary Element To Debtors' Reorganization Plans.

Lone Oak's motion attempts to argue there is not equity in the Merritt Hotel and as such

is not necessary to Debtors' reorganization plan. Debtors' reject Lone Oak's claims.

As described herein the appraisals and purchase offers received by Debtors since Debtors' purchase, including the appraisal received at the time of Lone Oak's 2006 funding, and the pending sale to Trading Spaces indicates there is sufficient equity in Lone Oak's position. Further, the benefits of a sale carry through to junior secured creditors and unsecured creditors such that a sale of the Merritt Hotel should place Debtors in a position to pay all secured claims against the property and have approximately $2,000,000 in net sale proceeds for distribution or payment to unsecured creditors[3].

**IV. Conclusion.**

Debtors submit Lone Oak's motion is premature, Lone Oak has equity above its secured claim, proper discovery and a full hearing will establish Lone Oak's equity cushion, Debtors' pending sale of the Merritt Hotel is scheduled to close on or before August 15, 2009 which should result in payment to Lone Oak, and good cause does not exist to grant relief from stay at this time.

Dated: July 13, 2009      /s/ William J. Healy
                          William J. Healy

---

[3] Upon close of the sale Debtors anticipate submission of a plan or moving to dismiss this case after bringing outstanding debts current.