```
CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California   95112
Telephone:   (408) 295-9555
Facsimile:    (408) 295-6606

ATTORNEYS FOR Debtors
```

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | Case No. 09-51900 ASW |
| BENYAM and PAULA R. MULUGETA, | CHAPTER 11 |
| Debtors. | Date:  September 23, 2009<br>Time:  2:15 p.m.<br>Room: 3020<br>Place:   United States Bankruptcy Court<br>            280 S. First St. Room 3020<br>            San Jose, CA 95113<br>Judge: The Honorable Arthur Weissbrodt |

**DECLARATION OF BENYAM MULUGETA RE: MOTION TO SELL REAL PROPERTY ("Harrison")**

I, Benyam Mulugeta, do hereby declare:

1. I, Benyam Mulugeta, do hereby declare:

2. I am one of the debtors and authorized to make this declaration on my own behalf and on behalf of my spouse and Debtor Paula R. Mulugeta ("Debtors").

3. I submit his declaration of my own personal knowledge except as to those matters upon which I am informed and believe and as to those matters I am informed and believe them to be true. If called to testify as to the matters stated herein I could do so in an honest and competent manner. By way of this declaration I do not intend to waive any attorney client or work product privileges.

---

**DECLARATION OF BENYAM MULUGETA RE:  MOTION TO SELL REAL PROPERTY ("Harrison")**

4. I submit this declaration in support of Debtors' motion to sell Debtors' real property commonly known as 2332 Harrison Street, Oakland, CA (Assessor Parcel Number (A.P.N.) 010-0769-005-00 ("Merritt Hotel" or "The Property"), and as described herein, pursuant to Bankruptcy Code 363 (b), Bankruptcy Code 506, 506 (d), and Bankruptcy Rule 6004.

5. Debtors' primary business is real estate and, as indicated above, own and operated several commercial properties in the Bay Area. I have also been a real estate professional since 1985. Debtors, pre-petition and post-petition investigated the marketing and sale of their properties to determine value and in order to pay their creditors. Debtors considered various proposals for the purchase or lease of their properties for purposes of determining potential value and in order to pay their creditors. Further, Debtors' believe the price and terms of the Purchase Agreement appear commercially reasonable and for reasonable value and is the highest and best offer for prompt payment to creditors and Buyer appears ready, willing, and able to perform on the Purchase Agreement.

6. The Property has a value of at least $7,000,000.00. In late 2006 Lone Oak lent monies to Debtors for the Merritt Hotel and at that time the Merritt Hotel was appraised for more than $6,200,000 "as is". In 2008 Debtors received an offer from Parkside Development, Inc. for $6,500,000. In February 2009, Debtors received a purchase offer for $9,000,000, with a $2,000,000 credit for remodeling of the hotel. This same party has also presented a lease option to purchase. Trading Space, LLC's purchase agreement was based on an appraised "as is" value of $7,500,000 and a projected value after renovation at $13,500,000 (May 4, 2009). Detailed Analysis provided an appraisal of the Merritt Hotel at $7,500,000 "as is' and $13,500,000 after renovation. The underlying appraisal was performed by Patrick J. O'Malley, MAI certified general real estate appraiser and Nannette F. Quigley. True and correct copies of the Trading Space, LLC/ addendum and Detailed Analysis appraisal are attached to my declaration supporting Debtors' motion to extend time.

7. In addition, The Property has received continuous visitation and demand from other prospective buyers. Debtors submit that multiple purchase offers and appraisals combined with a willing seller and buyer most accurately reflect the value of The Property.

8. Trading Spaces, LLC was allowed until September 25, 2009 due to delays in its bond rating, and the health of Trading Spaces, LLC's principal's spouse, and because it is an excellent deal for creditors. Nevertheless, Debtors have been in negotiations with Relan regarding The Property for many months. Relan is aware and recognizes that Debtors are in contract to sell The Property to Trading Spaces, LLC for $7,000,000.00, such sale was scheduled to close on or before August 15, 2009, the sale did not close as scheduled, but Trading Spaces, LLC has, been granted until September 25, 2009 to close.

