Benyam and Paula R. Mulugeta
1025 Harker Ave.
Palo Alto, Ca. 94301
Tel: 650-906-8012
Email bmulugeta1020@gamial.com

Debtors in Possession

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In Re;

Benyam and Paula R. Mulugeta )   Case No. 09-51900 ASW
                              )   CHAPTER 11
        Debtors               )
                              )   Date: June 21, 2010
                              )   Time: 2p,m
                              )   Room: 3020
                              )
                              )   Judge: The Honorable A. Weissbrodt

# STATUS CONFERENCE STATEMENT

Debtors, Benyam and Paula R. Mulugeta (jointly "Debtors") submit this Status Conference Statement.

**I.  Summary Background Regarding Debtors.**

Debtors' main line of business and holdings is real estate. Debtors have been in the real estate business for over 25 years and Benyam Mulugeta, Debtor, has been a real estate broker and licensed in the State of California for over 25 years. Debtors are the owners of eight residential and commercial properties generally described as follows:

1. **1025 Harker Ave. Palo Alto, Ca.** Debtors' residence. Debtors in an effort to restructure their financial affairs and cut back on their expenses are moving into the in- law unit of their house in order to rent the main house for $6,500. Once they have a tenant and generate income, Debtors will propose a payment plan to their creditors.

2. **1339 Sevier Ave. Menlo Park, Ca.** A single family residence is used as a rental property. Debtors are in the process of employing Coldwell Banker to sell the property. In the very near future Debtors will submit an application to the court to employ Coldwell Banker to help them sell the property. Debtors have received a market analysis of the property which determined the value of the property. They will submit this analysis to EMC Mortgage for short sale. According to the Coldwell Banker analysis, the property is worth less than the loan amount and is underwater.

3. **240 E.O'Keefe East Palo Alto, Ca.** A 21 Unit apartment building located in East Palo Alto currently has three vacancies. **Debtors have been making post-petition payments in the amount of $9,817.70 per month to Sterling Saving Bank, 1st lien holder.** As the result of the court order, on April 2, 2010 Debtors listed the property for sale with Mrs. Mahnaz Khazen of Coldwell Banker Commercial **for $2,500,000.00.**

4. **353 Grand Ave. Oakland, Ca.,** A 3 story, 21 unit apartment building with 4 commercial units on the street level. **Debtors have been making post-petition payments to the lender, Sterling Saving Bank in the amount $10,505.20 per month.** As a result of major repair and renovation, the property is currently stabilized. Of the 21 units there are only four vacancies as of today. As a result of the court order on April 2, 2010, Debtors listed the property with Mr. David Wolf of Marcus & Millicap **for $2,750,000**. However, Debtors will soon submit an application of employment to replace Mr. David Wolf of Marcus & Millicap with Mr. Rodney Thompson of TRI Commercial. Debtors believe that replacing David Wolf of Marcus & Millicap with Mr. Rodney Thompson of TRI Commercial will be for the best interest of the estate and creditors.

5. **2332 Harrison, Oakland, Ca., "Harrison"** A 5 story, 156 rooms' hotel, located near Lake Merritt. Debtors are currently working with a buyer, Trading Spaces, which **offered $7,000,000.00 "As Is".** The buyer has done inspection, appraisal, and put **over $470,000**.00 towards a bond to obtain the loan. Debtors believe that the buyer has all intention and ability to buy the property. The escrow is still open. Unfortunately, escrow was not closed as expected on May, 2010 due to Mr. Gary Gornick's wife being sick with advanced leukemia. Mr. Gary Gornic is the Managing Partner for Trading Spaces. He is in and out of hospital and very preoccupied with his wife's illness. This has caused a major distraction and delay in closing the transaction. Debtors have been negotiating with Lone Oak Fund to enter into "Adequate Protection". Debtors are making their payments, **of $22,000.00.** On April 11, 2010 Debtors also entered in to short term lease agreement with Tyme 4 Independent Living Inc for $7,000 for every 21 days to rent only 16 rooms of the "Harrison" property (Exhibit I). Tyme 4 Independent Living Inc. delayed to occupy the property until July 1st, 2010 due to a permit issue and fixing the heating and hot water problems. In addition, Debtors will list the property with TRI Commercial for sale the first of August, 2010 if Trading Spaces, the buyer, will not close by the end of July, 2010.

6. **1112 and 1114 Chaucer, Berkeley, Ca.** (duplex) located in Berkeley. As the result of the court order on March 9, 2010, Debtors have paid $5,400 by March 31, 2010 and have been making $1,800 per month to EMC Mortgage Corporation.

7. **5401 Brann, Oakland, Ca.** A single family home used as rental. Since the current tenant has lost his job, he is unable to make the monthly rent. Debtors are talking with Coldwell Banker to list and sell the property. Debtors will submit to the court an application to employ Coldwell Banker once Coldwell Banker provides them with a listing agreement and marketing package.

