SIMON ARON (Bar No. 108183)
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
11400 West Olympic Blvd., Ninth Floor
Los Angeles, California 90064-1565
Telephone: (310) 478-4100
Fax: (310) 479-1422

Attorneys for Lone Oak Fund, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re

BENYAM MULUGETA and PAULA R. MULUGETA,

Debtors

CASE NO. 09-51900-ASW

Chapter 11

**LIMITED OBJECTIONS OF SECURED CREDITOR LONE OAK FUND, LLC TO DEBTOR'S MOTION TO SELL REAL PROPERTY ("Harrison")**

DATE: October 29, 2010
TIME: 1:15 p.m.
Courtroom: 3020
280 S. 1st Street
San Jose, CA 95113

**TO: DEBTORS BENYAM MULUGETA and PAULA R. MULUGETA, AND THEIR ATTORNEY OF RECORD, THE OFFICE OF THE UNITED STATES TRUSTEE AND OTHER PARTIES IN INTEREST:**

**COMES NOW**, secured creditor Lone Oak Fund, LLC ("Lone Oak"), and hereby submits its limited objections to the Amended Motion of Benyam Mulugeta and Paula R. Mulugeta (collectively the "Debtors") for approval of the sale of the real property (the "Motion to Sell") located 2332 Harrison Street, Oakland, California (the "Harrsion Property") upon the following grounds:

Lone Oak **does not** object to the proposed sale of the Harrison Property to Trading Spaces, LLC, for $7,000,000.00, in cash. Lone Oak's objections are limited to the numerous

inadequacies in the Motion to Sell filed by Debtors. The Motion to Sell fails to adequately explain the details of the proposed sale of the Harrison Property, the disposition of the proceeds of sale, or the procedure for resolving any allegedly disputed claims. The Motion to Sell also fails to comply with the requirements of section 363 of the Bankruptcy Code (11 U.S.C. §363).

### A. Lone Oaks' Secured Claim.

As the Court may recall, Lone Oak lent the Debtors $3,500,000 back in October of 2006. The loan is evidenced by a Note dated October 23, 2006 (the "Note"). The Note provided interest at the rate of 9.9% per annum and interest payments of $28,875.00 per month on the first day of each month commencing on December 1, 2006, with the balance due and payable on April 30, 2008. A true and correct copy of the Note is attached hereto as Exhibit "A" and is incorporated herein by this reference.

The Note is secured by a Deed of Trust in a first position against the Harrison Property (the "Deed of Trust"). The Deed of Trust was recorded on October 27, 2006, as instrument number 2006402481 in the Alameda County Recorder's Office. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "B" and is incorporated herein by this reference.

On or about March 31, 2008, Lone Oak and Debtors entered into a Loan Modification Agreement, whereby the term of the Note and Deed of Trust was extended from April 30, 2008, to and including October 31, 2008. A true and correct copy of the Loan Modification Agreement is attached hereto as Exhibit "C" and is incorporated herein by this reference. Reference to the Note hereinafter shall mean the Note as modified by the Loan Modification Agreement.

On October 31, 2008, Debtors defaulted under the terms of the Note in that Debtors failed to pay the balance of principal and interest remaining unpaid on the Note. The Debtors further defaulted under the terms of the Note and Deed of Trust by failing to pay real property taxes coming due on the Subject Property, taxes which became delinquent first on April 10, 2008.

From and after November 1, 2009, the Debtors have been in default under the terms of Note. Pursuant to its terms, the interest chargeable under the Note increased to 19% per

annum, or $55,416.67 per month. This increase in the interest charged under the Note in the event of a default compensates Lone Oak for the Debtors' failure to pay the principal and interest coming due under the Note and for Lone Oak having to advance monthly interest payments to its investors while not receiving the promised payments from Debtors. This increase in the interest charge was specifically agreed to by the Debtors as part of the Note.

On March 18, 2009, the Debtors commenced the above-captioned chapter 11 case by filing of a voluntary petition. After Lone Oak moved for relief from the automatic stay and after several hearings thereon, the Court ordered the Debtors to provide adequate protection payments to Lone Oak as follows: $15,000 in October 2009, $30,000 in November and December 2009, and $31,7000 in January, February and March of 2010. In April of 2010, the Debtors and Lone Oak entered into a stipulation on the record whereby Debtors made adequate protection payments to Lone Oak of $22,000 in May, June, July, August, September and October of 2010.

