BENYAM MULUGETA
PAULA R. MULUGETA
1025 Harker Ave.
Palo Alto, California 94301
e-mail: bmulugeta1020@gmail.com
Telephone: (650) 906-8012
Facsimile: (650) 325-1887

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE:

BENYAM and PAULA R. MULUGETA,    )    Case No. 09-51900 ASW
          Debtors.                )    CHAPTER 11

**DEBTORS' DISCLOSURE STATEMENT**

**TO DEBTORS' PLAN OF REORGANIZATION**

**Dated**: January 14, 2011

**COMBINED HEARING ON DISCLOSURE STATEMENT**

**APPROVAL AND PALN CONFIRMATION**

**Date:** February 18, 2011

**Time:** 2 p.m.

**Place:** United States Bankruptcy Court

   280 S. First St. Room 3020

   San Jose, Ca. 95113

**Judge:** The honorable Arthur Weisssbrodt

DEBTORS DISCLOSURE STATEMENT [1]

# ARTICLE I

## INTRODUCTION

____This is the disclosure statement "Disclosure Statement" of Chapter 11 Case of 09-51900 ASW, Benyam and Paula R. Mulugeta, "Debtors". This Disclosure Statement contains information about the Debtors and describes the Plan filed by Debtors on January 14, 2011. A full copy of the Plan is attached to this Disclosure Statement.

**Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one**.

The proposed distributions under the Plan are discussed at pages 4-20 of this Disclosure Statement. General unsecured creditors are classified in Classes 15-16, and will receive a distribution of 50% of their allowed claims, to be distributed within 5 years from Effective Date of the Plan.

Under Chapter 11 of the Bankruptcy Code, Debtors are authorized to reorganize their business for the benefit of the estate, their creditors and interest holders. A goal of Chapter 11 is to promote equality of treatment for similarly situated creditors and similarly situated interest holders with respect to the distribution of Debtors' assets.

The commencement of Chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the Debtors as of the filing date. The Bankruptcy Code provides that the Debtors may continue to operate its business and remain in possession of their properties as "Debtors –in-possession".

The consummation of a Chapter 11 Plan is the principal objective of a Chapter 11 case. A Chapter 11 Plan sets forth the means for satisfying claims against and interests in Debtors. Thus, Debtors, Benyam and Paula R.Mulugeta, "Debtors" propose this Plan of Reorganization "Plan" pursuant to the provision of Chapter 11 of the U.S. Bankruptcy Code. Debtors submit this Plan of Reorganization in GOOD FAITH to achieve the objective set forth.

DEBTORS DISCLOSURE STATEMENT [2]

The FACTS and The REALITIES, which govern Debtors proposal of this Plan, are:

1- **Background,** Debtors have been active in real estate business since 1981, currently own seven commercial and residential properties.++++

2- **Sale of Harrison** was the 1st approach Debtors took to solve their financial difficulties and come out bankruptcy, since Harrison has the most equity which enables Debtors to pay off most of their creditors and enable them to save their residence. Unfortunately, the sale of Harrison took very long time mainly due to the buyer Trading Spaces LLC financing structure and the crisis in real estate financing. However, since Trading Spaces LLC wants to buy the property and had invested a lot of time and effort and believe they will get the loan, both parties Debtors and Trading Spaces LLC agreed not to cancel the escrow. However, not knowing exactly when Trading Spaces LLC will close or other prospective buyer will make an offer on the property Debtors decided to submit this Plan, while still trying to sell Harrison.

3- **Debtors bankruptcy status** has been the major obstacle for Debtors to get a fair price for their properties, most buyers want to take advantage of Debtors financial difficulties and bankruptcy status and offered much below the fair market value of the properties, and some even waiting to buy the properties in foreclosure for much lower price., which will be a disaster for the estate and most of the creditors.

4- **The Current economy and the real estate market** have been another major factor for Debtors financial difficulties and not been able to get fair price for their properties, and sell their properties even though they have been listed for sell.

5- **Forced sale** – Chapter 7 liquidation will have a serious negative impact to most of the creditors, especially to the juniors' lien holders and the Estate.

