BENYAM MULUGETA
PAULA R. MULUGETA
1025 Harker Ave.
Palo Alto, California 94301
e-mail: bmulugeta1020@gmail.com
Telephone: (650) 906-8012
Facsimile: (650) 325-1887

*ORIGINAL FILED*
*JAN 14 2011*
*CLERK, United States Bankruptcy Court, San Jose, California*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE:

BENYAM and PAULA R. MULUGETA,

    Debtors.

Case No. 09-51900 ASW

CHAPTER 11

January 14, 2011

**DEBTORS' PLAN OF REORGANIZATION**

DEBTORS PLAN OF REORGANIZATION [1]

# ARTICLE I

## SUMMARY

Benyam and Paula R. Mulugeta, Debtors in possession in this Chapter 11 case propose the following Plan of Reorganization Dated: **January 14, 2011**.

The objective of this Plan is to formulate a restructuring or reorganization that will enable the Debtors, Benyam and Paula R. Mulugeta, to emerge from bankruptcy as a viable, profitable enterprise, and the same time the Plan to be best serve the interest of creditors and equity holders.

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Debtors, Benyam Mulugeta and Paula R. Mulugeta ("Debtors") from Debtors' future income and refinance and/or sale of Debtors' assets. The Plan creates 16 classes, of that 4 are secured by Debtors' residence, the rests on others Debtors properties. These claims will be paid per the Notes of each claimant and per terms of this Plan over five years, with any arrears cured in 5 years. Some of the claims will be paid off on the "Maturity Date" of the Notes. The unsecured claims will be paid up to fifty percent, without interest, after the end of the fifth year. Priority and admisntrative claims are unclassified and will be paid as required by law. Creditors should read Plan Articles II-VI to learn the precise treatment of all claims and interest.

All creditors and equity security holders should refer to Articles II through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holder has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with you attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

# ARTICLE II

# DEFINITIONS

Unless the context otherwise, the following definition applies in this Plan:

1 – **"Debtors in Possession"** is defined as the debtors except when a person that has qualified under Section 322 is serving as trustee in the case.

2- **"Administrative Claim"** means a claim for any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code that is entitled to priority over general unsecured claims under Section 507(a)(1) of the Bankruptcy Code, including, without limitation (a) any actual or necessary costs and expenses of preserving the bankruptcy estate incurred on or after the Petition Date and through and including the Effective Date of the Plan, (b) any cure amounts that must be paid in connection with the assumption of any executor contract or unexpired lease of the Debtors under Section 365 of the Bankruptcy Code, (c) fees payable to the court system or the U.S. Trustee under Section 1930 of Title 28, united States Code, and (d) allowed compensation for fees and reimbursable expenses for legal and other services under Section 330 and 331 of the Bankruptcy Code, or otherwise allowed by the Bankruptcy Court under section 503 of the Bankruptcy Code.

3- **"Allowed Secured Claim"** means that amount of an Allowed Claim which is secured by a lien or subject to offset within the provisions of Section 506(a) of the Bankruptcy Code.

4- **"Allowed Unsecured Claim"** means any Allowed Claim that is a general unsecured claim, including an allowed Rejection Claim. It does not include Allowed Secured Claims, Allowed Administrative Claims. Priority Claims or Tax Claims.

5- **"Ballot"** shall mean the ballot submitted by the Debtors for expressly including preference claims.

6- **"Bankruptcy Code"** or **"Code"** means Title 11 of the United States Code, as it was in effect on the date of filing of the Plan, as amended by any amendments applicable to this Chapter 11 Case, and also includes Sections 157, 158, 1334, 1408-1412 and 1452 of Title 28 of the United States Code.

7- **"Bankruptcy Court'** or **"Court"** means the united States Bankruptcy Court for the Northern District of California, having jurisdiction over the Chapter 11 Case.

