1    UNITED STATES BANKRUPTCY COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    (SAN JOSE DIVISION)

4

5    In re:

6    BENYAM MULUGETA and          Case No. 09-51900
     PAULA R. MULUGETA,

7                                  Chapter 11

8                                  San Jose, California
                                   December 14, 2012

9                                  2:40 p.m.

         Debtors.

10   _____/

11

12                  TRANSCRIPT OF PROCEEDINGS
          a) NOTICE OF STATUS CONFERENCE IN CHAPTER 11

13        b) MOTION TO CONVERT CASE TO CHAPTER 7 FILED BY
                  OFFICE OF THE U.S. TRUSTEE

14        c) JOINDER IN MOTION BY STERLING SAVINGS BANK
             d) JOINDER IN MOTION BY LONE OAK FUND, LLC

15    e) JOINDER IN MOTION FILED BY WELLS FARGO BANK, N.A.
          f) JOINDER IN MOTION FILED BY HENRY KOEHLER, et al.

16                g) OPPOSITION FILED BY DEBTORS
     h) MOTION TO USE CASH COLLATERAL FILED BY BENYAM MULUGETA

17            i) OPPOSITION BY LONE OAK FUND, LLC
          j) OPPOSITION BY HENRY C. KOEHLER, et al.

18          k) OBJECTION BY BANK OF AMERICA, N.A.
            l) OBJECTION BY STERLING SAVINGS BANK

19    m) THIRD AMENDED DISCLOSURE STATEMENT FILED BY DEBTORS
               n) OBJECTION BY BANK OF AMERICA, N.A.

20   o) OBJECTION BY COUNTY OF ALAMEDA TREASURER-TAX COLLECTOR
              p) OBJECTION BY WELLS FARGO BANK, N.A.

21     q) MOTION TO DISMISS CASE BY STERLING SAVINGS BANK
                  r) OPPOSITION BY DEBTORS

22

23        BEFORE THE HONORABLE ARTHUR S. WEISSBRODT
                UNITED STATES BANKRUPTCY JUDGE

24

25

1  APPEARANCES:

2
   For the Estate:          LAW OFFICES OF MARC VOISENAT
3                           BY: MARC VOISENAT, ESQ.
                            1330 Broadway #734
4                           Oakland, California 94612

5                           (APPEARING TELEPHONICALLY)

6

7  For Sterling Savings:    ABBEY, WEITZENBERG, HOFFMAN,
                            WARREN, at al.
8                           By: MITCHELL B. GREENBERG, ESQ.
                            P.O. Box 1566
9                           Santa Rosa, California 95402

10                                   -and-

11                          MacCONAGHY & BARNIER
                            BY: GREGORY BABCOCK, ESQ.
12                          645 1ST Street West, Suite D
                            Sonoma, California 95476

13

14
   For Bank of America:     MILES, BAUER, BERGSTROM & WINTERS
15                          BY: BRIAN TRAN, ESQ.
                            1231 E. Dyer Road #100
16                          Santa Ana, California 92705

17                          (APPEARING TELEPHONICALLY)

18

19 For the U.S. Trustee:    OFFICE OF THE U.S. TRUSTEE
                            BY: JOHN WESOLOWSKI, ESQ.
20                          280 S. First St. #268
                            San Jose, California 95113

21

22

23

24

25

1  APPEARANCES (CONTINUED):

2

3  Court Recorder:              YONG WON
                                UNITED STATES BANKRUPTCY COURT
4                               280 South First Street
                                San Jose, California 95113
5

6

7  Transcription Service:      Jo McCall
                                Electronic Court
                                Recording/Transcribing
8                               2868 E. Clifton Court
                                Gilbert, Arizona 85295
9                               Telephone: (480) 361-3790

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2   December 14, 2012                            2:40 p.m.

3                          -oOo-

4            THE COURT: On Mulugeta, I want the Debtors to go

5   back out of court and sit down and come back and be able to

6   tell me what properties they have, what properties they're

7   selling, and for each property, whether they're keeping it

8   or selling, what the value of the property is, what the

9   debt on the property is, and what the taxes on the property

10  are.  The status conference statement does not do that.

