Stanley A. Zlotoff, State Bar No. 073283
Attorney at Law
300 S. First St. Suite 215
San Jose, CA  95113

Telephone (408) 287-5087
Facsimile (408) 287-7645

Attorney for Debtors

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Chapter 11 |
| Benyam Mulugeta and | ) Case No.: 09-51900 ASW |
| Paula R. Mulugeta, | ) Date: 5/30/2013 |
| | ) Time: 2:15 p.m. |
| Debtors. | ) |

## OPPOSITION TO APPLICATION FOR COMPENSATION

FACTS

Applicant Campeau Goodsell ("Applicant") was employed as debtors' counsel between April 2009 (see Docket 32, Application for Appointment filed on April 2, 2009) and October 2009 (see Docket 164, Motion to Withdraw, filed October 5, 2009).  In that brief period of time Applicant contends that it accrued fees of almost $100,000.

The employment was based upon Applicant's expectation that debtor would be able to sell a hotel located in Oakland, California ("Harrison Hotel").  The parties agreed upon a retainer of $100,000 that would be funded from the proceeds

- 1

expected from sale of the Harrison Hotel (see Application for Compensation, pp. 4-5). When no sale occurred, Applicant lost interest in the case and moved to withdraw. Debtors became aware of the inadequacy of Applicant's representation: no cash collateral motion was filed despite the fact that debtors owned many rental properties and no advice was given regarding the danger of accruing post-petition taxes. Debtors never received any billing statements from Applicant; and, after more than three years, assumed Applicant had waived any fees.

FAILURE TO PROVIDE PERIODIC BILLING

From the outset of Applicant's representation, it had a duty to provide periodic statements of its fees. The Attorney-Client Fee Contract, attached to the Declaration of William Healy, and filed herein on April 2, 2009 (Docket No. 32) at page 2 thereof at paragraph 7 states as follows: "STATEMENTS. Attorney shall send Client periodic statements for fees and costs incurred."

The Bankruptcy Court's Guidelines for Compensation, posted on its website, at paragraph 7 thereof states that "Billing statements should be sent to the employing entity (debtor in possession, trustee or official committee) on a monthly basis."

Applicant supervised monthly operating reports ("MORs"), including the August MOR filed on September 21, 2013 (Docket No. 158). Although the Balance Sheet, under Liabilities at number

22, included a line item for "accrued professional fees," the line was left empty.

ROUTINE SERVICES

The services provided were routine: debtor owned multiple real property rentals, so there were many motions for relief from stay. However, none involved unusual issues or evidentiary hearings. There seems to have been no adversary proceedings, appeals, nor any plan prepared.

There were two motions to attempt to sell the Harrison Hotel, both abortive, but the first motion (Docket No. 83) was filed as a motion to sell free and clear, even though there was no basis for it.

Most glaring is that Applicant failed to file any cash collateral motions. One cannot help but wonder that if they had been filed, then, perhaps debtors may well have avoided the many motions for relief from stay that were filed.

POST-PETTION TAXES

The MOR for April 2009, filed on May 22 as Docket No. 80, disclosed in the Balance Sheet a liability of $206,000 for post-petition taxes. Despite the admonition on the MOR Summary Page, no attachment providing an explanation was provided.

The August 2009 MOR (Docket No. 158), in the Balance Sheet disclosed that the delinquent post-petition taxes had grown to $314,000. Again, no explanation was attached.

BILLING STATEMENTS ARE INACCURATE

- 3

Debtors believe that the billing statements attached to the fee application are inaccurate. However, they need additional time to gather their records. Debtor wife has been out of the country for the past month, and debtor husband has not been able to review all of his records that had been stored after he moved from his main Palo Alto house to the granny unit.

Some examples of inaccuracies are:

In Block A and B on 7/10/2009, and 9/3/2009 and 9/4/2009 duplicate entries regarding the Harrison Hotel

In Block A on 9/3/2009, a conference regarding "sale status," and in Block B on 9/4/2009, a conference re "strategy and planning re Harrison."

In Block C, "Review Lone Oak's opposition" on 9/15 and 9/16

In Block D, "Draft opposition to Lone Oak" on 5/26, "prepare opposition to Lone Oak" on 5/27, "Research potential opposition" on 5/28,

In Blocks A and B, there are numerous entries for conferences between attorneys Healy and Goodsell.

In Block B, draft motions/stipulation for cash collateral on 6/8 and 6/9, although no cash collateral matters were ever submitted to court.

PREJUDICE TO DEBTOR

Debtors reasonably believed that no fees were being requested by Applicant. In reliance they moved to have the Court reconsider dismissal of the case, they negotiated for a

recovery of $100,000 from a creditor, and based on the recovery they filed and served a plan. Now, out of the shadows, Applicant threatens to sink the ship.

LEGAL STANDARD

The lodestar calculation of reasonable hourly rate times reasonable hours spent is the starting point. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). From there, the court should consider a downward adjustment based on the important factors of "results obtained," and whether the applicant achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Id. at p. 434.

Finally, the Court may abandon the lodestar method if it is grossly disproportionate to the amounts at stake. <u>In re Auto Parts Club, Inc.</u> 211 B.R. 29, 35(9th Cir. BAP 1997).

The Court should deviate dramatically from the lodestar. $100,000 for a case such as this is grossly disproportionate by any standard. Most important, Applicant can point to little success during its tenure, and seemingly much over-lawyering.

LACHES

Section 503(a) requires that a request for administrative expense be "timely filed." Although the term "timely" is nowhere defined, the term "at any time" was construed in the case of <u>In re Beaty</u>, 306 F.3d 914(9th Cir. 2002). In <u>Beaty</u>, the issue arose in connection with a creditor's adversary proceeding

to except an unscheduled debt from discharge.  The action was
commenced six years after Beaty's discharge.  Bankruptcy Rule
4007(b)stated that a complaint to determine dischargeability
could be brought at any time.  Nevertheless, debtor moved for
summary judgment based on laches.  The BAP ruled that laches
could never be a defense.  Although the Ninth Circuit affirmed
the BAP, it disapproved of its reasoning.  "The doctrine of
laches, which has as its goal the prevention of prejudicial
delay in the binging of a proceeding, is a relevant and
necessary doctrine in the bankruptcy context."  Id. at p. 922.
"The authorization in Rule 4007(b) for filing such an action "at
any time" does not forbid a court from applying laches in
appropriate circumstances; in other words, the phrase "at any
time" does not mean "at any time no matter what and no matter
how inequitable."  Id. p. 925.

If proceedings subject to the phrase "at any time" are
subject to laches, then with even more force should be
proceedings subject to the phrase "timely."

Here we have unreasonable delay in making a fee request,
combined with clear prejudice to debtors.  Laches "is not a
doctrine concerned solely with timing.  Rather, it is primarily
concerned with prejudice." Id. p. 924.

CONCLUSION

The application for compensation should be denied.

Dated:  5/23/2013                /s/Stanley Zlotoff

- 6 -