Stanley A. Zlotoff SBN 73283
300 S. First St. #215
San Jose, CA 95113(408) 287-5087
Attorney for Debtors


## United States Bankruptcy Court
## Northern District of California


In re:                                    Case No. 09-51900ASW
**Benyam Mulugeta and**
**Paula R. Mulugeta,**                    **Chapter 11**


        debtors
_____/

### PROPOSED COMBINED PLAN OF REORGANIZATION
### AND DISCLOSURE STATEMENT
### July 3,, 2014

**INTRODUCTION**

        This is Debtors' Combined Chapter 11 Plan of Reorganization
and Disclosure Statement "The Plan".  The Plan identifies each
known creditor by name and describes how each claim will be
treated if the Plan is confirmed.

        Part 1 contains the treatment of creditors with secured
claims; Part 2 contains the treatment of general unsecured
creditors:  likely to result in around 20% recovery of allowed
claims in five annual payments.  Taxes and other priority claims
would be paid in full, as shown in Part 3.

        Most creditors, those in impaired classes, are entitled to
vote on confirmation of the Plan.  Completed ballots must be
received by Debtor's counsel, and objections to confirmation must
be filed and served, no later than [date].  The court will hold a
hearing on confirmation of the Plan on [date] at [time].

        Attached to the Plan are exhibits containing financial
information that may help you decide how to vote and whether to
object to confirmation.  Exhibit 1 includes background
information regarding Debtors and the events that led to the
filing of the bankruptcy petition and describes significant
events that have occurred during this Chapter 11 case.  Exhibit

Case: 09-51900   Doc# 868   Filed: 07/30/14   Entered: 07/30/14 11:13:47   Page 1 of
27

2 contains an analysis of how much creditors would likely receive in Chapter 7 liquidation. Exhibit 3 shows Debtors' monthly income and expenses. Exhibit 4 describes how much Debtors are required to pay on the effective date of the plan. Exhibit 5 shows Debtors' monthly income and expenses related to each investment property.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtors' pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtors perform all obligations under the Plan. If Debtors default in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtors will be discharged from all pre-confirmation debts (with certain exceptions) if Debtors makes all Plan payments. Enforcement of the Plan, discharge of the Debtors, and creditors' remedies if Debtors default are described in detail in Parts 5 and 6 of the Plan.

**PART 1: TREATMENT OF SECURED CREDITORS**

**Property to be surrendered.**

| Class | Name of Creditor | Description of Collateral |
|-------|------------------|---------------------------|
|  | Wachovia Dealer Services | 2005 Chrysler was already surrendered |
| 1aa | Ocwen Loan Servicing, Alameda County Tax Assessor, California Mortgage & Realty | 5401 Brann St., Oakland, CA (APN 36-2497-11) |
| 1aaa | Alameda County Tax Assessor | 353 Grand Avenue, Oakland, CA (APN 10-767-1) |

The confirmation order will constitute an order for relief from stay. Any secured claim is satisfied in full through surrender of the collateral. Creditors in these classes shall retain their interest in the collateral. **These secured claims are not impaired and are not entitled to vote on confirmation of**

Individual Chapter 11
Combined Plan & Disclosure Statement          (Version: 7/30/12)
July 3,, 2014

**the Plan.**

**Creditors' Rights Remain Unchanged.**

| Class | Name of Creditor | Description of Collateral |
|-------|------------------|---------------------------|
| 1a | Bank of America | 1111 Alma St. Palo Alto, Ca. 94303 |
| 1b | Solomon Reddie | 1111 Alma St. Palo Alto, Ca. 94303 |

These creditors' legal, equitable, and contractual rights remain unchanged with respect to the above collateral. The confirmation order will constitute an order for relief from stay. Creditors in these classes shall retain their interest in the collateral until paid in full. **These secured claims are not impaired and are not entitled to vote on confirmation of the Plan.**

**Debtors to Make Regular Payments and Pay Arrears over Time.**

| Class | 1c ** | 1d ** | 1e** |
|-------|-------|-------|------|
| Name of Creditor | Deutsche Bank National | Wells Fargo Bank | Wells Fargo Bank |
| Collateral | 1025 Harker Ave. Palo Alto, Ca. | 1112-1114 Chaucer Berkeley, CA. | 1339 Sevier Ave. Menlo Park |
| Regular Monthly Payment | $9,713.79 | $4,056.14 | $3,429.89 |
| Estimated Arrears | $47,527.64 | $38,853.92 | 18,105.24 |
| Interest Rate on Arrears | -0- | -0- | -0- |
| Monthly Payment on Arrears | $792.12 | $647,57 | $301.75 |

| Class | Name of Creditor | Collateral | Amount Due | Interest Rate | Monthly Payment | Term |
|-------|------------------|------------|------------|---------------|-----------------|------|
| 1k | JPMorgan Chase (Claim No. 35) | 1025 Harker Palo Alto, CA (2nd lien) | 77,527.33 | 0.00 | 215.35 | 360 mths |

