CURD, GALINDO & SMITH, L.L.P.
JEFFREY B. SMITH, SBN 150095
301 East Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Telephone: (562) 624-1177
Facsimile: (562) 624-1178
Email: jsmith@cgsattys.com

**Attorney For Union Home Loan, Inc.**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

In re:                                                    Case # 09-51900-SLJ

**Benyam Mulugeta and**                               **Chapter 11**
**Paula Mulugeta,**

      **Debtors**

_____/

**MOTION TO DISMISS OR CONVERT CHAPTER 11 PURSUANT TO 11 U.S.C.**
**SECTION 1112.**
**Date: January 10, 2023**
**Time: 2:00p.m.**
**Courtroom/Location: 9\***
**280 S. 1st Street**
**San Jose, CA 95113**
**\*See Notice for Attendance Via Telephone or Video Conference**


TO THE HONORABLE STEPHEN L. JOHNSON UNTIED STATES BANKRUTPCY

JUDGE, TO THE CHAPTER 11 DEBTORS BENYAM AND PAULA MULEGETA AND THEIR

ATTORNEYS OF RECORD, TO THE OFFICE OF THE UNITED STATES TRUSTEE AND TO

INTERESTED PARTIES:

COMES NOW secured post-petition, post-confirmation creditor Union Home Loan, Inc.

("Union") and moves the Court for an order dismissing this Chapter 11 pursuant to 11 U.S.C.

section 1112 (the "Motion"). Notice of the date time and location of the hearing on the Motion,

as well as instructions regarding the time and manner of filing opposition to the Motion are served separately and concurrently hereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTS[1]

#### a.   The Relevant Procedural History of This Thirteen-and-a-Half-Year-Old Case.

Individual debtors Benyam & Paula Mulegeta ("Debtors") filed this Chapter 11 case March 18, **2009** (the "Petition Date"), Docket # 1.  This case is thus approaching its 14th "birthday".

The Debtors' Amended Combined Plan of Reorganization and Disclosure Statement Dated July 3, 2014 filed July 30, 2014, docket # 868 (the "Plan") was confirmed by the court before the Honorable Arthur S. Weissbrodt by order entered **September 25, 2014**, docket # 887[2].

The Plan provides for the curing of various defaults on real estate and a 20% distribution to unsecured creditors over five years starting a year after the Effective Date of the Plan.   Precisely, the confirmed Plan says:

"**Percent Plan.** Creditors will receive **20%** percent of their allowed claim payable once per year for five years, starting on the one-year anniversary of the Effective Date of the Plan." See COE, Ex. 1 Docket 868, page 28.

The "Effective Date" s defined as 15 days after the entry of the plan confirmation order.  See COE, Ex 1, Docket 868, page 27.  The Plan therefore became effective **October 10, 2014**.  The Plan proposes, among other payments to secured and priority creditors, annual payments on the Effective Date anniversary in 2015, 2016, 2017, 2018 & 2019.  The Plan, by its terms, should have been complete and performed no later than **October 10, 2019,** _over three years ago._

---

[1] This Motion is being brought concurrently with a Motion for Relief by the same creditor on substantially the same facts.  Both Motions are supported by the separate and concurrent Declaration of Dan Goldfield ("Decl., DG") and Compendium of Exhibits ("COE"), as both motions are supported by identical facts.
[2] The confirmed Plan is attached for the court's convenience as COE, Ex. 1.

A review of the docket of proceedings in this case reveals that for the last three years, and certainly since the Plan should have been concluded by its own terms, virtually nothing of substance has occurred in the case. The Debtors have sporadically filed quarterly Operating Reports ("QOR"). The QOR for the first reporting period **_after_** the projected **_conclusion_** of the Plan (for the period ending December 31, 2019) is docket # 955 and is attached to the COE as Ex. 2.

In that QOR the Debtors assert there was a $9,841 "balance remaining to be made under the Plan." See Docket # 955, COE, Ex. 2, page 1 paragraph 3. In that same QOR the Debtors reported that all payments required to be made under the Plan were "current". This is an impossibility, since the Plan, as confirmed, should have concluded during that reporting period (and before that QOR was filed).

Next, the same QOR discloses that the Debtors ended that quarter with a positive cash balance of $27,506.81, significantly more (by a factor of about 3X) than what would have been required for the Debtors to comply with the terms of their confirmed Plan, and simply pay it off. Finally, the same QOR (COE, Ex. 2) states that the anticipated date for a motion for final decree was project to be **_June 2020_**.