9. Therefore, Relan has agreed to remain as a back-up offer to Trading Spaces, LLC through September 25, 2009 at which time Debtors would, if Trading Spaces, LLC has not closed the transaction, terminate the Trading Spaces, LLC agreement for Trading Spaces, LLC's failure to timely close and formally accept the Relan offer as reflected in the Purchase Agreement. Pursuant to the terms of the Purchase Agreement Relan would have 45 days to close. This would provide Relan until November 9, 2009. Debtors anticipate executing a formal addendum with Relan, who returns from the Philippines next week, to reflect this time modification.

10. I have spent countless hours with Relan, including time with its contractor and lender, discussing this transaction, showing The Property, negotiating this transaction, and balancing this transaction with the Trading Spaces, LLC transaction. Based on my approximately 25 years as a real estate professional and the countless hours spent with Relan, this transaction is a bona fide offer for The Property. As part of this process I pre-qualified the buyer and their ability to perform by conducted some background investigation, reviewed financial statements, and investment portfolio. Relan owns and/or controls several commercial properties throughout the East Bay and Sacramento and is a knowledgeable real estate investor.

11. The Relan transaction is not 'purported', but a bona-fide offer from a bona-fide buyer.

//
//
//

**DECLARATION OF BENYAM MULUGETA RE: MOTION TO SELL REAL PROPERTY ("Harrison")**
3
Case: 09-51900   Doc# 152   Filed: 09/17/09   Entered: 09/17/09 16:30:43   Page 3 of 5

12. At the time of commencement of this case, Debtors appeared to have the following secured claims relative to The Property:

| | | |
|---|---|---|
| (1) Lone Oak Fund, LLC | $3,500,000.00 | |
| (2) Robert Taylor | $ 200,000.00 | |
| (3) Tomoko Nakama | $ 185,000.00 | |
| (4) Aglala Panos[1] | $ 250,000.00. | |
| Estimated Total[2]: | $4,135,000.00 | |

13. Debtors anticipate the sale of The Property to Relan will result in the immediate satisfaction, subject to confirmation of amounts owed to, of closing costs, tax claims, and secured creditors, including (1) Lone Oak Fund, LLC; (2) Robert Taylor; and (3) Tomoko Nakama and a net benefit to the estate of at least $2,000,000.00.

14. Debtors submit the balance of equities warrants a sale of The Property. If The Property is not sold pursuant to Trading Spaces, LLC or Relan, or other interested parties, then not only will the Debtors suffer, but all of their creditors will suffer significant harm and Debtors's ability to reorganize will be severely jeopardized. The failure of a sale of The Property would have a cascading impact on all of Debtors' secured creditors and various properties as several, but not all, of Debtors' secured creditors are cross-collateralized and the cascading impact will fall harshly to the unsecured creditors and likely the entire case.

15. Debtors, as previously indicated in this case, conducted repairs and upgrades to the Harrison hotel as part of the process of converting it from a residential hotel to a commercial hotel. But for the conversion process, the City of Oakland's requirement that the property remain vacant as a result of the conversion, and Debtor's sales agreement to Trading Spaces, LLC, Debtors would have re-opened the property as a residential hotel and generated revenue and therefore payments to Lone Oak. Debtors' anticipate that if the property does not sell as anticipated they will re-open the property as a residential hotel and effective

---

[1] Debtors have subsequently determined that Ms. Panos' deed of trust was not recorded.

[2] These figures are estimated.

December 2009 start making adequate protection payments to Lone Oak and continue efforts to sell the property.

I declare under penalty of perjury under the laws of the United States Of America that the foregoing is true and correct and executed this 17th day of September 2009, in _____, California

        /s/ Benyam Mulugeta_____
        Benyam Mulugeta