8. **1111 Alama St. Palo Alto, Ca.** A single family residence, which Debtors bought with a lease option. The property has been vacant for over a year and needs renovation, but Debtors do not have the money to fix it up. Debtors are planning to list the property for short sale with Coldwell Banker of Palo Alto. Debtors will submit application to employee Coldwell Banker, once Coldwell Banker comes with price and marketing package.

II. **Plan**

Debtors will submit a formal reorganization plan within 45 days, to show how they are planning to resolve their financial problem and pay their creditors.

### III. Recommendation

Debtors have **stabilized** their properties and averted the estate from **collapsing**, and are moving forward towards **a resolution of the case**. Debtors filed bankruptcy in order to get protection and be able to restructure their financial affairs. Debtors believe they are in the process of achieving that goal. Debtors' main asset **"Harrison"** is still in escrow. In addition, Debtors' are negotiating through **"Adequate Protection "**with the lender of "Harrison" property for mutually acceptable terms. Debtors believe this will give them the necessary time to sell "Harrison" and/or submit a formal reorganization plan. Debtors **have stabilized** their other major asset, **"353 Grand Ave."** after over six months of vacancy and major renovation to the property. Debtors are also listing "353 Grand Ave." for sale, **for $2,750,000.** Debtors have been paying the post petition payment for "353 Grand Ave" to Sterling Saving Bank. Debtors other property **"240 E. O'Keefe"** has been listed for sale with Coldwell Banker Commercial **for $2,500,000.** Debtors have also been paying the post petition payment to Sterling Saving Bank for "240 E. O'Keefe". In addition, Debtors are in process of listing for sale with Coldwell Banker their other properties: **Sevier, Alma and Brann.**

Further, Debtors are reducing their lifestyle in order to overcome their financial difficulties. Debtors are in process of renting their main house and moving into their in-law unit. Debtors have surrendered their 2007 Chrysler 300 to the lender to reduce expenses.

Debtors recommend the court to continue the Status Conference for 60-90 days at which time Debtors should have resolution on **"Harrison"** property their main asset and their other properties, and either move to dismiss their Chapter 11 case or submit a formal reorganization plan.

Dated: June 16, 2010

Benyam Mulugeta
Debtor

STATUS CONFERENCE STATEMENT- 3



**CALIFORNIA ASSOCIATION OF REALTORS®**

# COMMERCIAL LEASE AGREEMENT
(C.A.R. Form CL, Revised 04/06)

**EXHIBIT I**

Date (For reference only): 4-11-10

Mr. & Mrs. BENYAM MULUGETA ("Landlord") and
TYME 4 INDEPENDENT LIVING Inc. ("Tenant") agree as follows:

1. **PROPERTY:** Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as: 2332 HARRISON OAKLAND ("Premises"), which comprise approximately _____ % of the total square footage of rentable space in the entire property. See exhibit _____ for a further description of the Premises.

2. **TERM:** The term begins on (date) MAY 1st 2010 ("Commencement Date"),
   (Check A or B):
   ☒ **A. Lease:** and shall terminate on (date) MAY 22 2010 at _____ AM/PM.
   Any holding over after the term of this agreement expires, with Landlord's consent, shall create a month-to-month tenancy that either party may terminate as specified in paragraph 2B. Rent shall be at a rate equal to the rent for the immediately preceding month, payable in advance. All other terms and conditions of this agreement shall remain in full force and effect.
   ☐ **B. Month-to-month:** and continues as a month-to-month tenancy. Either party may terminate the tenancy by giving written notice to the other at least 30 days prior to the intended termination date, subject to any applicable laws. Such notice may be given on any date.
   ☒ **C. RENEWAL OR EXTENSION TERMS:** See attached addendum_____.

3. **BASE RENT:**
   A. Tenant agrees to pay Base Rent at the rate of (CHECK ONE ONLY:)
   ☐ (1) $_____ per month, for the term of the agreement.
   ☐ (2) $_____ per month, for the first 12 months of the agreement. Commencing with the 13th month, and upon expiration of each 12 months thereafter, rent shall be adjusted according to any increase in the U.S. Consumer Price Index of the Bureau of Labor Statistics of the Department of Labor for All Urban Consumers ("CPI") for _____ (the city nearest the location of the Premises), based on the following formula: Base Rent will be multiplied by the most current CPI preceding the first calendar month during which the adjustment is to take effect, and divided by the most recent CPI preceding the Commencement Date. In no event shall any adjusted Base Rent be less than the Base Rent for the month immediately preceding the adjustment. If the CPI is no longer published, then the adjustment to Base Rent shall be based on an alternate index that most closely reflects the CPI.
   ☐ (3) $ 7,000 per month for the period commencing MAY 1st 2010 and ending MAY 22, 2010 and
   $_____ per month for the period commencing _____ and ending _____ and
   $_____ per month for the period commencing _____ and ending _____.
   ☐ (4) In accordance with the attached rent schedule.
   ☐ (5) Other: _____
   B. Base Rent is payable in advance on the **1st** ( or ☐ _____ ) **day** of each calendar month, and is delinquent on the next day.
   C. If the Commencement Date falls on any day other than the first day of the month, Base Rent for the first calendar month shall be prorated based on a 30-day period. If Tenant has paid one full month's Base Rent in advance of the Commencement Date, Base Rent for the second calendar month shall be prorated based on a 30-day period.