As of October 31, 2010, the amount of Lone Oak's secured claim is $4,892,874.17, consisting of the following amounts:

| | |
|---|---|
| $3,500,000.00 | Principal Balance |
| $115,500.00 | Interest @ 9.90% 7/1-10/31/08 |
| ($21,875.00) | Less payments rec'd 7/1-10/31/08 |
| $1,330,000.08 | Maturity Int. @ 19.00% 11/1/08-10/31/10 |
| ($280,100) | Less payments 10/1-10/10/10 |
| $14,295.40 | Foreclosure Fees |
| $111,010.84 | Late Fees |
| $84,805.85 | Legal Fees - Estimated |
| $525.00 | Receivership Fees |
| $25,582.00 | Appraisal Fee + Woodard Site Inspection |
| $13,020.00 | Legal - Expert Testimony |
| $110.00 | Bene Statement, Recon Fee, Wire Fee |
| $4,892,874.17 | Total at 10/31/2010 |

A calculation of the amount of Lone Oak's secured claim is attached hereto as Exhibit "D" and

-3-

incorporated herein by this reference.

**B.     Compliance with Section 363 of the Bankruptcy Code.**

Section 363 of the Bankruptcy Code (11 U.S.C. §363) governs the post-petition use, lease or sale of property of the estate. If the proposed transaction is outside of the ordinary course of business of the debtor, subsection (b) governs. If property of the estate is to be sold free and clear of liens, the subsection (e) and (f) govern. Under subsection (e), a party (like Lone Oak) with an interest in the property that is the subject of the proposed transaction is authorized to request and receive adequate protection. The property can only be sold free and clear of liens under the circumstances listed in subsection (f).

The Motion to Sell fails to comply with the requirements of section 363 in the following respects:

(1)     There is insufficient information about the total amount of proceeds, the amount of costs of sale and the amounts of secured claims for taxes and mortgages against the Harrison Property from which the Court can determine whether the sale can and should be if the approved as being in the best interests of creditors under section 363(b);

(2)     No basis or evidence is presented upon which the Court can determine whether the Harrison Property can be sold free and clear of Lone Oak's lien under subsection (f). Nevertheless, the sale can and should be approved based upon the payment of Lone Oak's secured claim;

(3)     To the extent that the Harrison Property can and should be sold free and clear of Lone Oak's lien, Lone Oak requests and is entitled to receive adequate protection for its interests in the following respects:

(a)     Lone Oak's lien should attach to all of the proceeds of sale and no distributions should be allowed until Lone Oak's secured claim has been fully paid;

(b)     all proceeds of sale should be segregated in an interest bearing account with the title company or similar bondable third party pending allowance and payment of Lone Oak's secured claim;

(c)     all principal, non-default interest and costs and expenses incurred by Lone Oak should be paid from escrow upon the closing of the sale to avoid incurring further

interest charges; and

        (d)    an expedited procedure should be established to resolve any alleged objections to the amounts of Lone Oak's secured claim.

Finally, due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In re Grand Union Co., 204 B.R. 864, 871 (Bankr. D. Del. 1997)(quoting from Mullane v Central Hanover Bank & Trust Co., 339. U.S. 306, 314 S. Ct. 652, 657, 94 L. Ed. 865 (1950)). The Motion to Sell fails to adequately explain the details and impact of the proposed sale of the Harrison Property upon creditors and the estate. It also fails to adequately explain how the proceeds of sale are to be distributed. And, the Motion to Sell fails to address how any allegedly disputed claims are going to be resolved in a timely and efficient fashion..

### C. Conclusion.

For all of these reasons, Lone Oak submits that the Motion to Sell **should be granted**, but only upon payment in full to Lone Oak of its secured claim or, alternatively, only upon provision of adequate protection for Lone Oaks' secured claim.