6- **Equity,** most of Debtors' properties, except the two properties, Sevier and Brann, have sufficient equity which are essential for Debtors successful reorganization and for most creditors to be able to get their money.

7- **Rental Income,** all of Debtors properties generate rental income, which enable Debtors to be able to pay post-petition to the first lien holders and avoid foreclosure and protect

DEBTORS DISCLOSURE STATEMENT [3]

Case: 09-51900   Doc# 360   Filed: 01/14/11   Entered: 01/18/11 11:36:52   Page 3 of 15

the interest of the estate as well as the junior liens holders. Has been essential for adequate protection of most of the creditors.

8- **Conclusion** the purpose and the spirit of Chapter 11 is to give the second chance to Debtors, and allow them to come out as viable entities not to destroy them, and at the same time to serve the interest of most of the creditors. Debtors believe that this propose Plan precisely achieve that purpose. Thus, Debtors encourage creditors to vote for the Plan.

### A- PURPOSE OF THE DISCLOSURE STEMENT

On March 18, 2009, Benyam and Paula R. Mulugeta, Debtors filed a voluntary petition for relief under Chapter 11 of the united States Bankruptcy Code (11 U.S.C 1101) in the United States Bankruptcy Court of Northern District of California, Case No.09-51900ASW. Debtors propose the Debtors' Plan of Reorganization Dated January 14, 2011, the Plan. A true copy of the Plan is attached to this Disclosure Statement. All capitalized terms used in this Disclosure Statement and the Plan shall have the meanings assigned to them in the Definition.

Pursuant to section 105(d)(2)(B)(vi) of the Bankruptcy Code (11 U.S.C. 105(d)(2)(B)(vi) the Court has authorized the hearings on disclosure statement approval and plan confirmation to be combined.

This Disclosure Statement, which has been conditionally approved by the United States Bankruptcy Court for the Northern District of California, is furnished to provide adequate information to enable a hypothetical reasonable investor typical of holders of claims or interest of the relevant class to make an informed judgment to either accept or reject the Plan. Final approval of this Disclosure Statement is to occur at the combined hearing on the Disclosure Statement and Plan confirmation.

### B- Deadlines for Voting and Objecting: Date of Plan Confirmation Hearing

Only impaired classes of claims are entitled to vote on the Plan. 11 U.S.C. 1126 (f). under the Plan, Classes 1-14 are impaired. The Plan can be confirmed by the Court if the Plan is accepted by the holders of at least two-third in amount and more than one-half in number of claims in each impaired class of claims voting on the Plan. 11 U.S.C. 1126(c) . Unless there is unanimous acceptance of the Plan by an impaired class, the Bankruptcy Court must determine that the holders of claims in the class will receive or retain under the Plan property of a value not less than the amount each holder would receive if the bankruptcy estate of Debtor were liquidated under the provisions of Chapter 7 of the Bankruptcy Code 11 U.S.C. 1129 (a)(7)A)(ii).

### C- "Cramdown"

Even if the requisite numbers of acceptances are not obtained, the Court may nevertheless confirm the Plan over the rejection of the Plan by a class (or classes) of claims or interests, 11 U.S.C. 1129 (b). This process is known as cramdown. The application of cramdown is not automatic, but must be requested by the proponent of the Plan 11 U.S.C. 1129(b)(1).

Section 1129(b) provides that if an impaired class has not accepted the Plan, the Court may nevertheless confirm it if it does not discriminate unfairly, and is fair and equitable, with respect to each impaired class of claim or interests.

### D- Absolute Priority Rule

The term "fair and equitable" includes a concept known as the "absolute priority rule". That rule holds that junior classes may take nothing under the plan until dissenting senior classes have been paid in full, and that senior classes may not be overpaid until dissenting junior classes have been paid in full 11 U.S.C. 1129(b)(2).

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed. The hearing at which the Court will determine whether to confirm the Plan will take place on:

1- **Date:** February 18, 2011
2- **Time** : 2pm

DEBTORS DISCLOSURE STATEMENT [5]

3- **Place of the Hearing**: United States bankruptcy Court

                        280 S. First St. Room 3020

                        San Jose Ca. 95113

4- **Judge:** The honorable Arthur Weissbrod

If you are entitled to vote accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope:

                        Benyam Mulugeta

                        1025 Harker Ave.

                        Palo Alto, Ca. 94301

Your ballot must be received by _____, or it will not be counted.