8-**"Bankruptcy Rules"** means the rules of practice and procedure in cases under Title 11 of the United States Code, as promulgated under 28 U.S.C 2075.

9- **"Chapter 7"** means Chapter 7 of the Bankruptcy Code.

10- **"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

11- **"Chapter 11 Case"** means the case commenced by the Debtors filing the petition under Chapter 11 of the Bankruptcy Code on March 18, 2009, and which is pending in the Court as Case No. 09-51900 ASW.

12 -**"Confirmation"** means the effect of entry by the Bankruptcy Court of a Final Order confirming the Plan.

13- **"Confirmation Order"** means an order or orders entered by the Bankruptcy Court confirming the Plan.

14- **"Debtors"** means Benyam and Paula R. Mulugeta, the debtors in possession in the Chapter 11 Case.

15- **"Effective Date"** means the business day designated as such by the Reorganized Debtors which is the later of (a) 15 days following the entry of the Confirmation Order, unless such order is stayed by order of the Court with original or appellate jurisdiction over this Chapter 11 Case, in which event such date shall be first business day on or after the eleventh calendar day after such sty expires, or (b) 15 day days following the determination by Final Order.

16- **'Estate"** means the estte the Debtors created under Section 541 of the Bankruptcy Code by the commencement of the Chapter 11 Case.

17- **"Petition Date"** means March 18, 2009, the date on which the Chapter 11 Petition was filed by the Debtors with the Court.

18- **"Plan"** means the Debtors Chapter 11 Plan of Reorganization of January 14, 2011, including any modification(s) or amendment(s) thereto.

19- **"Priority Claim"** means any Allowed Claim entitled to priority pursuant to Code Section 507(a), but not including Administrative Claims or Tax Claims.

20- **"Property"** means the real property interest owned by the Debtors, located at 1025 Harker Ave. ""Harker", Palo Alto, Ca. 94301, 2332 Harrison Ave. "Harrison", Oakland, Ca. 94612, 353 Grand Ave. "Grand", Oakland, Ca.94610, 240 E. O"Keefe" St. "O'Keefe", East Palo Alto, Ca. 94303, 1339 Sevier Ave. "Sevier", Menlo Park, Ca. 94025, 1112-1114 Chaucer Ave. "Chaucer", Berkeley, Ca. 94670, 5401 Brann, "Brann", Oakland, Ca. 94612, and 1111 Alam St. "Alma" Palo Alto, Ca. 94302.

21- **"Reorganized Debtors"** means Benyam and Paula R. Mulugeta, Debtors upon the Effective Date of the Plan.

22- **"Tax Claim"** means any Allowed Unsecured Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

23- **"U.S. Trustee"** means the Office of the United States Trustee.

24- **"Voting Deadline"** shall mean February 11, 2011 at 5p.m. Pacific Time, which is the latest date and time a creditor can cast a Ballot for the acceptance or rejection of the Plan.

25- A term used in the Plan that is not defined in the Plan shall have the meaning assigned to such term in the Bankruptcy Code, the Bankruptcy Rules, or the California Uniform Commercial Code, if defined therein.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

The claims against Debtors and the equity interests in Debtors are designated and classified as provided below for purpose of the Plan

| Class | Description |
|---|---|
| Class 1 | Secured Claim of Chase on Harker (1st Trust Deed) |