11  The numbers have changed, and Debtors should talk to

12  counsel for the secured creditors before they come back

13  into court with all that information.

14            Now the Debtors say they're going to keep Grand,

15  and they said they're going to sell Grand.  You can't do

16  both.  Their statement says they're going to sell Grand;

17  they're going to list it for sale; and they're going to

18  keep it because they need the rents.  You can't have it

19  both ways.  So Debtors need to do all of that.

20            Thank you.  Court is in recess.

21            THE CLERK: Please rise.

22      (Whereupon, extraneous matters are heard, and this

23  matter is recalled at 4:17 p.m.)

24            THE COURT: You should have all of that written

25  down, Mr. Mulugeta, what I told you, each number, and you

1   should work with the creditors to have each number that

2   they need to agree with or disagree with.  It's okay if

3   they disagree, but they have to have each number that you

4   have.

5        (Whereupon, extraneous matters are heard, and this

6   matter is recalled at 4:43 p.m.)

7              THE COURT: Okay.  <u>Mulugeta.</u>

8              MR. TRAN: Good afternoon, Your Honor, Brian Tran

9   on behalf of Bank of America.

10             MR. WESOLOWSKI: John Wesolowski for the U.S.

11  Trustee's Office.

12             MR. VOISENAT: Good afternoon, Your Honor, Marc

13  Voisenat on behalf of the estate.

14             MR. GREENBERG: Good afternoon, Your Honor, Mitch

15  Greenberg for Sterling Bank, creditor.

16             MR. BABCOCK: And good morning, Your Honor,

17  Gregory Babcock also for Sterling Bank.

18             THE COURT: It's not morning, Mr. Babcock, but

19  you're welcome.

20             MR. BABCOCK: I'm sorry.  I apologize, Your Honor.

21             THE COURT: Okay.

22             MR. MULUGETA: Good afternoon, Your Honor, Benyam

23  Mulugeta.

24             MRS. MULUGETA: Good afternoon, Your Honor, Paula

25  Mulugeta.

1          THE COURT: All right.  So let's start with

2   Harker, and Mr. Mulugeta, I don't see how you can do

3   anything without a lawyer here.  You can't file a Plan; you

4   can't file a Disclosure Statement.  You're making arguments

5   that don't make any sense.  You're a very bright man, but

6   you're not a bankruptcy lawyer, and this is complicated and

7   I gave you this time to find a lawyer; you didn't do it,

8   and you're in trouble.  So let's start with Harker.  Harker

9   is your residence.  Now you said that you have a motion to

10  modify with the first deed of trust.  Who holds the first

11  deed of trust on Harker?

12          MR. MULUGETA: Chase.

13          THE COURT: Chase.  Is Chase represented here

14  today?  No.  Normally, my understanding from being in court

15  and listening to what the lawyers say and what the

16  creditors say, is that a first won't give you a mortgage

17  modification unless it takes care of all subordinate liens.

18  So the idea that you're going to go to another lender and

19  try to get a separate mortgage modification with respect to

20  the second, third, and fourth doesn't make a lot of sense

21  to me, because I don't think the first will give you a

22  mortgage modification unless the others are taken care of,

23  and normally, it's my understanding that the first

24  basically honchoes the whole deal.

25          Now, I don't know what your understanding is.

1  What is your understanding about your pending mortgage

2  modification for the first?

3          MR. MULUGETA: They're asking to provide them all

4  the information.  The only thing now is waiting for them to

5  do the appraisal on the property.

6          THE COURT: Okay.  Have you provided all the

7  information?

8          MR. MULUGETA: Everything, yes.

9          THE COURT: When did you provide all the

10 information?

11         MR. MULUGETA: It has been on an ongoing basis.

12         THE COURT: When did you provide the last piece of

13 information?

14         MR. MULUGETA: The last one I did a month ago,

15 with Ms. Terry Owens (Phonetic) with Chase in Texas.

16         THE COURT: And did they say they're going to deal

17 with the subordinate liens?  Have you talked to them about

18 who's going to deal with the subordinate liens?