Individual Chapter 11
Combined Plan & Disclosure Statement     (Version: 7/30/12)
July 3,, 2014

Case: 09-51900    Doc# 868    Filed: 07/30/14    Entered: 07/30/14 11:13:47    Page 3 of 27

**\*\* Debtors hereby incorporate herein by reference the Stipulations with Classes 1c, d, and e, filed herein on March 5, 2013, as Docket Numbers 767, 768, and 769. Debtor hereby incorporates herein by reference the Stipulation with Class 1k, filed herein on July 29,2014, as Docket No. 867.**

Creditors in these classes shall retain their interest in the collateral until paid in full.
**These secured claims are impaired and entitled to vote on confirmation of the Plan.**

**Debtors to Strip Lien to Value of Collateral and Pay Over Time.**

| Class | 1f | | |
|---|---|---|---|
| Name of Creditor | California Mortgage & Realty aka CMR Mortgage Fund, II, LLC ("CMR") | | |
| Collateral | 1112-1114 Chaucer Berkeley, Ca. | | |
| Value | $ $46,772 | | |
| Interest Rate | 5% | | |
| Monthly Payment | $ $1,500.00 | | |

Debtors contend that the value of the collateral is less than the amount of the claim. The amount of the claim is $700,000. Before confirmation, Debtors will obtain an order from the court determining the value of the above collateral. Debtors will pay as a secured claim the amount equal to the value of the collateral. Debtors will pay the above secured claim in full with interest from the Effective Date of the Plan through 33 equal monthly payments. Payments will be due on the fifth day of the month, starting the month next following the Effective Date. Any remaining amount due is a general unsecured claim treated in Part 2. Creditors in these classes shall retain their interest in the collateral until Debtors make all

Case: 09-51900   Doc# 868   Filed: 07/30/14   Entered: 07/30/14 11:13:47   Page 4 of 27

payments on the allowed secured claim specified in the Plan.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtors are not in material default under the Plan (defined in Part 6(c)). The Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases will apply. **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past the date Debtors obtain a discharge. The claimants' rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

**Debtors to Strip off Lien.**

| Class | Name of Creditor | Collateral | Amount Due |
|-------|------------------|------------|------------|
|       |                  |            |            |
| 1g    | California Mortgage & Realty | 1339 Sevier Ave. Menlo Park | $700,000* |

**\*There is only one claim owed to CMR. Based upon the split claim identified in Class 1f, CMR's unsecured claim is $653,228. CMR was scheduled for the amount of $700,000, and did not file a claim.**

Prior to confirmation, Debtors will obtain an order(s) or stipulation(s) fixing the secured amount of the above creditors' claims at zero. Debtors will pay nothing to those creditors as secured claims. Any claim of a creditor whose lien is stripped is a general unsecured claim treated in Part 2. Creditors in these classes shall retain their interest in the collateral consistent with the Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtors are not in material default under the Plan (defined in Part 6(c)). The Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases will apply. **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

**Debtors to Adjust Terms and Pay Amount Due in Full Over Time.**

Individual Chapter 11
Combined Plan & Disclosure Statement          (Version: 7/30/12)
July 3,, 2014

| Class | 1h | 1i | 1j |
|---|---|---|---|
| Name of Creditor | Henry C. Koehler, et.al. (Claim No. 27) (2nd lien) | Sequoia Mortgage Fund (Claim No. 28) (3rd lien) | Sequoia Mortgage Fund (Claim No. 29) (4th lien) |
| Collateral | 1025 Harker Ave. Palo Alto, Ca. | 1025 Harker Ave. Palo Alto, Ca. | 1025 Harker Ave. Palo Alto, CA |
| Amount Due | $ $497,500 | $ $374,000 | $594,000 |
| Interest Rate | 5% | 5% | 5% |
| Monthly Payment | see below | see below | See below |
| Term | 60 months | 60 months | 60 months |

Debtors will pay the entire amount contractually due on Claims 1h,li, and lj,with interest at the modified rate of 5% through 60 months, interest only payments, and one final balloon payment of the amount due, monthly payments due the 15th day of the month, starting September 15, 2013.  The new combined monthly payment on these claims is $5,000.  The obligations of the parties hereto shall be more particularly set forth in the Compromise Agreement that is hereby incorporated herein by reference.  Creditors in these classes shall retain their interest in the collateral until Debtors make all payments on the allowed secured claim specified in the Plan.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past the date Debtor obtains a discharge.  The claimants' rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**
**Class 2(a).  Small Claims.**

| Name of Creditor | Amount of Claim | Amount to be Paid |
|---|---|---|

Individual Chapter 11
Combined Plan & Disclosure Statement
July 3,, 2014

(Version: 7/30/12)

| | | |
|---|---|---|
| None | | |
| | | |

This class includes any creditor whose allowed claim is $ [number] or less, and any creditor in Class 2(b) whose allowed claim is larger than $ [number] but agrees to reduce its claim to $ [number]. Each creditor will receive on the Effective Date of the Plan a single payment equal to [select one] [the lesser of its allowed claim or $ [number]] [lesser of ___% of its allowed claim or $ [number]].