Approaching 3 years later, the QOR filed most recently, Docket # 973, attached for the court's convenience as COE, Ex. 3 (for the period ending 9/30/**2022**`) shows that the Debtors **_still_** owe about $1400 to complete their Plan. They continue to assert that they are "current" on their Plan obligations, (a continued impossibility). Now, the Debtors have $27.585.44 in bank proceeds available (at the end of Q3 2022).[3] The QORs filed during the last three years demonstrate that

---

[3] In the interests of judicial economy, Union has attached as a single exhibit to the COE, Exhibit 4, the remaining intervening QOR reports that have been filed since the date of the projected Plan conclusion (Ex. 2), and before the most recent QOR (Ex. 3). Those are found in the Court's docket at ## 958, 959, 960, 963, 964, 965, 966, 967, 968, and 969.

the Debtors have had, virtually all of that time, sufficient funds on hand to pay their final Plan payment but have systematically *chosen* NOT to conclude their Plan payments.

In sum, the Debtors have materially defaulted on their Plan by not concluding it by its terms, despite the ability to do so for 3+ years.

### b. The Debtors Acquire Property Post Confirmation and Borrow Against It.

On April 6, 2016, (post-confirmation and pre-plan conclusion) the Debtors acquired the commercial property located at 9614-9616 MacArthur Blvd, whose legal description is:

> THE SOUTHWESTERLY 78 FEET OF THE NORTHWESTERLY 8 FEET OF THE SOUTHEASTERLY 25 FEET OF LOT 31 IN BLOCK C OF "MAP OF TOLER HEIGHTS", FILED SEPTEMBER 30, 1907 <u>IN BOOK 23 OF MAPS PAGE 34 AND 35</u>, RECORDS OF SAID COUNTY, AND THE SOUTHEASTERN 25 FEET OF LOT 32, AND THE NORTHWESTERN 25 FEET OF LOT 31, IN BLOCK "C", AS SAID LOTS AND BLOCKS ARE SHOWN ON THE MAP OF "TOLER HEIGHTS", FILED SEPTEMBER 30, 1907, <u>BOOK 23 OF MAPS AT PAGE 34</u>, IN THE OFFICE OF THE COUNTY OF THE RECORDER OF ALAMEDA COUNTY

> APN 048-5599-039-02; hereafter the "Property". See Declaration of Dan Goldfield ("DG Decl.) Paragraph 3, COE Exhibit 5.

The Property is a two story, four-unit commercial property.

Movant is aware of no prohibition (by virtue of the Code or the confirmed Plan) against the Debtors acquiring property after plan confirmation. However, 11 U.S.C. section 1115(a)(1)[4] applies to this case (the Debtors being individuals) and the Property undoubtedly became property of the bankruptcy estate immediately on acquisition.

A little less than 2 years after it was acquired by the Debtors (and only a few months prior to what was supposed to be the Debtors' final plan payment) the Debtors sought to borrow against the Property. Movant Union Home Loan ("Union" or "Movant") is a facilitator and owner of equity-based loans, sometimes referred to as "hard money" loans. In this case Union represents a

---

[4] 11 U.S.C. section 1115(a)(1) says that property of the estate in an individual Chapter 11 case includes property acquired after commencement of the case and "before the case is closed, dismissed, or converted…whichever occurs first".

pool of investors who, on May 14, 2019 lent the Debtors the sum of Three Hundred Seventy Five Thousand Dollars ($375,000) as evidenced by a Note Secured By Deed of Trust (the "Union Loan"). See DG Decl. para. XX, COE, Ex. 6. The Debtors pledged the Property as collateral for the Union Loan by way of a recorded Deed of Trust. See DG Decl. para. XX, COE, Ex. 7.

In making and arranging the Union Loan to the Debtors, Union was unaware of any pending bankruptcy proceedings by the Debtors and the Debtors did not disclose that they were presently performing a confirmed Chapter 11 plan. See DG Decl. para. XX.

The Union Loan matured May 1, 2020. Debtors defaulted on the Union Loan by failure to pay the principal balance due at maturity plus accrued interest, late fees, and other fees called for in the Note Secured By Deed of Trust and/or the Deed of Trust. See DG Decl. para. XX. Since reaching maturity, Union has extended the loan term on several occasions in exchange for continuing payments from the Debtors, and based on the Debtors' promises of paying off the loan by way of a sale or refinance of the Property. Recently, however, the last such extension of the Union Loan expired. See DG Decl. para. XX. The Union Loan is now passed its maturity date, as extended, and Union will not extend the maturity further.