4. **RENT:**
   A. Definition: ("Rent") shall mean all monetary obligations of Tenant to Landlord under the terms of this agreement, except security deposit.
   B. Payment: Rent shall be paid to (Name) BENYAM MULUGETA _____, or at any other location specified by Landlord in writing to Tenant.
   C. Timing: Base Rent shall be paid as specified in paragraph 3. All other Rent shall be paid within 30 days after Tenant is billed by Landlord.

5. **EARLY POSSESSION:** Tenant is entitled to possession of the Premises on _____.
   If Tenant is in possession prior to the Commencement Date, during this time **(i)** Tenant is not obligated to pay Base Rent, and **(ii)** Tenant ☐ is ☐ is not obligated to pay Rent other than Base Rent. Whether or not Tenant is obligated to pay Rent prior to Commencement Date, Tenant is obligated to comply with all other terms of this agreement.

6. **SECURITY DEPOSIT:**
   A. Tenant agrees to pay Landlord $ 7,000 as a security deposit. Tenant agrees not to hold Broker responsible for its return. (IF CHECKED:) ☐ If Base Rent increases during the term of this agreement, Tenant agrees to increase security deposit by the same proportion as the increase in Base Rent.
   B. All or any portion of the security deposit may be used, as reasonably necessary, to: **(i)** cure Tenant's default in payment of Rent, late charges, non-sufficient funds ("NSF") fees, or other sums due; **(ii)** repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest or licensee of Tenant; **(iii)** broom clean the Premises, if necessary, upon termination of tenancy; and **(iv)** cover any other unfulfilled obligation of Tenant. **SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT.** If all or any portion of the security deposit is used during tenancy, Tenant agrees to reinstate the total security deposit within 5 days after written notice is delivered to Tenant. Within 30 days after Landlord receives possession of the Premises, Landlord shall: **(i)** furnish Tenant an itemized statement indicating the amount of any security deposit received and the basis for its disposition, and **(ii)** return any remaining portion of security deposit to Tenant. However, if the Landlord's only claim upon the security deposit is for unpaid Rent, then the remaining portion of the security deposit, after deduction of unpaid Rent, shall be returned within 14 days after the Landlord receives possession.
   C. No interest will be paid on security deposit, unless required by local ordinance.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1998-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Landlord's Initials (BM) (BM)
Tenant's Initials (___) (___)
Reviewed by _____ Date _____

Premises: 2332 HARRISON OAKLAND                                     Date 4-11-10

7. **PAYMENTS:**

|   |   | TOTAL DUE | PAYMENT RECEIVED | BALANCE DUE | DUE DATE |
|---|---|---|---|---|---|
| A. | Rent: From May 1st To May 31st | $7,000 | $ | $7,000 | 5-1st 2010 |
| B. | Security Deposit | $7,000 | $ | $ | |
| C. | Other: _____ Category | $ | $ | $ | |
| D. | Other: _____ Category | $ | $ | $ | |
| E. | Total: | $14,000 | $ | $ | |

8. **PARKING:** Tenant is entitled to ___NONE___ unreserved and _____ reserved vehicle parking spaces. The right to parking ☐ is ☐ is not included in the Base Rent charged pursuant to paragraph 3. If not included in the Base Rent, the parking rental fee shall be an additional $ _____ per month. Parking space(s) are to be used for parking operable motor vehicles, except for trailers, boats, campers, buses or trucks (other than pick-up trucks). Tenant shall park in assigned space(s) only. Parking space(s) are to be kept clean. Vehicles leaking oil, gas or other motor vehicle fluids shall not be parked in parking spaces or on the Premises. Mechanical work or storage of inoperable vehicles is not allowed in parking space(s) or elsewhere on the Premises. No overnight parking is permitted.

9. **ADDITIONAL STORAGE:** Storage is permitted as follows: ___NONE___.
The right to additional storage space ☐ is ☐ is not included in the Base Rent charged pursuant to paragraph 3. If not included in Base Rent, storage space shall be an additional $ _____ per month. Tenant shall store only personal property that Tenant owns, and shall not store property that is claimed by another, or in which another has any right, title, or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosives, or other dangerous or hazardous material. Tenant shall pay for, and be responsible for, the clean-up of any contamination caused by Tenant's use of the storage area.