**WHEREFORE**, Lone Oak requests the Court grant the Motion to Sell but only upon the payment in full of Lone Oak's secured claim or, in the alternative, upon adequate protection of Lone Oak' s interest by: (a) having Lone Oak's lien attach to all of the proceeds of sale with no distributions until Lone Oak's allowed secured claim has been fully paid; (b) having all proceeds of sale segregated in an interest bearing account with a bondable third party pending allowance and payment of Lone Oak's secured claim; (c) having all principal, non-default interest and costs and expenses incurred by Lone Oak paid directly from escrow upon the closing of the sale; (d) establishing an expedited procedure to resolve any alleged objections to the amounts of Lone Oak's secured claim; and, (e) for such other and further relief as is just and proper under the circumstances.

///

///

///

| | | |
|---|---|---|
| 1 | DATED: October 27, 2010 | WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP |
| 2 | | |
| 3 | | By: /s/ Simon Aron |
| 4 | | SIMON ARON<br>Attorneys for Lone Oak Fund, LLC |

# DECLARATION OF JAMES ROTHSTEIN

I, James Rothstein, declare and state as follows:

1. I am over eighteen years old and am an officer of Lone Oak Industries, Inc., which is a member and manager of Lone Oak Fund, LLC, a California limited liability company, ("Lone Oak") the plaintiff in the above-captioned action. Except as otherwise noted, I have personal knowledge of the facts set forth below and, if called as a witness, could and would competently testify thereto under oath

2. I make this declaration in support of Lone Oak's Limited Objections to the Motion to Sell filed by Benyam Mulugeta and Paula R. Mulugeta (collectively the "Debtors").

3. I am one of the custodians of the books, records, files and credit records of Lone Oak relating to the secured loan made by Lone Oak to the Debtors. I have personally worked on said books, records, files and credit records, and I have personal knowledge of the following facts, or have gained knowledge from the business records of Lone Oak maintained by its employees in the ordinary course of its business at or near the times mentioned herein. If called to testify in this action as to matters set forth in this Declaration, I could and would testify competently thereto.

4. During the course of my employment with Lone Oak, I have become familiar with the methods and procedures of compiling and maintaining data and documents concerning loans and extensions of credit by Lone Oak. The books, records and files of Lone Oak as they pertain to the Debtors' account are kept in the ordinary course of Lone Oak's business and are prepared in such manner as to reflect all acts, conditions and events at or near the time such acts, conditions or events occurred.

5. Lone Oak lent the Debtors $3,500,000 back in October of 2006. The loan is evidenced by a Note dated October 23, 2006 (the "Note"). The Note provided interest at the rate of 9.9% per annum and interest payments of $28,875.00 per month on the first day of each month commencing on December 1, 2006, with the balance due and payable on April 30, 2008. A true and correct copy of the Note is attached hereto as Exhibit "A" and is incorporated herein by this reference.

6. The Note is secured by a Deed of Trust in a first position against the Harrison

Property (the "Deed of Trust"). The Deed of Trust was recorded on October 27, 2006, as instrument number 2006402481 in the Alameda County Recorder's Office. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "B" and is incorporated herein by this reference.

7. On or about March 31, 2008, Lone Oak and Debtors entered into a Loan Modification Agreement, whereby the term of the Note and Deed of Trust was extended from April 30, 2008, to and including October 31, 2008. A true and correct copy of the Loan Modification Agreement is attached hereto as Exhibit "C" and is incorporated herein by this reference. Reference to the Note hereinafter shall mean the Note as modified by the Loan Modification Agreement.

8. On October 31, 2008, Debtors defaulted under the terms of the Note in that Debtors failed to pay the balance of principal and interest remaining unpaid on the Note. The Debtors further defaulted under the terms of the Note and Deed of Trust by failing to pay real property taxes coming due on the Subject Property, taxes which became delinquent first on April 10, 2008.

9. From and after November 1, 2009, the Debtors have been in default under the terms of Note. Pursuant to its terms, the interest chargeable under the Note increased to 19% per annum, or $55,416.67 per month. This increase in the interest charged under the Note in the event of a default compensates Lone Oak for the Debtors' failure to pay the principal and interest coming due under the Note and for Lone Oak having to advance monthly interest payments to its investors while not receiving promised payments. This increase in the interest charge was specifically agreed to by the Debtors as part of the Note.