Objections to this Disclosure Statement and the confirmation of the Plan must be filed with the Court and served upon Debtors at the above address by **February 11, 2011**.

If you want additional information about the Plan, you should contact Debtors at 1025 Harker Ave. Palo Alto, Ca. 94301

**A- DISCLAIMER**

**The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until February 11, 2011.**

# ARTICLE II
# BACKGROUND

The Debtors has been in real estate business since 1982. Since then they have been buying and selling residential as well as commercial properties. Debtor, Benyam Mulugeta, has been licensed real estate broker in the state of California. In addition, Debtor, Benyam Mulugeta, has two masters one in Economics and the other one in Public Admistration. Debtor, Paula R. Mulugeta has BA in economics and minor accounting. Currently, Debtors own eight commercial and residential properties in the Bay Area.

**1-Events Leading to Chapter 11 Filing,** there are three main reasons, which cause Debtors' financial difficulties and ultimately forced Debtors to file Chapter 11 to get protection from the Court and be able to reorganized, they are:

A) **"Harrison St." Property**, in 2007 Debtors planned to convert the property known as 2332 Harrison, Oakland, Ca. form residential hotel to commercial hotel. That required by the City of Oakland that the hotel has to be closed for a minimum of a year to get permit for change of usage. In order to get the permit and to archive the highest and best use of the property and maximize its potential Debtors closed the property, hired an architect to convert the hotel form residential hotel to commercial four stars hotel. During that period the property did not have any income, but huge expenses which create financial difficulties, and destroy the Debtors cash flow.

B) **"Grand Ave." Property**, in early 2008 Debtors decided to destroy the property, known as 353 Grand Ave. Oakland, Ca. 21 units' apartment complex and 4 stores front, and replace it with 26 2 bedrooms and 2 bathrooms condominium complex, with 3 store fronts. After did feasibility study, and getting permit and Ok from the City of Oakland, Debtors gave eviction notice to the tenants in order to archive that objective, and the property became vacant with no income for 8 months. That also creates financial strange on Debtors, which was one of the reasons why Debtors had to file Chapter 11.

C) **Summer 2008 real estate crash,** was one of the major factors that forced Debtors to file Chapter 11, since real estate has been main line of business for Debtors for over 25 years. Debtors plan to convert the hotel, from residential to commercial, and to build 26 condominium complexes at 353 Grand could not be archived, and that also brought major financial difficulties on Debtors, and which lead to the filling of Chapter 11.

**NOTE: All the above three factors have been improving and providing a better chance for the Plan to succeed.**

**2-Significant Events During the Bankruptcy Case**

A) **Stabilizing the Estate.** Debtors forced to file Chapter 11 on March 18, 2009 when Lone Oak Fund field "receivership" on March 16, 2009, and proceeded to foreclose on "Harrison". Filing Chapter 11 helped Debtors to stabilize the estate and stopped the whole thing from collapsing and Debtors losing everything they worked for the past 25 years at the benefit of few seniors' lien holders. The steps taken by Debtors to stabilized the estate are A) renovating "Grand" and rented back after 8 months of vacancy, which improve Debtors cash flow and able them to make the post-petition payments to Sterling Savings Bank, B) fixing the other properties and to be able to get a better rent, and to be able to make the necessary payments such as insurance and maintains.

B) **Sale Of "Harrison"**

On February, 2009 Debtors entered in to contract with Trading Spaces LLC, for $7,000,000.00 "As IS'. Even though Debtors have been frustrated by the slow progress of Trading Space closing the deal, Debtors are hopeful that Trading Spaces LLC will close the transaction, and giving Debtors the necessary cash infusion to help Debtors to pay off their creditors, and get out of Bankruptcy.

C) **Post- Petition Payment and "Adequate Protection"**

One of the stabilizing factors Debtors have taken is to pay "post –petition' payments to the senior creditors in order to avoid foreclosure and relief from stay, and to protect the equity they have on their properties, which are essential for Debtors successful reorganization.