| | | |
|---|---|---|
| 1 | Class 2 | Secured Claim of Sequoia Mortgage (Subject) on Harker (2nd Trust Deed) |
| 2 | Class 3 | Secured Claim of Sequoia Mortgage (HELOC) on Harker (3rd Trust Deed) |
| 3 | Class 4 | Secured Claim of Sequoia Mortgage on Harker (4th Trust Deed) |
| 4 | Class 5 | Secured Claim of Lone Oak Fund on Harrison (1st Trust Deed) |
| 5 | Class 6 | Secured Claim of Tomoko Nakama on Harrison (2nd Trust Deed)** |
| 6 | Class 7 | Secured Claim of Robert Taylor on Harrison (3rd Trust Deed)** |
| 7 | Class 8 | Secured Claim of Sterling Savings Bank on Grand (1st Trust Deed) |
| 8 | Class 9 | Secured Claim of California Mortgage Reality (CMR) on Grand (2nd Trust Deed)** |
| 10 | Class 10 | Secured Claim of Sterling Savings Bank on O'Keefe (1st Trust Deed) |
| 11 | Class 11 | Secured Claim of EMC Mortgage on Chaucer (1st Trust Deed) |
| 12 | Class 12 | Secured Claim of EMC Mortgage on Sevier (1st Trust Deed) |
| 13 | Class 13 | Secured Claim of Bank of America on Brann (1st Trust Deed) |
| 14 | Class 14 | Secured Claim of Bank of America on Alma (1st Trust Deed) |
| 15 | Class 15 | Secured Claim of Aglia Panos (unrecorded Deed) |
| 16 | Class 16 | General unsecured Claims of $3,000 or less |
| 17 | Class 17 | General Unsecured Claims in excess of $3,000 |

**IMPAIRMENT: All classes are impaired under the Plan.**

**NOTE \*\***

**CMR** is a blanket loan on five Debtors' properties as 2nd Deed of Trust, the properties are 353 Grand, Oakland, 240 O'Keefe, East Palo Alto, 1112-1114 Chaucer, Berkeley, 1339 Sevier Ave. Menlo Park and 5401 Brann, Oakland.

**Tomko Nakama** is 3rd Deed of Trust on 2332 Harrison, Oakland and 353 Grand Ave. Oakland.

**Robert Taylor** is 3rd Deed of Trust on 240 E. O'Keefe, East Palo Alto, and 4th Deed of Trust on 2332 Harrison, Oakland

# ARTICLE IV
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. RTUSTEES FEES, AND PRIORITY TAX CLAIMS

Allowed Claims which are unclassified pursuant to Section 1123(a)(1) of the Bankruptcy Code shall be treated as follows:

3.1 <u>Allowed Administrative Expenses Claims</u> Each holder of an admisntrative expenses claim allowed under 503 of the Code and claim in an involuntary case allowed under 502 (f) of the Code will be paid in full on the effective date of the Plan (as defined in Article VII) in cash or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

3.2 <u>Priority Tax Claims</u> Each holder of a priority tax claim will be paid consistent with 1129 (a)((9) (c) of the Code a) in equal installments deferred cash payments, made annually on the anniversary of the Effective Date, over a period of five years from the Plan Confirmation, of a value as of the Effective Date, equal to the allowed amount of such claim, plus interest at the rate provided under applicable tax law for tax payments not made when first due or upon such other terms as may be agreed upon by the holder of such Allowed Claim, or b) such lesser amount as the holder of such Allowed Priority Tax Claim and the Debtors prior to the Effective Date and the Reorganized Debtors following the Effective Date might otherwise agree. The Reorganized Debtors may in its discretion choose to direct payment of any such Tax Claim in whole or in part earlier than required hereunder if sufficient funds exist to pay or reserve for all Allowed Administrative Claims and all other then due and current obligations of the Estate.

3.3 <u>United States Trustee Fees</u> All fees requires to be paid by 28 U.S.C 1930 (a) (6) will accrue and timely paid until the case is closed, dismissed or converted to another chapter of the Code. Any U.S.Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE V

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The classified claims and interests designated in Article II of the Plan will receive the treatment specified in this Article IV. All classes are impaired under the Plan.

4.1 **Class 1** Chase, holder of a Promissory Note of $1,397,500.00 and 1st Trust of Deed on 1025 Harker Ave. Palo Alto, Debtors residence shall retain its lien, except that the demand feature of the Note, and any bankruptcy or insolvency ipso facto clauses shall no longer be operative. Interest on the Note shall accrue at the rate of 3.953 percent per year, and a payment of $4,600.00 interest only per month. The principal under the Note to be paid on or before October, 2034, which is called the "Maturity Date. Any arrears accrued as of the date of plan confirmation shall be paid by January 31, 2016. Class 1 is impaired.