19         MR. MULUGETA: You mean the second and third?

20         THE COURT: Have you talked to the first about

21 who's going to deal with the subordinate liens?

22         MR. MULUGETA: No, I didn't.

23         THE COURT: You better do that, because I don't --

24 you say you're going to apply for a mortgage modification

25 on the subordinate liens, but I'm not sure that makes any

1   sense.

2           MR. MULUGETA: No, I didn't ask.  I don't know --
3   that was a mistake if I said that.

4           THE COURT: No, that's what your papers say, Mr.
5   Mulugeta.

6           MR. MULUGETA: No.  I did ask Sequoia to modify
7   the loan.

8           THE COURT: Right.  And so the question is, are
9   they going to even consider that or is the first going to
10  handle the situation with respect to all of the loans?

11          MR. MULUGETA: No.  Because they are separate --
12  different companies.

13          THE COURT: I know they're different companies,
14  but you don't understand what I'm saying, and I'm saying
15  that the way these banks seem to operate is that whoever is
16  the first, they won't give you a modification unless they
17  have worked something out with the second and the third and
18  the fourth.  They won't give you a modification.  They
19  handle the negotiations with the second and the third and
20  the fourth.

21          MR. MULUGETA: This is news to me.

22          THE COURT: I understand, but I think that's what
23  you need to find out about.  Now, Harrison has relief from
24  stay.  Grand Avenue, you say in your Disclosure
25  Statement -- in your statement, two things.  You say the

1  property has equity and it will be listed for twenty-eight,

2  ninety-five, two million, eight hundred and ninety-five.

3  Therefore, there will be money left after paying Sterling

4  Savings Bank.  The current amount owed to Sterling Savings

5  Bank is $1,619,549.  Is that correct?

6       MR. GREENBERG: That is not correct, Your Honor.

7       THE COURT: Okay.  Pull the mike to you.

8       MR. GREENBERG: That is not correct, Your Honor.

9       THE COURT: How much is the current owed to

10  Sterling?

11       MR. GREENBERG: The number that I have as of today

12  is $1,916,800.

13       THE COURT: What is the current tax that's owed on

14  Sterling?

15       MR. GREENBERG: Approximately $249,000, on the

16  Grand Avenue property.

17       THE COURT: Okay.  And then what --

18       MR. GREENBERG: And I don't believe that that

19  number is in dispute.  The tax number is not in dispute.

20       THE COURT: Right.  The tax is how much?

21       MR. GREENBERG: 249,000.

22       THE COURT: Okay.  And Sterling is owed how much?

23       MR. GREENBERG: $1,916,800, and that's actually

24  conservatively low.  There's some fees that have not been

25  included in that number, but that's the best number I could

1  get this afternoon from my client.

2          THE COURT: Okay.  Are there juniors on Grand?

3          MR. MULUGETA: Yes.

4          THE COURT: How much?

5          MR. MULUGETA: There is Tomoko (Phonetic) one,

6  eighty-five, and then California Mortgage one million, but

7  five properties.  It's a bridge --

8          THE COURT: It's cross-collateralized.

9          MR. MULUGETA: Cross-collateral.

10         MR. GREENBERG: And I just -- Your Honor, if I

11 could, I spoke to the attorney representing Cal Mortgage

12 this afternoon, and he confirmed that the amount is

13 approximately a million.  Whether or not that number will

14 be reduced or not is a big question mark, I don't know, in

15 terms of negotiations.  Yes, it's cross-collateralized, but

16 he doesn't think there's any equity in any of the other

17 properties, so he's looking at this property.

18         THE COURT: So what are you really going to do

19 with Grand, because you say:

20             "Debtors believe, however, when the Plan and

21             Disclosure Statement confirm the property is

22             essential for Debtors' reorganization, since it

23             generates rental incomes, which satisfy the

24             debt."

25             So on the one hand, you say you're going to sell

1  it; you're going to list it for sale, and on the other

2  hand, you say you don't want to sell it.

3          MR. MULUGETA: Can I answer that?  I'm working

4  with the County to negotiate the $250,000 tax.  If they

5  allow me to pay 20 percent and spread the payment, then I

6  would like to keep the property.  If not, I will list it

7  for sale.