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Claimants in this class are impaired and are entitled to vote on confirmation of the Plan, unless their claims are paid in full with interest on the Effective Date of the Plan.**

**Class 2(b). General Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Yearly Payment |
|---|---|---|---|---|
| Aglala Panos | 250,000 | | $ $50,000 | $10,000 |
| Bank of America | 11,827 | Y | | |
| Capital One (claim #4) | 7,358.85 | | $1,471.77 | $294.35 |
| Capital One #1482 | 10,558 | | $2,117.60 | 423.52 |
| Capital One (claim #2) | 7,369.83 | | $1,473.96 | $294.79 |
| Capital One #8732 | 6,595 | | $1,319 | $263.80 |
| American Express #2008(claim #15) | 1,971.76 | Y | | |
| American Express #1009(claim #20) | 907.81 | Y | | |
| Capital One #1659 (claim #3) | 9019.24 | | $1,803.84 | $360.77 |

Case: 09-51900   Doc# 868   Filed: 07/30/14   Entered: 07/30/14 11:13:47   Page 7 of 27

| | | | | |
|---|---|---|---|---|
| Roundup Funding, LLC (claim #16, from Chase #1073) | 2,174.89 | Y | | |
| Chase/United #7798 | 8,310 | | $1,662 | $332.40 |
| Chase/Disney #7529 | 6,076 | | $1,215.20 | 243.04 |
| Chevron #335 | 2,619 | | $523.80 | $104.76 |
| Citi #0510 | 3,586 | | $717.20 | $143.44 |
| Citibank #7978 (claim #19) | 3,955.45 | | $791.10 | $158.21 |
| Cupertino Dental | 3,399 | | $679.80 | $135.96 |
| Downey #6675 | 29,922 | | $5,984.46 | $1,196.80 |
| Expo #0087 | 2,465 | | $493 | $98.60 |
| LVNV Funding LLC (claim #22 from Citibank #5286) | 10,738.56 | | $2,174.71 | $429.54 |
| LVNV Funding LLC (claim #23 from Citibank Sears #8138) | 1,557.46 | | $311.49 | $62.30 |
| LVNV Funding LLC (claim #24 from Mervyns #4030) | 504.78 | | $100.96 | $20.19 |
| Washington Mutual Bank (Claim #8) | 1,557,755.22 | Y | 0 | |
| Home Depot #7281 | 841 | | $168.20 | $33.64 |
| Home Depot #1029 | 5953 | | $1,190.60 | $238.12 |
| Home Depot #4243 | 430 | | $86 | $17.20 |
| Max Recovery Trust Claim #25(Home Depot #9995) | 765.27 | | $153.05 | $30.60 |
| GE Money Bank Claim #26 (Lowe's #2321) | 2,023.70 | Y | | |
| Macy's #7121 | 9,054 | | $1,810.80 | $362.16 |
| Macy's #5661 | 1,678 | | $335.60 | $67.12 |
| Macy's #9422 | 1377 | | $275.40 | $55.08 |

Individual Chapter 11
Combined Plan & Disclosure Statement    (Version: 7/30/12)
July 3,, 2014

| | | | | |
|---|---|---|---|---|
| Omni Cancun | 20,665 | y | | |
| Reed Kaplan, MD | 458 | | $91.60 | $18.32 |
| Target #977 | 600 | | $120 | $24 |
| Union 76 #172 | 892 | | $178.40 | $35.68 |
| Union 76 #314 | 1106 | | $221.20 | $44.24 |
| Chase Bank Claim #18(WAMU #2745) | 6,316.89 | | $1,263.37 | $252.67 |
| Washington Mutual #546 | 161,527 | y | | |
| Wells Fargo Bank Claim #1, #7137 | 3,433.45 | | $686.69 | $137.34 |
| Wells Fargo Bank, Claim #7, #0411 | 24,103 | | $4,820.60 | $964.12 |
| Chrysler Financial Services Claim #6 | 3,014.53 | Y | | |
| Wachovia Dealer Services | $6,598.40 | Y | | |
| Tomoko Nakama, Claim #11 | 183,000 | | $36,600 | $7,320 |
| Robert Taylor, Claim #12 | 219,266.70 | | $43,853 | $8,770.67 |
| Sweazey Elevator, Claim #21 | 23,544.78 | Y | | |
| | | | | |
| | | | | |
| CMR | 653,228 | | $130,645.60 | $26,129.12 |
| Franchise Tax Board | 888.68 | | 177.74 | 35.55 |