When Union attempted to commence foreclosure proceedings on the Property it first learned that the Debtors' 13+ year old Chapter 11 case has not been dismissed, converted or closed. 11 U.S.C. section 362(a)(2) stays Union from enforcing its rights as against property of the estate, and that section makes no distinction for after-acquired property that becomes property of the estate by virtue of section 1115. No term of the confirmed Plan appears to operate as a lifting of the stay as to after-acquired property.

The current situation is that the Debtors have and continue to _intentionally_ "slow play" the conclusion of their bankruptcy case, for over three years. By doing so, they receive the benefits of section 362(a) and its protection for property they acquired long after confirmation and indeed

refinanced just weeks before they were to have concluded their 5 year plan.    Those actions coincidentally, or by design, benefit the Debtors, while tying Union's hands to recover its collateral after expiration of the loan term.  The Debtors have materially defaulted on their Plan by not concluding it while having ample means to do so for more than 3 years.

## II.    AUTHORITIES AND ARGUMENT

11 U.S.C. section 1112 states:

**"(b)(1)** Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7… or dismiss a case under this chapter…, whichever is in the best interests of creditors and the estate, for cause….
…
**(4)** For purposes of this subsection, the term "cause" includes—
**…**
**(E)** failure to comply with an order of the court;
…
**(N)** material default by the debtor with respect to a confirmed plan;
**(O)** termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; …

Looking first as 11 U.S.C. section 1112(b)(4)(N), this case should be dismissed for a material default with respect to the confirmed plan.  Admittedly the Debtors' remaining payments under the Plan, appear nominal, a mere $1400.00+/-.  However, the fact that the Debtors have had the means to pay that amount and conclude their case for years and have *deliberately* avoided concluding the case, suggests that the Debtors are engaged in some form of gamesmanship.  This calculated approach is a factor the court can and should consider in determining the "materiality" of the default.

For instance, in *In re Carroll*, 2019 Bankr. LEXIS 1491, 2019 WL 2120762 (W.D., Mich 2019) the court converted a confirmed individual Chapter 11 where the debtor made a calculated decision to not pay allowed administrative expenses provided for in the confirmed Plan:

"A fit fiduciary does not challenge a substantial expense of administration only when it

suits his personal purposes. The Fee Orders estop him from excusing his material default under the Plan on the grounds he asserts. The fees that the court approved, and that the Debtor stipulated to, remain unpaid and the court finds that the Debtor has, without justification, materially defaulted under his confirmed Plan at least in this respect."

*In re Carroll*, 2019 Bankr. LEXIS 1491, *6-7, 2019 WL 2120762

Similarly, calculated tactics with the evident purpose of delaying proceedings has been held to be sufficient grounds for dismissal or conversion under section 1112(b). *In re Ahern*, 40 B.R. 850 (Bankr. D.N.H. 1984). If grounds to dismiss or convert exist, substantial consummation of the Plan is immaterial. *Greenfield Drive Storage Park v. California Para-Professional Servs. (In re Greenfield Drive Storage Park)*, 207 B.R. 913, 16-17 (9th Cir. BAP, 1997).

The evidence in this case, all of which can be garnered from the documents on file with the court herein, establish that the Debtors had the ability to conclude their Plan, get a final decree, obtain their discharge, and close their case since October of 2019. For reasons not clear on this record, they have done none of those things. Perhaps the Debtors have decided it is convenient, even tactically advantageous for them to use the automatic stay to protect post-petition, post-confirmation acquisitions of financed property. The court might inquire how many other secured property lenders have found themselves in the net cast by the Debtors who are self-described real estate investors. Regardless, the facts and law support dismissal or conversion of this case at this juncture under section 1112.

As to the issue of whether dismissal or conversion is the proper remedy in these circumstances, Union leaves that to the sound discretion of the Bankruptcy Court. It may be that the OUST or other creditors may express opinion(s) of merit on this subject. Union finds dismissal an appropriate remedy, and likely the least drastic under the circumstances.

///

///

///

Wherefore:

 Movant Union Home Loan, Inc. requests that the court Dismiss the referenced Chapter 11 Case

or Convert it to Chapter 7 at the court's discretion pursuant to II Us.C. Section 1112; and

For such other relief as the Court deems just and proper

**CURD, GALINDO & SMITH**

Dated: November 14, 2022                    _/s/ Jeffrey B. Smith_____
                                            Jeffrey B. Smith
                                            Attorneys for Union Home Loan, Inc.