10. **LATE CHARGE; INTEREST; NSF CHECKS:** Tenant acknowledges that either late payment of Rent or issuance of a NSF check may cause Landlord to incur costs and expenses, the exact amount of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by Landlord within **5 calendar days** after date due, or if a check is returned NSF, Tenant shall pay to Landlord, respectively, $ 200 as late charge, plus 10% interest per annum on the delinquent amount and $25.00 as a NSF fee, any of which shall be deemed additional Rent. Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any late charge, delinquent interest, or NSF fee due shall be paid with the current installment of Rent. Landlord's acceptance of any late charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall not be deemed an extension of the date Rent is due under paragraph 4, or prevent Landlord from exercising any other rights and remedies under this agreement, and as provided by law.

11. **CONDITION OF PREMISES:** Tenant has examined the Premises and acknowledges that Premise is clean and in operative condition, with the following exceptions: _The property needs work_.
Items listed as exceptions shall be dealt with in the following manner: _____

12. **ZONING AND LAND USE:** Tenant accepts the Premises subject to all local, state and federal laws, regulations and ordinances ("Laws"). Landlord makes no representation or warranty that Premises are now or in the future will be suitable for Tenant's use. Tenant has made its own investigation regarding all applicable Laws.

13. **TENANT OPERATING EXPENSES:** Tenant agrees to pay for all utilities and services directly billed to Tenant. _____

14. **PROPERTY OPERATING EXPENSES:**
    A. Tenant agrees to pay its proportionate share of Landlord's estimated monthly property operating expenses, including but not limited to, common area maintenance, consolidated utility and service bills, insurance, and real property taxes, based on the ratio of the square footage of the Premises to the total square footage of the rentable space in the entire property. _____

OR B. ☐ **(If checked)** Paragraph 14 does not apply.

15. **USE:** The Premises are for the sole use as _____.
No other use is permitted without Landlord's prior written consent. If any use by Tenant causes an increase in the premium on Landlord's existing property insurance, Tenant shall pay for the increased cost. Tenant will comply with all Laws affecting its use of the Premises.

16. **RULES/REGULATIONS:** Tenant agrees to comply with all rules and regulations of Landlord (and, if applicable, Owner's Association) that are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests and licensees of Tenant do not, disturb, annoy, endanger, or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, including, but not limited to, using, manufacturing, selling, storing, or transporting illicit drugs or other contraband, or violating any law or ordinance, or committing a waste or nuisance on or about the Premises.

17. **MAINTENANCE:**
    A. Tenant OR ☐ **(If checked, Landlord)** shall professionally maintain the Premises including heating, air conditioning, electrical, plumbing and water systems, if any, and keep glass, windows and doors in operable and safe condition. Unless Landlord is checked, if Tenant fails to maintain the Premises, Landlord may contract for or perform such maintenance, and charge Tenant for Landlord's cost.
    B. Landlord OR ☐ **(If checked, Tenant)** shall maintain the roof, foundation, exterior walls, common areas and _____.

Landlord's Initials ( __ )( __ )
Tenant's Initials ( __ )( __ )

Copyright © 1998-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CL REVISED 04/06 (PAGE 2 OF 6)