10. On March 18, 2009, the Debtors commenced the above-captioned chapter 11 case by filing of a voluntary petition.

11. In June of 2009, Lone Oak moved for relief from the automatic stay and after several hearings thereon, the Court ordered the Debtors to provide adequate protection payments to Lone Oak. Pursuant thereto, Debtors made the following adequate protection payments to Lone Oak: $15,000 in October 2009, $30,000 in November and December 2009, and $31,7000 in January, February and March of 2010.

12. In April of 2010, the Debtors and Lone Oak entered into a stipulation on the record whereby Debtors made adequate protection payments to Lone Oak of $22,000 in May, June, July, August, September and October of 2010.

13. As of October 31, 2010, the amount of Lone Oak's secured claim is $4,892,874.17, consisting of the following amounts:

| Amount | Description |
|---|---|
| $3,500,000.00 | Principal Balance |
| $115,500.00 | Interest @ 9.90% 7/1-10/31/08 |
| ($21,875.00) | Less payments rec'd 7/1-10/31/08 |
| $1,330,000.08 | Maturity Int. @ 19.00% 11/1/08-10/31/10 |
| ($280,100) | Less payments 10/1-10/31/10 |
| $14,295.40 | Foreclosure Fees |
| $111,010.84 | Late Fees |
| $84,805.85 | Legal Fees - Estimated |
| $525.00 | Receivership Fees |
| $25,582.00 | Appraisal Fee + Woodard Site Inspection |
| $13,020.00 | Legal - Expert Testimony |
| $110.00 | Bene Statement, Recon Fee, Wire Fee |
| $4,892,874.17 | Total at 10/31/2010 |

The calculation of the amount of Lone Oak's secured claim is attached hereto as Exhibit "D" and incorporated herein by this reference.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on October 27, 2010, at Los Angeles, California,

_____
JAMES ROTHSTEIN

# EXHIBIT "A"

# NOTE SECURED BY DEED OF TRUST

LOS ANGELES, CALIFORNIA

October 23, 2006

PRINCIPAL AMOUNT: $3,500,000.00

FOR VALUE RECEIVED, on or before April 30, 2008 (the Maturity Date), the undersigned, BENYAM MULUGETA and PAULA R. MULUGETA, husband and wife as joint tenants (Borrower), whose address is 1025 Harker Avenue, Palo Alto, California 94301, jointly and severally, promise to pay to LONE OAK FUND, LLC, a California limited liability company (Lender), or its assigns, at Post Office Box 491457, Los Angeles, California 90049-9457, the sum of THREE MILLION FIVE HUNDRED THOUSAND and No/100 Dollars ($3,500,000.00), with interest on the unpaid principal balance of the Loan from and including October 25, 2006 until paid, at the rate of NINE and NINE TENTHS per cent (9.90%) per annum, payable interest only, or more, monthly, commencing December 1, 2006 and on the first day of each succeeding month and continuing up to an including April 30, 2008, when the balance of principal and interest remaining unpaid shall be due and payable.

The Note may be paid at anytime in full or in part without premium or penalty. Partial payments must be made in even increments of $1,000.00.

This Note is secured by that certain Deed of Trust and Assignment of Rents of even date herewith (the Deed of Trust), made by Borrower, as Trustor, for the benefit of Lender, as Beneficiary. Capitalized terms not otherwise defined herein shall have the meaning given to such terms in the Deed of Trust and the other Loan Documents associated with this Loan.

Interest shall be calculated on the basis of a 360-day year.

1

All payments are due in lawful money of the United States of America. Borrower shall make monthly payments by means of an electronic funds transfer system (EFT) between a bank account designated by Borrower and the bank account of Lender or its servicing agent. Payment by means of EFT is a condition of the Loan.

LATE CHARGE: Borrower promises to pay a late charge in an amount equal to TEN per cent (10.00%) of the monthly payment for each installment not paid on or before the tenth day of each month. Such late charge represents a reasonable sum considering all the circumstances existing on the date of this Note and represents a reasonable estimate of the costs that will be sustained by Lender due to Borrower's failure to make timely payments.

INTEREST AT MATURITY OR UPON OCCURRENCE OF DEFAULT: From and after the Maturity Date, or as a result of an Event of Default as defined in the Deed of Trust securing this Note (the "Deed of Trust"), or acceleration of the then unpaid principal balance under the terms of this Note, the entire unpaid principal balance shall thenceforth automatically bear an annual interest rate of NINETEEN per cent (19.00%) (the "Default Rate"), instead of the rate specified above, and continue at the Default Rate until paid in full regardless of a cure of such default.