**D) Hiring Attorney.** After filing Chapter 11, Debtors hired Scott Goodsell law firm to help them with their Chapter 11 case. However, so after Mr. Goodsell took the case, he assigned the case to one of his attorney in the firm, unfortunately Debtors realized that the attorney, Mr. W. Healy, did not have extensive knowledge of the real estate market and business, which Debtors main line of business, thus, both Mr. Goodsell and the Debtors agreed for the sake of the Estate and the positive outcome of the case he removes himself from the case. Since, then Debtors have been trying to hire a qualified Chapter 11 lawyer, with no success because of the following reasons a) the good ones asked us over $25,000.00 up front which we do not have currently, b) most of them do not want to involve in the middle of the case, and c) most of the good ones are very busy as the result of the current economy environment, and do not want another case especially the one that is already start. That has been the reason why we are forced to represent our selves and defend our case. Thank God, the system and the law allow us to represent ourselves. We have been spending numerous hours and days in law libraries and talking to different lawyer to prepare this Plan and Disclosure Statement. We realized we cannot represent ourselves as well as a good lawyer can do, however, since we know the fact and we have been in the business for over 25 years and have extensive knowledge and skill on the business, thus, we are able to present the fact and the truth in this case, which we believe serves as the foundation for the Court to confirm the Plan.

# ARTICLE III
## FEASIBILITY OF THE PLAN

Debtors believe that the Plan meets the requirements of 11299(a)(11), and has reasonable prospect of success and is workable because of the following factors:

**1-EQUITY**, of the seven properties that Debtors owe five have sufficient equity, with the exception of "Sevier" and "Brann" which are essential for Debtors ability to pay off their creditors, if they are sold in orderly way, than liquidation. Especially, once the real estate market turns around and property value becomes normal.

| Property | Fair Market Value | Loan | Equity |
| --- | --- | --- | --- |
| 1-"Harker " | $3,000,000.00 | $2,100,000.00 | $900,000.00 |
| 2-"Harrison" | $7,000,000.00 | $4,300,000.00 | $2,400,000.00 |
| 3-"Grand" | $2,900,000.00 | $1,700,000.00 | $1,200,000.00 |
| 4-"O'Keefe" | $2,600,000.00 | $1,600,000.00 | $1,000,000.00 |
| 5-"Chaucer" | $800,000.00 | $560,000.00 | $240,000.00 |
| Total | $16,300,0000.00 | $10,260,000.00 | $5,740,000.00 |

**Note:** Debtors will be able to pay from the above equity, the junior lien holders, CMR, Sequoia Mortgage Capital, Tomko Nakam,, Robert Taylor, Agalia Panos, and other unsecured creditors. This cannot happen if Debtors assets is liquidated, none of the above junior creditors will get a diem if the senior lenders allowed to foreclose. That is more reason why the Court should confirm the Plan and allowed the going-concern value of the Debtors.

### 2-Cash Flow under the Plan/ "Adequate Protection"

Debtors can be able to collect a total of $77,000 per month+ rental income from all their properties, which enable them to make monthly payments not only to the 1st lien holders but also to the junior lien holders, until that time when real estate market value improve and sale most of their properties to pay off their creditors.

| Property | Rental Income | | Proposed Loan Payment |
| --- | --- | --- | --- |
| | Current | Performa | |
| 1-"Harker" | $3,500.00 | $6,500.00 | $6,500.00* on 1st & 2nd |
| 2-"Harrison" | $30,000.00 | $60,000.00+ | $18,000.00 |
| 3-"Grand" | $19,5000.00 | $25,000.00 | $8,500.00 |
| 4-"O'Keefe" | $16,000.00 | $20,000.00 | $7,746.00 |
| 5-"Chaucer" | $3,800.00 | $4,200.00 | $1,874.00 |
| 6-"Sevier" | $2,500.00 | | $1,546.00 |
| 7-'Brann" | $1,700.00 | $2,000.00 | $1,500.00 |
| 8-"Alam" | -0- | $3,800.00 | $2,800.00 |
| Total | $77,000.00 | $121,500.00 | $48,466.00 |

**There is around $28,000.00 per month will be left after paying senior lien holders to pay off insurance, property taxes and junior creditors as well as for maintenance and management costs.**

1- **Economic Conditions**

The current real estate market and the economic condition of the Nation are NOT the best time to sale real estate. In addition, the fact Debtors are in bankruptcy is a "double-jeopardy" for Debtors to get fair price for their properties. Most prospective and savvy buyers are looking for great deal especially in today's real estate market, and try to pay 50 to 60 percent of the value. If Debtors are forced to sale their properties at this time and under this circumstance or the properties are liquidated under Chapter 7; no one but the senior lien holders will be the only one benefit at the expenses of the Estate and the other creditors.