4.2 **Class 2,** Sequoia Mortgage (Subject) holder of Promissory Note for $300,000.00 and 2nd Trust Deed on 1025 Harker Ave. Palo Alto, Ca. Debtors residence shall retain its lien. Interest on the Note shall accrue at the non-default rate of 5 percent, and a payment of $1,500 interest only per month. The principal amount to be paid in full on or before January 31, 2016, which will be the "Maturity Date". Any arrears accrued as of the date of plan confirmation shall be paid by January 31, 2016. Class 2 is impaired.

4.3 **Class 3**, Sequoia Mortgage (HELOC) holder of Promissory Note of $200,000 and 3rd Trust Deed on 1025 Harker Ave. Palo Alto, Ca. Debtors residence shall retain its lien. Interest on the Note shall accrue at the non-default rate of 5 percent, and payment of $1,000 interest only per month. The principal amount to be paid in full on or before January 31, 2016, which will be the "Maturity Date". Any arrears accrued as of the date of the plan confirmation shall be paid by January 31, 2016. Class 3 is impaired.

4.4 **Class 4**, Sequoia Mortgage holder of Promissory Note for $110,000 and 4th Trust Deed on 1025 Harker Ave. Palo Alto, Ca. Debtors residence shall retain its lien. Interest on the Note shall accrue at the non-default rate of 5 percent, and payment of $750.00 interest only per month. Any arrears as of the date of the plan confirmation shall be paid by January 31, 2016.

4.5 **Class 5,** Lone Oak Fund holder of Promissory Note for $3,500,000 and 1st Trust Deed on 2332 Harrison St. Oakland, Ca. shall retain its lien. Interest on the Note shall accrue at the non-default rate of 7 percent, and payment of $18,000.00 interest only per month. Any arrears as of the date of the plan confirmation shall be paid by January 31, 2016.

4.6 **Class 6**, Tomoko Nakama holder of Promissory Note for $185,000 and 2nd Trust Deed on 2332 Harrison St. Oakland, Ca. and 3rd Trust Deed holder on 353 Grand Ave. shall retain its lien. Interest on the Note shall accrue at the non-default rate of 5 percent, and payment of $1,000 interest only per month. The principal amount, which is $185,000, to be paid in full on or before January 31, 2016, which will be the "Maturity Date". Any arrears as of the date of the plan confirmation shall be paid by January 31, 2016. Class 6 is impaired.

4.7 **Class 7** Robert Taylor holder of Promissory Note for $200,000. And 3rd Trust Deed holder on 2332 Harrison and 240 E. O'Keefe, East Palo Alto shall retain its lien. Interest on the Note shall accrue at the non-default rate of 5 percent and payment of $1,000 interest only per month. The principal amount, which is the $200,000, to be paid in full on or before January 31, 2016, which is the "Maturity Date. Any arrears accrued as of the date of plan confirmation shall be paid by January 31, 2016. Class 7 is impaired.

4.8 **Class 8** Sterling Savings Bank holder of Promissory Note for $1,700,000.00 and 1st Trust Deed on 353 Grand Ave. Oakland shall retain its lien. Interest on the Note shall accrue at the non-default rate of 6 percent and payment of $8,500.00 interest only per month. The principal amount to be paid in full on or before May 1st, 2019, which is the "Maturity Date". Any arrears accrued as the date of plan confirmation shall be paid by January 31, 2016. Class 8 is impaired.