8          THE COURT: And isn't there a standard situation

9  where you can pay this over a certain period of years?

10          MR. MULUGETA: Yes, with 20 percent down.  I

11  talked to the County.  For me that was 20 percent down.

12  They would allow me to spread the payments in five years.

13          THE COURT: So what is the issue?

14          MR. MULUGETA: The issue is for me to get the Plan

15  confirmed before I get that chance.

16          THE COURT: They won't do it unless you have the

17  Plan confirmed?

18          MR. MULUGETA: No.

19          THE COURT: Okay.  You're going to submit

20  applications to employ real estate brokers to sell Chaucer,

21  Brand, and Alma.

22          MR. MULUGETA: Yes.

23          THE COURT: Okay.  Is there any equity in any of

24  those for you?

25          MR. MULUGETA: Chaucer has.

1          THE COURT: How much?

2          MR. MULUGETA: Over a hundred thousand.

3          THE COURT: Okay.  When are you going to employ a

4    broker?

5          MR. MULUGETA: Immediately.

6          THE COURT: Within a week.

7          MR. MULUGETA: Yes.

8          THE COURT: Okay.  And you're going to -- if

9    there's no equity in Brand, why don't you let the creditor

10   repossess Brand?

11         MR. MULUGETA: Yes, I could.

12         THE COURT: So why don't you -- who is the

13   creditor on Brand?

14         MR. MULUGETA: B of A.

15         THE COURT: So why don't you just stipulate to a

16   relief from stay.  Why go through the trouble of selling it

17   if there's -- there's not going to be any equity to pay a

18   broker; is there?

19         MR. MULUGETA: No.

20         THE COURT: How is the broker going to get paid?

21         MR. MULUGETA: A short sale.

22         THE COURT: Well, if the B of A wants to agree to

23   a short sale, but otherwise, maybe you should just let them

24   have relief from stay.

25         MR. MULUGETA: And Sevier (Phonetic) they agreed.

1  Sevier --

2         THE COURT: Wait.

3         MR. MULUGETA: Okay.

4         THE COURT:  I'm not talking about Sevier; I'm
5  talking about Brand.

6         MR. MULUGETA: Brand, no.  We didn't start.

7         THE COURT: All right.  So this week, you're going
8  to talk to Brand about -- are you going to list it with a
9  broker or are you going to talk to Brand about giving them
10  relief from stay?  Which?

11         MR. MULUGETA: Talking to the lender to give them
12  relief from stay.

13         THE COURT: Okay.  What about Alma?

14         MR. MULUGETA: We want to keep that.

15         THE COURT: Look, Mr. Mulugeta, I'm reading
16  paragraph 4 of your statement.  It came the other day,
17  December 11th.

18              "Debtors will soon submit applications to employ
19              real estate brokers to sell Chaucer, Brand and
20              Alma properties."

21         MR. MULUGETA: Okay.  Sorry.

22         THE COURT: What do you mean "sorry."  I don't
23  know what you're doing.  You say you're going to keep Grand
24  and you're going to sell Grand.  You're going to keep Alma
25  and you're going to sell Alma.

1        MR. MULUGETA: Alma, we sell it.  We're going to
2    list it immediately.

3        THE COURT: But you just told me you're going to
4    keep it, a minute ago.

5        MR. MULUGETA: Because you told me to go out and
6    tell me which properties --

7        THE COURT: No, I asked you to tell me what there
8    was equity in.  I didn't tell you which you were going to
9    sell, but this says we're going to sell.  I'm not trying to
10   force you to sell it; I'm trying to explain to you that I
11   can't tell a thing from what you're saying because you're
12   saying inconsistent things from moment to moment.  I don't
13   know what you're saying, to be honest with you.

14       MR. MULUGETA: I'm sorry, but I hope -- I'm trying
15   to be as clear as possible.

16       THE COURT: Are you selling Alma or are you
17   keeping Alma?

18       MR. MULUGETA: We're selling Alma.

19       THE COURT: When?

20       MR. MULUGETA: We're going to list it immediately.

21       THE COURT: Is there equity in Alma?

22       MR. MULUGETA: To pay the existing loans, yes.

23       THE COURT: Okay.  And what's the purpose of
24   selling it?  Why not stipulate to relief from stay to the
25   second?  Who owns the second?