Total           $** $
            $1,302,425    $295,485    $59,097.12

**\*\*Total Undisputed unsecured creditors' claims is $1,302,425, payable $59,097.12 per year ($4,924.76 per month)**


    Allowed claims of general unsecured creditors [not treated as small claims] (including allowed claims of creditors whose

Case: 09-51900    Doc# 868    Filed: 07/30/14    Entered: 07/30/14 11:13:47    Page 9 of 27

executory contracts or unexpired leases are being rejected under
this Plan) shall be paid as follows:

> **Percent Plan.** Creditors will receive **20%** percent of their
> allowed claim payable once per year for five years,
> starting on the one year anniversary of the Effective Date
> of the Plan.

Creditors in this class may not take any collection action
against Debtor so long as Debtor is not in material default
under the Plan (defined in Part 6(c)). **This class is impaired
and is entitled to vote on confirmation of the Plan.** Debtor has
indicated above whether a particular claim is disputed.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**
(a)  <u>Professional Fees</u>.

Debtors will pay the following professional fees in full on
the Effective Date, or upon approval by the court, whichever is
later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Stanley A. Zlotoff | $ 20,000 |
| Marc Voisenat | $9,000 |
| Campeau Goodsell Smith | $34,202.38 |

The following professionals have agreed to accept payment
over time as follows. Payments will be made [monthly/
quarterly], due on the [number] day of the [month/quarter],
starting [month & year] or upon approval by the court, whichever
is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|
| None | | | |
| | | | |

Individual Chapter 11
Combined Plan & Disclosure Statement          (Version: 7/30/12)
July 3,, 2014

Professionals may not take collection action against Debtors so long as Debtors are not in material default under the Plan (defined in Part 6(c)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b) <u>Other Administrative Claims</u>. Debtors will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtors' business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below). All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtors are not in material default under the Plan (defined in Part 6(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| EDD | $18,560 (this claim is disputed) |
| | |

(c) <u>Tax Claims</u>. Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest (at the non-bankruptcy statutory interest rate) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code. Payments will be made in one lump sum ninety days after the Effective Date. To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Franchise Tax Board | $ $1,109.76 | | $1,109.76 | 1 |
| | | | | |

**PART 4:  EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
(a) <u>Executory Contracts/Unexpired Leases Assumed</u>.  Debtor Post-confirmation obligations will be paid as they come due.  Pre-confirmation arrears will be paid [select one] [in full on the Effective Date] in [number] equal [monthly/quarterly] installments beginning on the first day of [month & year].

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number of Installments |
|---|---|---|---|---|
| none | | | | |
| | | | | |

(b) <u>Executory Contracts/Unexpired Leases Rejected</u>.  Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court.  Claims arising from rejection of executory contracts have been included in Class 2 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| NONE | |
| | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed  rejected.


**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**
(a) <u>Discharge</u>.  Debtors shall not receive a discharge of debts until Debtors have paid the dividend provided to the Class 2 unsecured creditorsor the court grants a hardship discharge.

(b) <u>Vesting of Property</u>.  On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 6(f) below.

(c) <u>Plan Creates New Obligations</u>.  Except as provided in Part 6(d) and (e), the obligations to creditors that Debtors

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)
July 3,, 2014

Case: 09-51900   Doc# 868   Filed: 07/30/14   Entered: 07/30/14 11:13:47   Page 12 of 27

undertake in the confirmed Plan replace those obligations to
creditors that existed prior to the Effective Date of the Plan.
Debtors' obligations under the confirmed Plan constitute binding
contractual promises that, if not satisfied through performance
of the Plan, create a basis for an action for breach of contract
under California law.  To the extent a creditor retains a lien
under the Plan, that creditor retains all rights provided by
such lien under applicable non-Bankruptcy law.


**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a)  <u>Creditor Action Restrained</u>.  The confirmed Plan is binding
on every creditor whose claims are provided for in the Plan.
Therefore, even though the automatic stay terminates on the
Effective Date with respect to secured claims, no creditor may
take any action to enforce either the pre-confirmation
obligation or the obligation due under the Plan, so long as
Debtor is not in material default under the Plan, except as
provided in Part 6(e) below.

(b)  <u>Obligations to Each Class Separate</u>.  Debtors' obligations
under the Plan are separate with respect to each class of
creditors.  Default in performance of an obligation due to
members of one class shall not by itself constitute a default
with respect to members of other classes.  For purposes of this
Part 6, the holders of all administrative claims shall be
considered to be a single class, the holders of all priority
claims shall be considered to be a single class and each non-
debtor party to an assumed executory contract or lease shall be
considered to be a separate class.