Reviewed by _____ Date _____

EQUAL HOUSING OPPORTUNITY

Premises: 2332 HARRISON, OAKLAND   Date 4-11-10

18. **ALTERATIONS:** Tenant shall not make any alterations in or about the Premises, including installation of trade fixtures and signs, without Landlord's prior written consent, which shall not be unreasonably withheld. Any alterations to the Premises shall be done according to Law and with required permits. Tenant shall give Landlord advance notice of the commencement date of any planned alteration, so that Landlord, at its option, may post a Notice of Non-Responsibility to prevent potential liens against Landlord's interest in the Premises. Landlord may also require Tenant to provide Landlord with lien releases from any contractor performing work on the Premises.
19. **GOVERNMENT IMPOSED ALTERATIONS:** Any alterations required by Law as a result of Tenant's use shall be Tenant's responsibility. Landlord shall be responsible for any other alterations required by Law.
20. **ENTRY:** Tenant shall make Premises available to Landlord or Landlord's agent for the purpose of entering to make inspections, necessary or agreed repairs, alterations, or improvements, or to supply necessary or agreed services, or to show Premises to prospective or actual purchasers, tenants, mortgagees, lenders, appraisers, or contractors. Landlord and Tenant agree that 24 hours notice (oral or written) shall be reasonable and sufficient notice. In an emergency, Landlord or Landlord's representative may enter Premises at any time without prior notice.
21. **SIGNS:** Tenant authorizes Landlord to place a FOR SALE sign on the Premises at any time, and a FOR LEASE sign on the Premises within the 90 (or ☐ _____) day period preceding the termination of this agreement.
22. **SUBLETTING/ASSIGNMENT:** Tenant shall not sublet or encumber all or any part of Premises, or assign or transfer this agreement or any interest in it, without the prior written consent of Landlord, which shall not be unreasonably withheld. Unless such consent is obtained, any subletting, assignment, transfer, or encumbrance of the Premises, agreement, or tenancy, by voluntary act of Tenant, operation of law, or otherwise, shall be null and void, and, at the option of Landlord, terminate this agreement. Any proposed sublessee, assignee, or transferee shall submit to Landlord an application and credit information for Landlord's approval, and, if approved, sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one sublease, assignment, or transfer, shall not be construed as consent to any subsequent sublease, assignment, or transfer, and does not release Tenant of Tenant's obligation under this agreement.
23. **POSSESSION:** If Landlord is unable to deliver possession of Premises on the Commencement Date, such date shall be extended to the date on which possession is made available to Tenant. However, the expiration date shall remain the same as specified in paragraph 2. If Landlord is unable to deliver possession within 60 (or ☐ _____) **calendar days** after the agreed Commencement Date, Tenant may terminate this agreement by giving written notice to Landlord, and shall be refunded all Rent and security deposit paid.
24. **TENANT'S OBLIGATIONS UPON VACATING PREMISES:** Upon termination of this agreement, Tenant shall: **(i)** give Landlord all copies of all keys or opening devices to Premises, including any common areas; **(ii)** vacate Premises and surrender it to Landlord empty of all persons and personal property; **(iii)** vacate all parking and storage spaces; **(iv)** deliver Premises to Landlord in the same condition as referenced in paragraph 11; **(v)** clean Premises; **(vi)** give written notice to Landlord of Tenant's forwarding address; and **(vii)** _____
   _____.
   All improvements installed by Tenant, with or without Landlord's consent, become the property of Landlord upon termination. Landlord may nevertheless require Tenant to remove any such improvement that did not exist at the time possession was made available to Tenant.
25. **BREACH OF CONTRACT/EARLY TERMINATION:** In event Tenant, prior to expiration of this agreement, breaches any obligation in this agreement, abandons the premises, or gives notice of tenant's intent to terminate this tenancy prior to its expiration, in addition to any obligations established by paragraph 24, Tenant shall also be responsible for lost rent, rental commissions, advertising expenses, and painting costs necessary to ready Premises for re-rental. Landlord may also recover from Tenant: **(i)** the worth, at the time of award, of the unpaid Rent that had been earned at the time of termination; **(ii)** the worth, at the time of award, of the amount by which the unpaid Rent that would have been earned after expiration until the time of award exceeds the amount of such rental loss the Tenant proves could have been reasonably avoided; and **(iii)** the worth, at the time of award, of the amount by which the unpaid Rent for the balance of the term after the time of award exceeds the amount of such rental loss that Tenant proves could be reasonably avoided. Landlord may elect to continue the tenancy in effect for so long as Landlord does not terminate Tenant's right to possession, by either written notice of termination of possession or by reletting the Premises to another who takes possession, and Landlord may enforce all Landlord's rights and remedies under this agreement, including the right to recover the Rent as it becomes due.
26. **DAMAGE TO PREMISES:** If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty, Landlord shall have the right to restore the Premises by repair or rebuilding. If Landlord elects to repair or rebuild, and is able to complete such restoration within 90 days from the date of damage, subject to the terms of this paragraph, this agreement shall remain in full force and effect. If Landlord is unable to restore the Premises within this time, or if Landlord elects not to restore, then either Landlord or Tenant may terminate this agreement by giving the other written notice. Rent shall be abated as of the date of damage. The abated amount shall be the current monthly Base Rent prorated on a 30-day basis. If this agreement is not terminated, and the damage is not repaired, then Rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of the Premises. If damage occurs as a result of an act of Tenant or Tenant's guests, only Landlord shall have the right of termination, and no reduction in Rent shall be made.
27. **HAZARDOUS MATERIALS:** Tenant shall not use, store, generate, release or dispose of any hazardous material on the Premises or the property of which the Premises are part. However, Tenant is permitted to make use of such materials that are required to be used in the normal course of Tenant's business provided that Tenant complies with all applicable Laws related to the hazardous materials. Tenant is responsible for the cost of removal and remediation, or any clean-up of any contamination caused by Tenant.
28. **CONDEMNATION:** If all or part of the Premises is condemned for public use, either party may terminate this agreement as of the date possession is given to the condemner. All condemnation proceeds, exclusive of those allocated by the condemner to Tenant's relocation costs and trade fixtures, belong to Landlord.
29. **INSURANCE:** Tenant's personal property, fixtures, equipment, inventory and vehicles are not insured by Landlord against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Tenant is to carry Tenant's own property insurance to protect Tenant from any such loss. In addition, Tenant shall carry liability insurance in an amount of not less than $ 1,000,000 . Tenant's liability insurance shall name Landlord and Landlord's agent as additional insured. Tenant, upon Landlord's request, shall provide Landlord with a certificate of insurance establishing Tenant's compliance. Landlord shall maintain liability insurance insuring Landlord, but not Tenant, in an amount of at least $ 1,000,000 , plus property insurance in an amount sufficient to cover the replacement cost of the property. Tenant is advised to carry business interruption insurance in an amount at least sufficient to cover Tenant's complete rental obligation to Landlord. Landlord is advised to obtain a policy of rental loss insurance. Both Landlord and Tenant release each other, and waive their respective rights to subrogation against each other, for loss or damage covered by insurance.