ACCELERATION ON TRANSFER OR ENCUMBRANCE OF THE MORTGAGED PROPERTY ("Due-on-Sale;" "No Further Encumbrance"): If Borrower sells, encumbers or alienates the Mortgaged Property, or any interest in it, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or, if Borrower is an entity and there is a sale or transfer of beneficial interests in Borrower equal to fifty per cent (50.00%) or more of the beneficial ownership interests of Borrower outstanding at the date of this Note; or if Borrower changes or permits to be changed the character or use of the Mortgaged

2

Property; or if title to the Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums evidenced by this Note, regardless of their stated due dates, immediately due and payable and may exercise all rights and remedies in this Note, the Deed of Trust and the Loan Documents.

On Borrower's failure to pay any installment or any other sum due under this Note or the Loan Documents when due and payable, whether by extension, acceleration or otherwise, or an Event of Default as set forth in the Deed of Trust, or any breach of any other promise or obligation in this Note or any Loan Document or any other instrument now or hereafter securing the indebtedness evidenced by this Note, then, in any such event, Lender may, at its option, declare this Note (including, without limitation, all accrued interest) due and immediately payable regardless of the Maturity Date. Lender may exercise this option to accelerate during any default by Borrower regardless of any prior forbearance. Borrower expressly waives notice of the exercise of this option.

Borrower agrees to pay the following costs, expenses and attorneys fees paid or incurred by Lender, or adjudged by a court: (1) Reasonable costs of collection, costs and expenses and attorneys fees paid or incurred in connection with the collection or enforcement of this Note, whether or not suit is filed or foreclosure is commenced; including any such attorneys fees and costs in connection with any bankruptcy proceeding involving the debt evidenced by this Note or in connection with the Mortgaged Property; and (2) Costs of suit and such sums as a court may adjudge as attorneys fees in any action to enforce payment of the Note or any part of it.

Any advances made by Beneficiary under the terms of the Deed of Trust shall bear interest in accordance with the interest rate provisions stated herein.

3

If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights or of any breach, default or failure of condition under this Note. No waiver by Lender of any of its rights or of any such breach, default or failure of condition shall be effective unless the waiver is expressly stated in a writing signed by Lender.

Borrower, endorsers and all other persons liable or to become liable on this Note waive presentment, protest and demand; notice of protest, demand and dishonor; and all other notices or matters of a like nature

This Note inures to and binds the heirs, legal representatives, successors and assigns of Borrower and Lender.

Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or consent of Borrower.

This Note shall be construed and enforceable according to the laws of the State of California for all purposes.

All agreements between Borrower and Lender are expressly limited, so that in no event or contingency whatsoever, whether by reason of the advancement of the proceeds of this Note, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance or detention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances whatsoever, fulfillment of any provision of this Note or of the Deed of Trust or any other Loan Document, after timely performance of such provision is due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of

4

such validity, and if, under any circumstances whatsoever, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to the reduction of the unpaid principal balance under this Note and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal under this Note, such excess shall be refunded to Borrower. This provision shall control every other provision of all agreements between Borrower and Lender.

Except for any notice required by applicable law to be given in another manner, all notices provided in this Note or in the Deed of Trust shall be in writing and shall be given by (1) personal delivery, which shall be effective on the date of such delivery, or (2) by mailing such notice by deposit in the United States Mail, postage prepaid, certified mail, return receipt requested, which shall be effective as of the date set forth in the return receipt, or (3) by overnight courier of recognized reputation, marked for next business-day delivery, which shall be effective as of the date of receipt, addressed to the parties at the addresses set forth in this Note, or at such other addresses as may have been designated by written notice to each other in the manner provided in this paragraph. All notices provided for in this Note and the Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner specified in this paragraph.

The Loan has been negotiated and arranged by Lone Oak Industries Inc., licensed real estate brokers, California Department of Real Estate license identification number 01371863, for compensation paid by Borrower.

//

5

Lender is licensed as a California Finance Lender, Department of Corporations license number 603B623.

Time is of the essence with respect to all obligations of Borrower under this Note.

_____
Benyam Mulugeta

_____
Paula R. Mulugeta

6