Debtors believe the real estate market will improve the next two to three years, based on their knowledge, the historical factors and economic indicators. Real estate market has been going in

cycle. At that time the Debtors properties will maintain their value if not improve, which will be beneficial to the Estate future and the creditors interest.

**4-The ability of Debtors to Manage the Estate**

Debtors have been in real estate business since 1981, start the business with less than $3,000 investment and build it to over $17,000,000.00 in asset. Debtor, Benyam Mulugeta, has been a real estate broker since 1985, licensed in the State of California. During this time Debtors had bought and sold many properties for their own holdings and clients. Therefore, Debtors have extensive knowledge and skill in real estate business. In addition, since these properties are their own investment, they have huge investment in money and time, and their financial well being depends on them, thus they have huge stake better than anyone else in their successful outcome.

## ARTICLE IV

### CLASSIFICATION OF CLAIMS AND INTERESTS

The claims against Debtors and the equity interests in Debtors are designated and classified as provided below for purpose of the Plan

| Class | Description |
|---|---|
| Class 1 | Secured Claim of Chase on Harker (1st Trust Deed) |
| Class 2 | Secured Claim of Sequoia Mortgage (Subject) on Harker (2nd Trust Deed) |
| Class 3 | Secured Claim of Sequoia Mortgage (HELOC) on Harker (3rd Trust Deed) |
| Class 4 | Secured Claim of Sequoia Mortgage on Harker (4th Trust Deed) |
| Class 5 | Secured Claim of Lone Oak Fund on Harrison (1st Trust Deed) |
| Class 6 | Secured Claim of Tomoko Nakama on Harrison (2nd Trust Deed)** |
| Class 7 | Secured Claim of Robert Taylor on Harrison (3rd Trust Deed)** |
| Class 8 | Secured Claim of Sterling Savings Bank on Grand (1st Trust Deed) |

| | | |
|---|---|---|
| Class 9 | Secured Claim of California Mortgage Reality (CMR) on Grand (2nd Trust Deed) ** | |
| Class 10 | Secured Claim of Sterling Savings Bank on O'Keefe (1st Trust Deed) | |
| Class 11 | Secured Claim of EMC Mortgage on Chaucer (1st Trust Deed) | |
| Class 12 | Secured Claim of EMC Mortgage on Sevier (1st Trust Deed) | |
| Class 13 | Secured Claim of Bank of America on Brann (1st Trust Deed) | |
| Class 14 | Secured Claim of Bank of America on Alma (1st Trust Deed) | |
| Class 15 | General unsecured Claims of $3,000 or less | |
| Class 16 | General Unsecured Claims in excess of $3,000 | |

**NOTE ***

**CMR** is a blanket lone on five properties as 2nd Deed of Trust, the properties are 353 Grand, Oakland, 240 O'Keefe, East Palo Alto, 1112-1114 Chaucer, Berkeley, 1339 Sevier Ave. Menlo Park and 5401 Brann, Oakland.

**Tomko Nakama** is 3rd Deed of Trust on 2332 Harrison, Oakland and 353 Grand Ave. Oakland.

**Robert Taylor** is 3rd Deed of Trust on 240 E. O'Keefe, East Palo Alto, and 4th Deed of Trust on 2332 Harrison, Oakland.