4.9 **Class 9** California Mortgage and Reality (CMR) holder of Promissory Note for $1,000,000 and 2nd Deed of Trust on Debtors properties (Grand, O'Keefe, Chaucer, Sevier and

DEBTORS PLAN OF REORGANIZATION [9]

Case: 09-51900    Doc# 361    Filed: 01/14/11    Entered: 01/18/11 11:37:38    Page 9 of 17

Brann) shall retain its lien. Interest on the Note shall accrue at the non-default rate of 4 percent and payment of $3,000.00 interest only per month. The principal to be paid in full on or before January 31, 2016. Any arrears accrued as the date of plan confirmation shall be paid by January 31, 2016. Class 9 is impaired.

4.10 **Class 10** Sterling Savings Bank holder of Promissory Note for $1,549,140.00 and 1st Trust Deed on 240 E. O'Keefe, East Palo Alto, Ca. shall retain its lien. Interest on the Note shall accrue at the rate of 6 percent and payment of $7,745.00 per month. The full principal to be paid on or before May 1, 2019, which is the "Maturity Date". Any arrears accrued as the date of plan confirmation shall be paid by January 31, 2016. Class 10 is impaired.

4.11 **Class 11** EMC Mortgage holder of Promissory Note for $562,250.00 and 1st Trust Deed on 1112-1114 Chaucer, Berkeley, Ca. 94702 shall retain its lien. Interest on the Note shall accrue at the rate of 4 percent and payment of $1,874.00 per month. The principal amount, which is $562,250, to be paid in full on or before the "Maturity Date", which is May 1st, 2045 under the Note.. Any arrears accrued as the date of plan confirmation shall be paid by January 31, 2016. Class 11 is impaired.

4.12 **Class 12** EMC Mortgage holder of Promissory Note for $464,000 and 1st Trust Deed on 1339 Sevier Ave. Menlo Park, Ca. shall retain its lien. Interest on the Note shall accrue at the rate of 4 percent and payment of $1,546.00 per month. The principal, which is $464,000.00 to be paid in full on or before May 1st, 2045, which is the "Maturity Date "under the Note. Any arrears accrued as the date of plan confirmation shall be paid by January 31, 2016. Class 12 is impaired.

4.13 **Class 13** Bank of America holder of Promissory Note for $325,000.00 and 1st Trust Deed on 5401 Brann, Oakland, Ca. retain its lien. Interest on the Note shall accrue at the rate of 4 percent and payment of $1,083.00 per month. The principal amount to be paid on or before January 31, 2019, which is the "Maturity Date". Any arrears accrued as the date of plan confirmation shall be paid by January 31, 2016. Class 13 is impaired.

4.14 **Class 14** Bank of America holder of Promissory Note of 630,000 and 1st Trust Deed on 1111 Alma St. Palo Alto, Ca. retain its lien. Interest on the Note shall accrue at the rate of 4

percent and payment of $2,100.00 per month. The principal amount to be paid in full on or before January 31, 2025, which is the new "Maturity Date". Any arrears accrued as the date of plan confirmation shall be paid by January 31, 2016. Class 14 is impaired.

4.15 **Class 15,** Aglia Panos, holder of Promissory Note, for $250,000.00 which is not recorded in any of Debtors property, will receive f $500.00 interest payment per month. The principal, which is $250,000.00, will be paid in full on or before January 31, 2016 the "Maturity Date" in the Plan.

4.16 **Class 16,** General Unsecured Claims of $3,000 or less. This Class consists of General Unsecured Claims equal to or less than $3,000. Unless otherwise agreed to by the holder of an Allowed General Unsecured Claim and the Reorganized Debtors, each holder of an Allowed General Unsecured Claim that is in an amount equal to or less than $3,000 shall receive cash on the First anniversary of the Effective Date in the amount of 50% of its Allowed Unsecured Claim, without interest. The holders of Claims in this Class are impaired.

4.17 **Class 17,** General Unsecured Claims in Excess of $3,000. Each holder of a General Unsecured Claim in excess of $3,000, including the unsecured portions of any Secured Claim, shall receive distributions, unless otherwise agreed to by the holder and the Reorganized Debtors.