1          MR. MULUGETA: Selam Orady (Phonetic).

2          THE COURT: Does he want relief from stay?

3          MR. MULUGETA: Yeah, he will take it.

4          THE COURT: So -- I mean you can sell it if you

5   want, but why go to the trouble if you have no equity.  You

6   see, you don't know what you're -- I don't know how to tell

7   you this any more.  You don't have a plan.  I'm not talking

8   about a Plan of Reorganization.  You don't have a plan that

9   makes sense.  I understand -- the only thing you seem to

10  have equity in, you may have some equity in Grand; you may

11  have some equity in Grand, and you want to keep your home,

12  but that's it.  You've lost Harrison.  You want to sell

13  Chaucer.  You want to sell Servier (Phonetic).  You want

14  to -- O'Keefe is foreclosed.  You want to sell Brand.  You

15  want to sell Alma.  This becomes a very simple case because

16  you want to keep your home and you want to do it through a

17  mortgage modification, and you may or may not want to keep

18  Grand.

19         MR. MULUGETA: Yes.  That's clear, exactly what

20  you want to do.

21         THE COURT: But why -- how many lawyers have you

22  talked to, Chapter 11 lawyers, in the last month?

23         MR. MULUGETA: We talked to Mr. Stanley --

24         THE COURT: Who's Mr. Stanley -- or Mr. Zlotoff?

25         MR. MULUGETA: Yes.

1          THE COURT: Who else?

2          MR. MULUGETA: There are a few others, mostly in

3    Oakland.  We talked to a few lawyers, and they are willing

4    to help us.

5          THE COURT: Well then, why aren't they here?

6          MR. MULUGETA: Because they want me to –- the only

7    way they're going to come on board, if somebody paid them,

8    which means somebody -- either cousin or family or

9    somebody, a friend.  So that's what I'm working on.  And

10   Mr. Stanley said –- he will talk to me next week, because

11   he'll be out for some family visit this week.  I did

12   contact several other lawyers.  Some said, no, we are busy;

13   we cannot take something already started.

14         THE COURT: But you've not contacted any of the

15   San Jose lawyers.

16         MR. MULUGETA: No, I did contact Mr. Greene, but

17   he gave me a few other names.  He said he's busy –- and Mr.

18   Connolly.

19         THE COURT: And what are you going to do about the

20   tax debt?  That's why Mr. Voisenat didn't think you have a

21   confirmable Plan.

22         MR. MULUGETA: Which tax?

23         THE COURT: Well, you tell me.

24         MR. MULUGETA: Well, Harrison is going to be, you

25   know, taken care of by itself.

1          THE COURT: Right.

2          MR. MULUGETA: Grand, when I sell it, there's

3    money in it to pay.

4          THE COURT: Is Grand listed?

5          MR. MULUGETA: Well, I sent in the application to

6    the Court?

7          THE COURT: When?

8          MR. MULUGETA: Two days ago.

9          MR. WESOLOWSKI: And, Your Honor, I would have a

10   problem with that application.

11         THE COURT: Why?

12         MR. WESOLOWSKI: Because there's no 2014

13   disclosures.  It's just not an appropriate application.

14         MR. GREENBERG: And, Your Honor, that's I think

15   the third application in the last two years for that

16   particular property.

17         Your Honor, may I be heard on this?  I know it's

18   getting late.

19         THE COURT: In a minute.

20         MR. MULUGETA: Well, the only thing to do is to

21   change the application, but, you know, I have the

22   intention.  I did interview an agent to list the property.

23   They did a market analysis, and they come up with the

24   price.  So -- I mean, there isn't a brokerage firm who do

25   business in that neighborhood.