(c)  <u>Material Default Defined</u>.  If Debtor fails to make any
payment, or to perform any other obligation required under the
Plan, for more than 10 days after the time specified in the Plan
for such payment or other performance, any member of a class
affected by the default may serve upon Debtors and Debtors'
attorney (if any) a written notice of Debtors' default.  If
Debtors fail within 30 days after the date of service of the
notice of default either: (i) to cure the default; (ii) to
obtain from the court an extension of time to cure the default;
or (iii) to obtain from the court a determination that no
default occurred, then Debtors are in Material Default under the
Plan to all the members of the affected class.

(d)  <u>Remedies Upon Material Default</u>.  Upon Material Default, any
member of a class affected by the default: (i) may file and
serve a motion to dismiss the case or to convert the case to

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)
July 3,, 2014

Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e) <u>Claims not Affected by Plan</u>. Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>. If the case is at any time converted to one under Chapter 7, property of the Debtors shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g) <u>Retention of Jurisdiction</u>. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtors are in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

**PART 7: GENERAL PROVISIONS**

(a) <u>Effective Date of Plan</u>. The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, Debtors may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Disputed Claim Reserve</u>. Debtor will create a reserve for disputed claims. Each time Debtor makes a distribution to the

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)
July 3,, 2014

Case: 09-51900   Doc# 868   Filed: 07/30/14   Entered: 07/30/14 11:13:47   Page 14 of 27

holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be returned to Debtor .

(c) <u>Cramdown</u>. Pursuant to section 1129(b) of the Bankruptcy Code, Debtors reserve the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) <u>Severability</u>. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>.

Debtors believe that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| None | | | | |
| | | | | |

(g) <u>Notices</u>. Any notice to the Debtors shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows: Benyam and Paula Mulugeta
                1025 Harker Avenue
                Palo Alto, CA 94301
(h) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, Debtors shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts,

required by 28 U.S.C. § 1930(a)(6). So long as Debtors are
required to make these payments, Debtors shall file with the
court quarterly reports in the form specified by the United
States Trustee for that purpose.

(i)  <u>Deadline for § 1111(b) Election</u>.  Creditors with an allowed
secured claim can make a timely election under section 1111(b)
no later than 14 days before the first date set for the hearing
on confirmation of the Plan.

(j) <u>Unclaimed dividend</u>s.  Any check to a creditor uncashed for
ninety days shall be voided.  Any unclaimed funds remaining at
discharge shall be returned to Debtors.
Dated: 7/29/2014

<u>/s/Benyam Mulugeta__ </u>
Debtor

<u>/s/Paula R. Mulugeta</u>
Debtor

<u>/s/Stanley A. Zlotoff </u>
Attorney for Debtor

Individual Chapter 11
Combined Plan & Disclosure Statement          (Version: 7/30/12)
July 3,, 2014

Case: 09-51900    Doc# 868    Filed: 07/30/14    Entered: 07/30/14 11:13:47    Page 16 of
27

**Attorney Certification**

   I, Stanley A. Zlotoff, am legal counsel for the Debtor(s) in
the above-captioned case and hereby certify the following: (i)
the foregoing plan is a true and correct copy of the Individual
Chapter 11 Combined Plan and Disclosure Statement promulgated by
the Northern District of California, San Francisco Division, on
July 30, 2012 (the "Standard-Form Plan"); and (ii) except as
specified below, there have been no alterations or modifications
to any provision of the Standard-Form Plan.

   The following provisions of the Standard-Form Plan have been
altered or otherwise modified.

Page 2, below Class 1aa table, deletion of sentence "Any
deficiency claim is a general unsecured claim treated in Part
2."Page 4, below Class 1c,d, and e and k tables, insertion
regarding Stipulations, deletion of the last paragraph as
inconsistent with Stipulations.
Page 6, modification describing treatment of Classes 1h,1i, and
1j..
Page 10, deletion of parenthetical paragraph and deletion of Pot
Plan paragraph.
Page 13 under Vesting, "revisiting" changed to "revesting."
Throughout, "Debtor" changed to "Debtors" with appropriate
grammatical changes.
Page 13(a) change to provide for discharge after payment of
unsecured claims.
Page 13(j) addition of paragraph regarding unclaimed dividends.

   I declare that the foregoing is true and correct. Executed
this 10th day of July, 2014.

                               /s/ Stanley A. Zlotoff
                               Attorney for Debtor(s)

Case: 09-51900    Doc# 868    Filed: 07/30/14    Entered: 07/30/14 11:13:47    Page 17 of
                                    27

Exhibit 1 - Events That Led To Bankruptcy

There were four main reasons that caused the Debtors' financial
difficulties and ultimately forced them to file Chapter 11.
They were:

First, the real property located at 2332 Harrison, Oakland,
California ("Harrison") was operated as a residential hotel when
acquired by Debtors. In 2007, Debtors planned to convert Harrison
to a commercial hotel, in order to achieve the highest and best
use of the property. However, in order to change the usage of the
property and get a permit, the City of Oakland required that
Harrison be vacant for a period of one year. During the vacancy
period the property had no income, but huge expenses that created
financial difficulties, and destroyed the Debtors' cash flow. As
a result, the Debtors had to borrow against their other
properties' equity to pay for Harrison's monthly mortgage and
expenses.