Landlord's Initials ( ) ( )
Tenant's Initials ( ) ( )

Copyright © 1998-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CL REVISED 04/06 (PAGE 3 OF 6)**

Reviewed by _____ Date _____

Case: 09-51900  Doc# 274  Filed: 06/16/10  Entered: 06/17/10 09:54:54  Page 6 of 12

Premises: _625 L ATKINSON    OAKLAND_____  Date _4-11-40_

30. **TENANCY STATEMENT (ESTOPPEL CERTIFICATE):** Tenant shall execute and return a tenancy statement (estoppel certificate), delivered to Tenant by Landlord or Landlord's agent, within 3 days after its receipt. The tenancy statement shall acknowledge that this agreement is unmodified and in full force, or in full force as modified, and state the modifications. Failure to comply with this requirement: **(i)** shall be deemed Tenant's acknowledgment that the tenancy statement is true and correct, and may be relied upon by a prospective lender or purchaser; and **(ii)** may be treated by Landlord as a material breach of this agreement. Tenant shall also prepare, execute, and deliver to Landlord any financial statement (which will be held in confidence) reasonably requested by a prospective lender or buyer.

31. **LANDLORD'S TRANSFER:** Tenant agrees that the transferee of Landlord's interest shall be substituted as Landlord under this agreement. Landlord will be released of any further obligation to Tenant regarding the security deposit, only if the security deposit is returned to Tenant upon such transfer, or if the security deposit is actually transferred to the transferee. For all other obligations under this agreement, Landlord is released of any further liability to Tenant, upon Landlord's transfer.

32. **SUBORDINATION:** This agreement shall be subordinate to all existing liens and, at Landlord's option, the lien of any first deed of trust or first mortgage subsequently placed upon the real property of which the Premises are a part, and to any advances made on the security of the Premises, and to all renewals, modifications, consolidations, replacements, and extensions. However, as to the lien of any deed of trust or mortgage entered into after execution of this agreement, Tenant's right to quiet possession of the Premises shall not be disturbed if Tenant is not in default and so long as Tenant pays the Rent and observes and performs all of the provisions of this agreement, unless this agreement is otherwise terminated pursuant to its terms. If any mortgagee, trustee, or ground lessor elects to have this agreement placed in a security position prior to the lien of a mortgage, deed of trust, or ground lease, and gives written notice to Tenant, this agreement shall be deemed prior to that mortgage, deed of trust, or ground lease, or the date of recording.

33. **TENANT REPRESENTATIONS; CREDIT:** Tenant warrants that all statements in Tenant's financial documents and rental application are accurate. Tenant authorizes Landlord and Broker(s) to obtain Tenant's credit report at time of application and periodically during tenancy in connection with approval, modification, or enforcement of this agreement. Landlord may cancel this agreement: **(i)** before occupancy begins, upon disapproval of the credit report(s); or **(ii)** at any time, upon discovering that information in Tenant's application is false. A negative credit report reflecting on Tenant's record may be submitted to a credit reporting agency, if Tenant fails to pay Rent or comply with any other obligation under this agreement.

34. **DISPUTE RESOLUTION:**
    A. **MEDIATION:** Tenant and Landlord agree to mediate any dispute or claim arising between them out of this agreement, or any resulting transaction, before resorting to arbitration or court action, subject to paragraph 34B(2) below. Paragraphs 34B(2) and (3) apply whether or not the arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
    B. **ARBITRATION OF DISPUTES:** (1) Tenant and Landlord agree that any dispute or claim in Law or equity arising between them out of this agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 34B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of real estate transactional law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. In all other respects, the arbitration shall be conducted in accordance with Part III, Title 9 of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered in any court having jurisdiction. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05.
    (2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from Mediation and Arbitration hereunder: **(i)** a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in Civil Code §2985; **(ii)** an unlawful detainer action; **(iii)** the filing or enforcement of a mechanic's lien; **(iv)** any matter that is within the jurisdiction of a probate, small claims, or bankruptcy court; and **(v)** an action for bodily injury or wrongful death, or for latent or patent defects to which Code of Civil Procedure §337.1 or §337.15 applies. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a violation of the mediation and arbitration provisions.
    (3) **BROKERS:** Tenant and Landlord agree to mediate and arbitrate disputes or claims involving either or both Brokers, provided either or both Brokers shall have agreed to such mediation or arbitration, prior to, or within a reasonable time after the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the agreement.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Landlord's Initials (___)(___)  Tenant's Initials (___)(___)