### ARTICLE V

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. RTUSTEES FEES, AND PRIORITY TAX CLAIMS

DEBTORS DISCLOSURE STATEMENT [13]

Allowed Claims which are unclassified pursuant to Section 1123(a)(1) of the Bankruptcy Code shall be treated as follows:

3.1 <u>Allowed Administrative Expenses Claims</u>  Each holder of an admisntrative expenses claim allowed under 503 of the Code and claim in an involuntary case allowed under 502 (f) of the Code will be paid in full on the effective date of the Plan (as defined in Article VII) in cash or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

3.2 <u>Priority Tax Claims</u> Each holder of a priority tax claim will be paid consistent with 1129 (a)((9) (c) of the Code a) in equal installments deferred cash payments, made annually on the anniversary of the Effective Date, over a period of five years from the Plan Confirmation, of a value as of the Effective Date, equal to the allowed amount of such claim, plus interest at the rate provided under applicable tax law for tax payments not made when first due or upon such other terms as may be agreed upon by the holder of such Allowed Claim, or b) such lesser amount as the holder of such Allowed Priority Tax Claim and the Debtors prior to the Effective Date and the Reorganized Debtors following the Effective Date might otherwise agree. The Reorganized Debtors may in its discretion choose to direct payment of any such Tax Claim in whole or in part earlier than required hereunder if sufficient funds exist to pay or reserve for all Allowed Administrative Claims and all other then due and current obligations of the Estate.

3.3 <u>United States Trustee Fees</u>  All fees requires to be paid by 28 U.S.C 1930 (a) (6) will accrue and timely paid until the case is closed, dismissed or converted to another chapter of the Code. Any U.S.Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE VI

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The classified claims and interests designated in Article II of the Plan will receive the treatment specified in this Article IV. All classes are impaired under the Plan.

4.1 **Class 1** Chase, holder of a Promissory Note of $1,397,5 00.00 and 1st Trust of Deed on 1025 Harker Ave. Palo Alto, Debtors residence shall retain its lien, except that the demand feature of the Note, and any bankruptcy or insolvency ipso facto clauses shall no longer be

operative. Interest on the Note shall accrue at the rate of 4 percent per year, and a payment of $4,600.00 interest only per month. The principal under the Note to be paid on or before October, 2034, which will be the "Maturity Date' under the Note. Any arrears accrued as of the date of plan confirmation shall be paid by January 31, 2016. Class 1 is impaired.

4.2 **Class 2,** Sequoia Mortgage (Subject) holder of Promissory Note for $300,000.00 and 2nd Trust Deed on 1025 Harker Ave. Palo Alto, Ca. Debtors residence shall retain its lien. Interest on the Note shall accrue at the non-default rate of 5 percent, and a payment of $1,500 interest only per month. The principal amount to be paid in full on or before January 31, 2016, which will be the "Maturity Date" under this Plan. Any arrears accrued as of the date of plan confirmation shall be paid by January 31, 2016. Class 2 is impaired.

4.3 **Class 3,** Sequoia Mortgage (HELOC) holder of Promissory Note of $200,000 and 3rd Trust Deed on 1025 Harker Ave. Palo Alto, Ca. Debtors residence shall retain its lien. Interest on the Note shall accrue at the non-default rate of 5 percent, and payment of $1,000 interest only per month. The principal amount, which is the $200,000, to be paid on or before January 31, 2016, which will be the "Maturity date" under this Plan. Any arrears accrued as of the date of the plan confirmation shall be paid by January 31, 2016. Class 3 is impaired.

4.4 **Class 4,** Sequoia Mortgage holder of Promissory Note for 110,000 and 4th Trust Deed on 1025 Harker Ave. Palo Alto, Ca. Debtors residence shall retain its lien. Interest on the Note shall accrue at the non-default rate of 5 percent, and payment of $750.00 interest only per month. The principal amount, which is the $110,000, to be paid on or before January 31, 2016, which will be the "Maturity Date" under this Plan. Any arrears as of the date of the plan confirmation shall be paid by January 31, 2016.

4.5 **Class 5,** Lone Oak Fund holder of Promissory Note for $3,500,000 and 1st Trust Deed on 2332 Harrison St. Oakland, Ca. shall retain its lien. Interest on the Note shall accrue at the non-default rate of 7 percent, and payment of $18,000.00 interest only per month. The principal amount, which is $3,500,000.00, to be paid on or before January 31, 2016, which will be the "Maturity Date" under this Plan. Any arrears as of the date of the plan confirmation shall be paid by January 31, 2016.