## ARTICLE V

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed (by a final non-appealable order), and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection, or (ii) no proof of

claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 <u>Delay of Distribution on a Disputed Claim.</u> No distributions will be made on account of a disputed claim unless such claim is allowed (by a final non-appealable order).

5.03 <u>Settlement of Disputed Claims.</u> The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

1111 Alma Ave. Palo Alto, Ca. 94303 was purchased with "Lease Option to Purchased" agreement. Debtors were in the process of getting a loan to purchase "Alma" when the economy and the real estate market collapse. As the result, the loan is still in the name of the seller, Mr. Solomon Reddi, even though the deed was transfer to Debtors in order to facilitate the purchase process.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

The means and the provisions how the plan will be implemented as required under 1123 (a)(5) of the Code are as follow:

**Section 7.01 Reorganized Debtors.** On the Effective Date of the Plan, Debtors, Benyam and Paula R. Mulugeta, shall become the Reorganized Debtors, and shall continue to operate their business.

**Section 7.02 Distributions on Effective Date of the Plan:** On the Effective Date of the Plan, the Reorganized Debtors shall pay the following Claims sin full;

    1- Unpaid united States Trustee fees calculated to the Effective Date of the Plan,

    2- Administrative Claims.

**Section 7.03 Further Financial Reorganization.** Prior to substantial consummation of the Plan, to the extent the Reorganized Debtors finds it (1) desirable to do so accelerate performance of the Plan, or (2) necessary to do so, it may seek a modification of the Plan which may provide for further financial reorganization.

**Section 7.04 Enforcement of Claims.** After the Effective Date of the Plan, the Reorganized Debtors shall retain and enforce claims belonging to the Estate. Such claims include, without limitations, claims based on the avoiding powers contained in 11 U.S.C. 544,545 and 547-553, inclusive.

**Section 7.05 Grace Period.** Except as otherwise specifically provided in this Plan, action required to be taken by the Reorganized Debtors shall be accomplished as quickly as practicable after the Effective Date of the Plan. Any payment or act required to be made or done under this Plan shall be made or done no later than thirty (30) days after the date such payment is required to made.

**Section 7.6 Retained Bankruptcy Court Jurisdiction** The jurisdiction of the Court shall continue after the Effective Date of the Plan, whether or not the case is closed, with respect to the following:

    1- Determination of the allowability of disputed claims, together with the claims of Debtors for affirmative relief;

    2- Assumption or rejection of unexpired leases and executor contracts, and determination of disputed claims arising out of rejections;

3- Determination of any tax liability under 505 of the Bankruptcy Code;

4- Determinations of requests for payment of claims entitled to priority under 507(a)(1) of the Bankruptcy Code.

5- Resolution of any disputes regarding interpretation of the Plan;

6- Implementation or modification of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation appropriate orders to protect the Reorganized Debtors from creditors' actions and to enforce any injection in the Plan, and

7- Adjudication of any claims for relief by the Reorganized Debtors based on transactions or events which arose before or after the date of the petition or the Effective Date of the Plan, including without limitation, claims for relief on behalf of the Estate based on avoiding powers in 544, 545 and 547-553, inclusive, of the Code.

**Section 7.7 Effects of Confirmation of the Plan:** Confirmation of the Plan:

1- Binds the Reorganized Debtors, any creditor, any person or entity acquiring property under the Plan, to the Plan's Provisions;

2- Vests all of the property of the Estate in the Reorganized Debtors free and clear of all claims and interests of creditors except as otherwise provided in the Plan;

3- Discharges the Reorganized Debtors from any debt that arose before confirmation of the Plan except as provided in the Plan;

4- Voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of Benyam and Paula R. Mulugeta with respect to any debt discharged, and

5- Operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of Benyam and Paula R. Mulugeta.