1          THE COURT: Go ahead.

2          MR. GREENBERG: Your Honor, I appreciate the

3 leeway that's been given to Mr. Mulugeta over the last

4 almost four years, but it's been almost four years.  We

5 have a motion to dismiss or convert pending in front of

6 Your Honor.  I believe that it's appropriate.  I believe

7 that it has almost nothing to do with all of the issues

8 that we're talking about here today, but rather, about

9 things that have happened over the last four years, failure

10 to comply with Your Honor's own orders, five or six of

11 them, failure to make the payment on the Grand Avenue

12 taxes, failure to pay insurance premiums for a year where

13 the property was naked.  There comes a point in time at

14 each one of these cases where enough is enough, and I think

15 that we've reached that point here.  Your Honor has said

16 that there seems to be no plan.  Well, we're talking about

17 just a general plan of, what's the Plan?  He doesn't have a

18 plan let alone a confirmable Chapter 11 Plan.

19          We have a Disclosure Statement that was supposed

20 to be filed by Your Honor's own order several months ago.

21 That still hasn't been filed.  We have nothing, and it's

22 been three years and nine months.  My client believes

23 strongly that we've reached the point in this case where

24 our motion to dismiss should be heard and I respectfully

25 ask that you address that, Your Honor.

1          MR. MULUGETA: Can I answer?  This is just, you

2     know, a classic -- they're trying to benefit for

3     themselves.  The interest --

4          THE COURT: Of course that's what they want.  Of

5     course.  They want to get paid.  They want their property

6     back.

7          MR. MULUGETA: Yeah.  I have been paying adequate

8     protection.  The property -- I mentioned, I attached

9     Exhibit --

10          THE COURT: Have you been paying currently?

11          MR. MULUGETA: Yes.

12          THE COURT: Is he current with his adequate

13     protection payments to you?

14          MR. GREENBERG: His November payment came in just

15     this morning.  It was late.  There was some --

16          THE COURT: Is he current to you?

17          MR. GREENBERG: Yes, as of this morning, but not

18     on the taxes, just on the adequate protection.

19          MR. MULUGETA: Well, the insurance is current.

20     The adequate protection I've been paying since 2009 without

21     any stop, every month.  So their interest is very well

22     protected.  The property has been devalued.  It still has

23     equity.  I've been maintaining it, with fixing the

24     property.  It's in good condition.  So all this -- they're

25     not hurting.  If anybody would be hurt, us and the others.

1        THE COURT: Well, they're hurting if you're not

2   paying the taxes.  They're hurting if you're not paying the

3   taxes.

4        MR. MULUGETA: I'm working to negotiate with the

5   County to pay the taxes, to pay that burden, but with this

6   kind of situation, it's almost impossible, 24 hours I have

7   to deal with emotion and all this kind of things.  I don't

8   have the environment to focus on --

9        THE COURT: You've had years to work.  You've

10  known Mr. Voisenat wanted to leave for years.  You've known

11  Mr. Voisenat wanted to leave for months, and you've known

12  that he doesn't think you can confirm a Plan for a long

13  time, and you've known that you've needed a lawyer for a

14  long time, and you've known that you needed a Plan and

15  Disclosure Statement for years.

16       MR. MULUGETA: Your Honor, I don't want to speak

17  about somebody else, you know, but Mr. Voisenat knew this

18  case -- he had it for over a year and a half, and we could

19  have a confirmed Plan if he had acted on it in an early

20  stage, but I was the one working on it.  But I don't want

21  to speak, you know, he's not here.

22       THE COURT: He is here.  He's on the phone.

23       MR. MULUGETA: But my Plan would have been

24  confirmed if he was on top of it on day one when I retained

25  him.

1         THE COURT: So why didn't you ask him to leave and

2 hire somebody else?

3         MR. MULUGETA: I did.  I did many times.  I have a

4 lot of e-mail.

5         THE COURT: Why didn't you ask him to -- why

6 didn't you fire him and hire somebody else?