Second, the real property located at 353 Grand Avenue, Oakland,
California ("Grand")was acquired as an apartment building.  In
early 2008, to take advantage of the real estate boom, Debtors
decided to demolish the property and convert it into a
condominium complex with 26 units and 3 store fronts. Debtors did
a feasibility study and got permits from the City of Oakland to
build the 26 condominiums. Debtors evicted the tenants in order
to demolish the apartment units, but the property stayed vacant
with no income for over 8 months. In order to keep Grand
financially afloat, Debtors borrowed against their equity in
other properties.

Third, during the summer of 2008, real estate values crashed, and
Debtors' main source of income, which was derived from real
estate development, investment, and management, was severely
impacted.

Fourth, Lone Oak Fund LLC, a creditor secured by Harrison, forced
it into a receivership.

**Exhibit 2- EVENTS DURING BANKRUPTCY**

Harrison and Grand were re-rented.  However, Debtors were not able to achieve positive cash flows or equity in either property. Loan Oak Fund, LLC obtained relief from the Automatic Stay and conducted a trustee's sale of Harrison.  As a consequence of the trustee's sale, Debtors are no longer liable for real property taxes claimed by Alameda County Tax Assessor; and Debtors will file an objection to Claim Number 37 filed by Alameda County Tax Assessor.

Pursuant to a compromise of controversy, Debtors surrendered Grand to the lienholder in exchange for a payment of $100,000. Debtors had incurred a large administrative real property tax claim to the Alameda County Tax Assessor.  As a consequence of the surrender, Debtors are informed and believe that this tax claim will follow the property and not be an obligation owed by the bankruptcy estate.  Therefore, if necessary, Debtors will file an objection to Claims number 36 and 40 filed by Alameda County Tax Assessor.

Debtors' principal residence has at all pertinent times been the real property located at 1025 Harker Avenue, Palo Alto, California ("Harker").  Harker consists of a main dwelling and adjoining in-law units.  At the beginning of this case, Debtors resided in the main dwelling and rented out the in-law units.  As of June 2013, Debtors moved into the in-law units and rented out the main dwelling.  Presently, Debtors receive rent of $7,500 from the main dwelling, to be increased to $11,000 starting April 1, 2014; and in addition, receive assistance of $3,500 per month from their two adult children who live with them.
Further, Debtors surrendered to Chrysler Financial and Wachovia Dealer Service the two Chrysler motor vehicles that had been financed.

In addition to losing Harrison and Grand, Debtors also lost the real property located at 240 E. O'Keefe, East Palo Alto, California.

Debtors entered into "Stipulations" with Deutsche Bank National Trust Company holder of 1st deed of trust on Harker, and with Wells Fargo Bank on the "Chaucer" and "Sevier" properties.

Debtors entered into a loan modification agreement with Bank of America regarding the single family residence located at 1111 Alma Street, Palo Alto, California.

Debtors have entered into a Compromise Settlement with Sequoia Mortgage Capital on behalf of itself and its investors regarding its liens secured by Harker, evidenced by Claims Number 27, 28, and 29.

Creditors Tomoko Nakama and Robert Taylor, both holders of junior liens secured by Grand and Harrison, have become unsecured and will have their claims provided for in Class 2(b).

Claims held by the Alameda County Tax Assessor for real property taxes secured by Grand and Harrison, are now no longer claims against the estate, as any tax obligations have followed these properties and are now the responsibility of the new owners of Grand and Harrison.

The Grand settlement funds were spent on maintaining the Harker, Sevier, Chaucer, and Alma properties (see Grand Settlement Register, Docket No. 831).

EMPLOYMENT:

Debtor, Benyam Mulugeta, has two master degrees and has been a real estate broker and investor since 1985. The past four years as debtor in possession he has devoted most of his time managing and stabilizing the estate. Post confirmation, he will be returning full time as real estate broker and consultant. Debtor, Paula R. Mulugeta has BA in accounting. Currently she is working part time at Palo Alto YMCA. Once the Plan is confirmed and Debtors are out of bankruptcy, she is planning to get a full time job, which will increase the employment income.

MEANS FOR IMPLEMENTATION OF THE PLAN

The Effective Date payments of approximately $83,000 will be advanced by Debtors' daughter. She is successfully employed, has access to the funds from her savings, and is committed to helping her parents.

Debtor, Paula Mulugeta, expects to find full time employment earning approximately $3,000 per month.