Landlord's Initials (___)(___)
Tenant's Initials (___)(___)

Reviewed by _____ Date _____

Copyright © 1998-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CL REVISED 04/06 (PAGE 4 OF 6)**

Case: 09-51900    Doc# 274    Filed: 06/16/10    Entered: 06/17/10 09:54:54    Page 7 of 12

Premises: 455 ~~Oak~~ Harrison    Date 4-11-10

35. **JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this agreement, jointly with every other Tenant, and individually, whether or not in possession.
36. **NOTICE:** Notices may be served by mail, facsimile, or courier at the following address or location, or at any other location subsequently designated:

Landlord: _____   Tenant: Tymo 4 Independent Living Inc
P.O. Box 907                          3475 LA MESA Dr.
Palo Alto, Ca. 94302                  Hayward, Ca. 94542-2522

Notice is deemed effective upon the earliest of the following: **(i)** personal receipt by either party or their agent; **(ii)** written acknowledgement of notice; or **(iii)** 5 days after mailing notice to such location by first class mail, postage pre-paid.

37. **WAIVER:** The waiver of any breach shall not be construed as a continuing waiver of the same breach or a waiver of any subsequent breach.
38. **INDEMNIFICATION:** Tenant shall indemnify, defend and hold Landlord harmless from all claims, disputes, litigation, judgments and attorney fees arising out of Tenant's use of the Premises.
39. **OTHER TERMS AND CONDITIONS/SUPPLEMENTS:**

1. Tenants agreed only to use downstairs floor, the mezzanine and the dining room & the kitchen.
2. The lease is renewable every 21 days, it is not long term lease or month to month.
3. There gone be addendum attached to this contract which mention the additional term and condition
4.

The following ATTACHED supplements/exhibits are incorporated in this agreement: _____

40. **ATTORNEY FEES:** In any action or proceeding arising out of this agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs from the non-prevailing Landlord or Tenant, except as provided in paragraph 34A.
41. **ENTIRE CONTRACT:** Time is of the essence. All prior agreements between Landlord and Tenant are incorporated in this agreement, which constitutes the entire contract. It is intended as a final expression of the parties' agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The parties further intend that this agreement constitutes the complete and exclusive statement of its terms, and that no extrinsic evidence whatsoever may be introduced in any judicial or other proceeding, if any, involving this agreement. Any provision of this agreement that is held to be invalid shall not affect the validity or enforceability of any other provision in this agreement. This agreement shall be binding upon, and inure to the benefit of, the heirs, assignees and successors to the parties.
42. **BROKERAGE:** Landlord and Tenant shall each pay to Broker(s) the fee agreed to, if any, in a separate written agreement. Neither Tenant nor Landlord has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as named in this agreement, in connection with any act relating to the Premises, including, but not limited to, inquiries, introductions, consultations, and negotiations leading to this agreement. Tenant and Landlord each agree to indemnify, defend and hold harmless the other, and the Brokers specified herein, and their agents, from and against any costs, expenses, or liability for compensation claimed inconsistent with the warranty and representation in this paragraph 42.
43. **AGENCY CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
   Listing Agent: _____N/A_____ (Print Firm Name) is the agent of (check one):
   ☐ the Landlord exclusively; or ☐ both the Tenant and Landlord.
   Selling Agent: _____N/A_____ (Print Firm Name) (if not same as Listing Agent) is the agent of (check one):
   ☐ the Tenant exclusively; or ☐ the Landlord exclusively; or ☐ both the Tenant and Landlord.
   Real Estate Brokers are not parties to the agreement between Tenant and Landlord.

Landlord's Initials (____)(____)
Tenant's Initials (____)(____)

Reviewed by _____ Date _____

Premises: 6776 Harrison Oakland  Date 4-11-10

Landlord and Tenant acknowledge and agree that Brokers: (i) do not guarantee the condition of the Premises; (ii) cannot verify representations made by others; (iii) will not verify zoning and land use restrictions; (iv) cannot provide legal or tax advice; (v) will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, if Brokers are not also acting as Landlord in this agreement, Brokers: (vi) do not decide what rental rate a Tenant should pay or Landlord should accept; and (vii) do not decide upon the length or other terms of tenancy. Landlord and Tenant agree that they will seek legal, tax, insurance, and other desired assistance from appropriate professionals.