**Section 7.8 Injunction Against Action to Enforce Pre-Plan Confirmation Debts** The order confirming the Plan shall include a provision that enjoins all parties in interest: 1) from taking

any action to recover property from the Reorganized Debtors on account of a debt that arose before confirmation of the Plan, and 2) against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt that arose before confirmation of the Plan.

**Section 7.9 Choice of Law: Venue.** To the extent not inconsistent with the United States Bankruptcy Law, the laws of the State of California shall apply with respect to the interpretation and enforcement of the Plan. Any action to interpret or enforce the Plan, any of its provisions or any instrument executed pursuant to provisions of the Plan, may be brought either in the United States Bankruptcy Court, Northern District of San Jose, California.

**Section 7.10 Special Notice.** The Reorganized Debtors shall compile and maintain and make available to interested parties, a Special Notice List. The List shall contain the names and addresses of all parties in interest who, after the Effective Date of the Plan, ask in writing to be added to the List. The Order Confirming the Plan shall contain a provision advising all parties in interest of their opportunity to request special notice of actions proposed to be taken. A copy of the Order shall be served by first class mail on all parties in interest. No notice of any motion, application or action proposed to be taken after the Effective Date of the Plan need be given to any party not on the Special Notice List.

**Section 7.11 Debtors' option to seek Plan confirmation Under 11 U.S.C. Section 1129(b)(2).** If necessary Debtors, Benyam and Paula R. Mulugeta, may seek confirmation of this Plan pursuant to 1129(b)(1) of the Bankruptcy Code.

## ARTICLE IX

## DISCHARGE/ALTERNATIVES TO THE PLAN

If the Plan is not confirmed and consummated, the alternatives to the Plan include

A) Liquidation of the Debtors under Chapter 7 of the Bankruptcy Code, and

B) An alternative plan or reorganization can be summated

### A) Liquidation Under Chapter 7

If no plan is confirmed, the case may be converted to a case under Chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate the Debtors' assets for distribution in accordance with the priorities established by Chapter 7 of the Bankruptcy Code. The Debtors believes that liquidation under Chapter 7 would result in no distributions being made to creditors because 1) the Debtors assets would be sold or otherwise disposed of through foreclosure or in a forced sale situation over a short period of time, especially it is a disaster and will not net positive out come to the junior lien holders and the estate, and will wipe out the equity that can be used to pay off the junior creditors and will destroy the Debtors chance to come out as viable entity. In addition, when the 1st lien holders allowed foreclosing no junior creditors would have any significant prospect of being paid, whereas they would have the chance under the Plan.

2) Additional administrative expenses would be involved in the appointment and activities of a trustee.

### B) Alternative Plan of Reorganization

If the Plan is not confirmed, the Bankruptcy Court could confirm a different plan. The Plan is a reorganization of Debtors' business and a different plan might involve some other form of reorganization or liquidation of the Debtors' assets. The Debtors believe that the Plan, as described herein, enables creditors to realize the highest and the best value under the circumstances. The Debtors believe that any liquidation of the Debtors' assets or alternative form of Chapter 11 plan is a much less attractive alternative to creditors than the Plan because of the potentially greater returns provided by the Plan. Other alternatives could involve diminished recoveries, significant delay, uncertainty, and substantial additional admisntrative costs, and to

allow others who do not have direct stake or effect in the outcome will result in loss of a lot of money which can be used to rehabilitee Debtors and pay off most of junior lien holders.

The Debtors believe that the Plan provides the best recovery to its creditors by providing them with a potential distribution of cash rather than diminished or non-existent recoveries following a liquidation of their assets.

## ARTICLE X
## CONCLUSION

Debtors believe the Plan is in the best interest of all creditors and urge those entitled to vote to accept the Plan.

Dated: January 14, 2011                    Respectfully Submitted

By: _____
Benyam Mulugeta
Debtor

By: _____
Paula R. Mulugeta
Debtor