7         MR. MULUGETA: I wish I did, but it's hindsight.

8 I was hoping, you know -- but --

9         THE COURT: Look --

10         MR. GREENBERG: And, Your Honor --

11         MR. MULUGETA: Okay, Your Honor, can I ask, could

12 you give me two months to clean all these things; if not,

13 you can do whatever you decide.  I'm just --

14         THE COURT: I'll tell you what I'll do.  I'll tell

15 you what I'll do.  December --

16         MR. GREENBERG: Your Honor, if you could take one

17 more thing into account, which is very important.  Cash

18 collateral, there has been no segregation of funds with

19 regard to Grand Avenue.  Cash comes in; cash goes out; we

20 have no idea how much comes in; we have no idea how much

21 comes out.  And of course that results in a $250,000 real

22 estate tax bill.  And it's been three years and nine months

23 with no cash collateral order.  And in fact, that is in

24 contravention to Your Honor's order for them to re-file

25 another cash collateral motion, which they haven't done.

1          THE COURT: I understand.  The case is dismissed

2    effective February 15 -- dismissed February 15.  In the

3    meantime, if you want to hire another lawyer and the lawyer

4    wants to file a motion before me to reconsider that, fine,

5    based on facts, based on things that can be done.  But

6    without any further order of the Court, the case is

7    dismissed February 15, 2013.  With respect to Mr. Voisenat,

8    you want him replaced, and Mr. Voisenat has filed a motion

9    to excuse himself from representing you further and so I

10   should grant that motion.  And so all papers should be

11   filed on you not on Mr. Voisenat.

12          In looking at this situation, Mr. Mulugeta, it

13   looks to me like you want to sell Chaucer; you want to sell

14   Servier; you want to -- O'Keefe is foreclosed; you want to

15   sell Brand; you want to sell Alma.  There's really probably

16   not much money in any -- maybe a little money in Chaucer,

17   and I don't know what the actual debt figure is in Chaucer,

18   but there may be some equity in Chaucer, and then there may

19   be some equity in Grand.  If you're going to sell it, fine.

20   If you're not going to sell it -- in the meantime, if you

21   want to file appropriate papers to hire brokers and sell

22   these properties, fine.  Do whatever it is.  You're still

23   in bankruptcy until February 15.  Your case is dismissed as

24   of that date.  The U.S. Trustee should submit an order

25   dismissing the case as of February 15, and if you seek me

1   to reconsider that, then you better be current on Grand;

2   you better have a deal with the tax authorities; you better

3   have a lawyer; you better have a plan -- not necessarily a

4   formal Plan and Disclosure Statement, but a plan in writing

5   that we understand that deals with all of these properties

6   and you better be up and running.  I'm not -- that's the

7   end, Mr. Mulugeta.  It's now going to be dismissed and

8   it'll be up to you, if you can convince me that I should

9   change that order, and the only way that you're going to

10  have a chance is if you have a competent, experienced

11  Chapter 11 lawyer who says that he thinks you can -- or she

12  thinks you can confirm a Plan, explains why, and all of

13  these ducks are in a row.

14          Thank you.  Court is adjourned.

15          MR. MULUGETA: Can I say one -- ask one --

16          THE COURT: Sure.

17          MR. MULUGETA: So we are protected til February

18  15?

19          THE COURT: You're protected in the sense that you

20  have a bankruptcy case, yes.

21          MR. WESOLOWSKI: And, Your Honor, becoming current

22  on all these things, he also would need to be current on

23  monthly operating reports?

24          THE COURT: Absolutely.  The monthly operating

25  reports are critical.  The U.S. Trustee's fees are

1  critical.  It's all critical.  A Plan would deal with the

2  taxes.  It's all critical, but don't wait til the last

3  second.

4          MR. MULUGETA: Thank you, Your Honor.

5          MR. GREENBERG: Thank you, Your Honor.

6          THE COURT: Thank you.  Court is adjourned.

7          COUNSEL ON THE PHONE: Thank you, Your Honor.

8      (Whereupon, the proceedings are concluded at 5:05

9  p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5                    CERTIFICATE OF TRANSCRIBER

6

7

8          I certify that the foregoing is a correct

9    transcript from the digital sound recording of the

10   proceedings in the above-entitled matter.

11

12   DATED: January 6, 2013

13

14                         By:___/s/ Jo McCall_____

15

16

17

18

19

20

21

22

23

24

25