Debtor, Benyam Mulugeta, proposes to continue his self employment as a real estate broker, consultant, and developer.

Individual Chapter 11
Combined Plan & Disclosure Statement
July 3, 2014                          (Version: 7/30/12)

Case: 09-51900   Doc# 868   Filed: 07/30/14   Entered: 07/30/14 11:13:47   Page 20 of 27

He currently has entered into a $210,000 contract to remodel and expand a property in Palo Alto; and he will be starting another project for $135,000 in September 2014. The former job will pay Debtor $10,000 per month for five months, and the latter $6,500 for six months. Debtor has also been offered employment, contingent upon his exit from bankruptcy from Regnum Group, LLC. He projects income from any combination of endeavors to be in the range of approximately 10,000 per month.

Debtors are presently receiving rent of $11,000 per month from Harker.

Alma will be rented for $7,000 per month as soon as work is completed and approval from the "City of Palo Alto is received. Debtors expect that within three months Alma will be fully rented.

Chaucer will be rented for $5,000 per month as soon as a plumbing issue in one of the units has been fixed. Even at $5,000 per month, Chaucer will have a negative cash flow. Unless Debtors can negotiate for better terms or find a way to increase revenue, Chaucer may be surrendered. Debtors would prefer keeping it to avoid a possible capital gains tax.

Sevier is currently rented for $2,500 per month; but starting in August, the rent will be increased to $3,000 per month. Still, Sevier will have a small negative cash flow; however, because of a possible capital gain tax in the event of its surrender, Debtors propose to retain it.

Debtors' children, who sometimes reside with their parents, have committed to contribute $3,500 per month.

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Individual Chapter 11
Combined Plan & Disclosure Statement
July 3, 2014                              (Version: 7/30/12)

Case: 09-51900    Doc# 868    Filed: 07/30/14    Entered: 07/30/14 11:13:47    Page 21 of 27

Real Property #1: 1025 Harker Ave. Palo Alto, Ca. 94301

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $3,600,000 | 1st 1,573,710 | $ 252,000 | 721,650 | $75,000 | -235,860 |
| | 2nd 77,527 | | | | |
| | 3rd $ 497,500 | | | | |
| | 4th $ 374,000 5th $ 594,000 | | | | |

Real Property #2 1112-1114 Chaucer St. Berkeley, Ca.

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $ 800,000 | 1$^{st}$$ 753,228 | $ $64,000 | Capital Gain issue | | 0 |
| | 2nd $* $46,772 | | | | |
| | 3rd | | | | |

Real Property #3 1339 Sevier Ave. Menlo Park, Ca. 94025

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $ 450,000 | 1st $ 534,598 | $ 38,500 | Huge Capital Gain | | - 0 |
| | 2nd $200,000* To be stripped | | | | |
| | 3rd | | | | |

Real Property #4 5401 Brann St. Oakland, Ca.

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $ 500,000 | 1st $ 622,182 | $ 40,00 | Capital Gain Issue | | 0 |
| | 2nd $200,000* | | | | |
| | 3rd | | | | |

*The second liens for each of the above real properties are evidenced by one debt of approximately $700,000 secured by a blanket lien.  This debt was apportioned only for purposes of the above table.

Real Property #5 1111 Alma St. Palo Alto, Ca. 94303

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $ $1,300,000 | 1ˢᵗ $679,493 | $ $96,127 | $84,900 | | $359,480 |
| | 2ⁿᵈ $80,000 | | | | |
| | 3ʳᵈ | | | | |

*

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | $1,000 | | $ 1,000 | $ 0 |
| Automobile #1 | $5,000 | | $5,000 | -0- |
| Automobile #2 | $2,000 | | $2,000 | -0- |
| Household Furnishings | $15,000 | | $15,000 | 0 |
| Jewelry | $5,000 | | $5,000 | -0- |
| Equipment | $1,000 | | | |
| Stocks / Investments*$150,000 Note on Property** | $150,000* | $150,000* | | -0- |
| Other Personal Property | $1,000 | | $1,000 | |
| TOTAL | $30,000 | | | $0 |

**Debtors' $150,000 Note they have on the property in Elk Grove, Ca. currently worth nothing due to the fact that the property is under water and obligors have no ability to pay**

| Net Proceeds of Real Property and Personal Property | $ $359,480 |
|---|---|
| Recovery from Preferences / Fraudulent Conveyances         [ADD] | |
| Chapter 7 Administrative Claims         [SUBTRACT] | |

Individual Chapter 11
Combined Plan & Disclosure Statement
July 3, 2014                              (Version: 7/30/12)

Case: 09-51900   Doc# 868   Filed: 07/30/14   Entered: 07/30/14 11:13:47   Page 23 of 27

| | |
|---|---|
| Chapter 11 Administrative Claims                    [SUBTRACT] | 81,762 |
| Priority Claims                                     [SUBTRACT] | 1,110 |
| Chapter 7 Trustee Fees                              [SUBTRACT] | $<br>$62,250 |
| Chapter 7 Trustee's Professionals                   [SUBTRACT] | |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | $<br>214,538 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | 1,302,425 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 20% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 16.4% |