Tenant _[signature]_ PERRY MOROWAY B. Date 4/11/10
(Print name) Alberta Henderson-Moroua
Address _____ City _____ State ___ Zip ___

Tenant _____ Date _____
Alberta L. Henderson-Moroua
(Print name)
Address _____ City _____ State ___ Zip ___

Landlord _[signature]_ Date _____
(owner or agent with authority to enter into this agreement)
Address _____ City _____ State ___ Zip ___

Landlord _Paul R. M[cLeod]_ Date _____
(owner or agent with authority to enter into this agreement)
Address P.O. Box _____ City _____ State ___ Zip ___

Agency relationships are confirmed as above. Real estate brokers who are not also Landlord in this agreement are not a party to the agreement between Landlord and Tenant.

Real Estate Broker (Leasing Firm) _____
By (Agent) _____ Date _____
Address _____ City _____ State ___ Zip ___
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Listing Firm) _____
By (Agent) _____ Date _____
Address _____ City _____ State ___ Zip ___
Telephone _____ Fax _____ E-mail _____

N/A

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

CL REVISED 04/06 (PAGE 6 OF 6)

Reviewed by _____ Date _____     EQUAL HOUSING OPPORTUNITY

April 28, 2010

Re:. the property know as, 2332 Harrison St. Oakland, Ca. 94612

## ADDENDUM 1

LANDLORDS : BENAYM AND PAULA R. MULUGETA

TENANT: TYME 4 INDEPENDENT LIVING INC.

1- This an addendum for commercial lease agreement dated April 11, 2010
2- Tenant agreed to apply and get conditional use permit from the City of Oakland, within 21 days, if not obtain conditional use permit the contract is null and void.
3- Tenant knows that the property needs a lot of work and the heating system is not in working condition.
4- Tenant knows that the property is for sale, if the sale goes through tenant agreed to move out.
5- Tenant knows and understood that the landlords can not give long term lease, and the lease is for 21 days, and renewable every 21 days. Either party can terminate the lease after giving 21 days notice. No reason is require.
6- Tenant agreed to pay utilities.
7- Tenant CLEARLY understood that within a short time if tenant is unable to fill the 60 units that are available , and pay the amount that the landlords need to cover the mortgage, the property tax and insurance, the lease is null an void.
8- Tenant is TOTALLY responsible for their clients.
9- Tenant clients do not have any contractual relation with the landlords
10- Tenant to have its own insurance to cover their own business and clients.
11- Tenant promise the landlords that he is able to get more clients and be able to pay accordingly.
12- The contract can be amended by the parties.

Dated: April 28, 2010

_____       _____
Landlords                                    Tenants

```
Tsegereda B. Mulugeta
P.O. Box 407
Palo Alto, Ca. 94302
Tel; 650-575-7578
```

UNITED STATES BANKRUPTCY COURT
NORTHER DISTRICT OF CALIFORNIA

In Re:

Benyam and Paula R. Mulugeta   )   Case No. 09-51900 ASW
                               )   Chapter 11
                               )
          Debtors              )
                               )
_____ )

## CERTIFICATE OF SERVICE

I am a citizen of United States and residence of Santa Clara County. I am over the age of eighteen years and not a party to the above-entitled action, my address is 1025 Harker Ave., Palo Alto, Ca. 94301.

On June 16, 2010, I mailed a true and correct copy of the following documents.

**STATUS CONFERENCE STATEMENT**

In the matter indicated below:

X By mail, by enclosing said document(s) in an envelop and depositing the sealed envelop with the United States service with the postage fully prepaid addressed as follows:

**See Attached Mailing List**

This Certificate was executed on June 16, 2010 at Palo Alto, California. I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 16, 2010

_____
Tsegereda Mulugeta

CERTIFICATE OF SERVICE - 1

# SERVICE LIST
## BENYAM AND PAULA MULUGETA
## CASE NO. 09-51900

**U.S. TRUSTEE:**
Office of the U.S. Trustee / SJ
U.S. Federal Bldg.
280 S. 1st St., #268
San Jose, CA 95113-3004

**CREDITORS:**

**Aglaia Panos**
13240 Clairepointe Way
Oakland, CA 94619

**California Mortgage**
62 First St., 4th Fl
San Fco, CA 94105

**Chrysler Financial Services Americas LLC**
Randall P. Mroczynksi
535 Anton Boulevard, 10th Floor
Costa Mesa, AZ 92626

**Chase**
PO Box 94014
Palatine, IL 60094

**Tomoko Nakama**
1569 Jackson St,
Oakland, CA 94612

**Robert Taylor**
541B Cowper
Palo Alto, CA 94301

**Washington Mutual Bank**
7301 Baymeadows Way
Jacksonville, FL 32256

**WELLS FARGO BANK N.A.**
BDD Bankruptcy Dept MAC S4101-08C
100 W Washington St, Phoenix, AZ 85003

CERTIFICATE OF SERVICE - 2