## Exhibit 3 - Monthly Income and Expenses

| Income | Amount |
|---|---|
| Gross Employment Income (Paula R. Mulugeta) | $3,000 |
| Gross Business Income    (Benyam Mulugeta) | $10,000 |
| [OTHER INCOME - DESCRIBE] Rental income of Harker property and Children contribution | $14,500 |
| Positive Cash Flow on Investment Property (Exhibit 5, Line A) | $1,984 |
| **A. Total Monthly Income** | $29,484 |

| Expenses<br>Includes Plan Payments on Secured Claims for Residence and Car | Amount |
|---|---|
| Payroll Taxes and Related Withholdings | $298 |
| Retirement Contributions (401k, IRA, PSP) | $125 |
| Shelter Expenses (rent/mortgage, insurance, taxes, utilities) (Total Arrearages on Principal Residence are $_____ ) | $16,517 |
| Household Expenses (food) | $500 |
| Transportation Expenses (car payments, insurance, fuel) | $400 |
| Personal Expenses (e.g. recreation, clothing, laundry, medical) | $650 |
| Alimony / Child Support | -0- |

Individual Chapter 11
Combined Plan & Disclosure Statement
July 3, 2014                              (Version: 7/30/12)

Case: 09-51900   Doc# 868   Filed: 07/30/14   Entered: 07/30/14 11:13:47   Page 24 of 27

| | |
|---|---|
| Home maintenance | $150 |
| Self employment tax | $1,500 |
| Cell phones | $250 |
| Negative Cash Flow on Investment Property (Exhibit 5, Line B) | $1,779 |
| **B. Total Monthly Expenses** | $22,169 |

| | |
|---|---|
| **C. Disposable Income** (Line A – Line B)(7,315x60=438,900) | $7,315 |

| Plan Payments<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Administrative Claims* | $81,762 |
| Priority Claims Franchise Tax Board* | $1,109.76 |
| General Unsecured Creditors | $277,830 |
| [OTHER PLAN PAYMENTS – DESCRIBE] | |
| **D. Total Plan Payments** | $360,701 |

| | |
|---|---|
| **E. Plan Feasibility** (Line C – Line D)<br>(Not feasible if less than zero) | $78,199 |

**\*Debtors' daughter will contribute these Effective Date payments.**

Individual Chapter 11
Combined Plan & Disclosure Statement
July 3, 2014                                    (Version: 7/30/12)

**Exhibit 4 - Effective Date Feasibility**

Can the Debtors Make the Effective Day Payments?

| | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date | | $83,571.7 |
|   Payments on Effective Date | | |
|     Unclassified Claims | -0- | |
|     Administrative Expense Claims | $81,762 | |
|     Priority Claims | %1,109.76 | |
|     Small Claims (Class 2(a)) | -0- | |
|     U.S. Trustee Fees | $700 | |
| B. Total Payments on Effective Date | | $83,571.7 |
| **C. Net Cash on Effective Date** (Line A - Line B) (Not feasible if less than zero) | | $0 |

Case: 09-51900    Doc# 868    Filed: 07/30/14    Entered: 07/30/14 11:13:47    Page 26 of 27

# Exhibit 5 - Investment Property Analysis

## Properties with Positive Monthly Cash-Flow:

Real Property #1 Income: 1111 Alma Palo Alto, Ca. 94303

| Rental Income | Mortgage | | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|---|
| $6,000 | 1st | $2,950 | $75 | $529 | $100 | $1,984 |
| | 2nd | $362 | | | | |
| | 3rd | -0- | | | | |

| A. Total Positive Cash Flow | $1,984 |
|---|---|

## Properties with Negative Monthly Cash-Flow:
Real Property #2 1112- 1114 Chaucer Ave. Berkeley, Ca.

| Rental Income | Mortgage | | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|---|
| $5,000 | 1st | $4,056 | $92 | $421 | $50 | -$1,119 |
| | 2nd | 1,500 | | | | |
| | 3rd | | | | | |

Real Property #3 1339 Sevier Ave. Menlo Park, Ca. 94025

| Rental Income | Mortgage | | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|---|
| $3,000.00 | 1st | $3,430 | $95 | $135 | | -$660 |
| | 2n | | | | | |
| | 3rd | | | | | |

| B. Total Negative Cash Flow | -$1,779 |
|---|---|

Individual Chapter 11
Combined Plan & Disclosure Statement
July 3, 2014                    (Version: 7/30/12)

Case: 09-51900    Doc# 868    Filed: 07/30/14    Entered: 07/30/14 11:13:47    Page 27 of 27