```
Stanley A. Zlotoff, State Bar No. 073283
Attorney at Law
300 S. First St. Suite 215
San Jose, CA  95113
zlotofflaw@gmail.com
Telephone (408) 287-5087
Facsimile (408) 287-7645

Attorney for Debtors
```

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

```
In re                              ) Chapter 11
                                   )
Benyam Mulugeta and Paula R.       ) Case No. 09-51900 SLJ
                                   )
Mulugeta,                          )
                                   ) MOTION FOR DISCHARGE
                                   )
                                   ) Date:  February 7, 2023
                                   )
                                   ) Time:  2:00 p.m.
                   Debtors         /
```

Debtors move the court as follows:

1. For an order that Debtors are entitled to a discharge.

2.   This Motion is based on the Motion for Discharge and Final Decree filed herein on December 8, 2022, Debtors' Certification of Plan Payments Made("Certification") filed herein on December 8, 2022, Debtors' Declaration in Support of Discharge, filed herein on December 9, 2022(all collectively filed as Docket No. 981), the Declaration of Debtor filed herewith, and the Points and Authorities set forth below.

- 1 -

POINTS AND AUTHORITIES

STATEMENT OF FACTS

On July 30, 2014, Debtors filed a form Combined Plan of Reorganization and Disclosure Statement dated July 3, 2014 ("Plan"). The Plan was confirmed on September 25, 2014.

The Plan at Part 5(a) stated that Debtors would be entitled to a Discharge after payment of the dividend provided to the Class 2 unsecured creditors ("Creditors").

The Plan provided for yearly distributions to the Creditors, commencing on October 10, 2015, or one year after the Effective Date.

Debtors' Certification stated that they successfully paid most Creditors; however, certain Creditors—("Unpaid Creditors") were not paid at all. Payments to these Unpaid Creditors were therefore in default as of October 11, 2015.

The Plan contained the following statements regarding the effect of Plan confirmation and default:

A. The Introduction on page 2 stated "If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtors pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtors perform all obligations under the Plan. If Debtors default in performing Plan obligations, any creditor can…enforce their non-bankruptcy rights."

B. Part 5(c) on page 12, stated that "<u>Plan Creates New Obligations.</u> Except as provided in Part 6b(d) and (e), the obligations to creditors that Debtors undertake in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtors' obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law."

C. Part 6(a), on page 13, titled "<u>Creditor Action Restrained</u>," stated that "…no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan…"

D. Part 6(c), titled "<u>Material Default Defined</u>," stated that "If Debtor fails to make any payment…required under the Plan…any member of a class affected by the default may serve upon Debtors and Debtors' attorney…a written notice of Debtors' default. If Debtors fail within 30 days after the date of service of the notice of default …to cure the default…then Debtors are in Material Default under the Plan to **all** the members of the affected class"(emphasis added).

E. Part 6(d) entitled "<u>Remedies Upon Material Default</u>,"
stated that "Upon Material Default, any member of a
class affected by the default:…without further order of
the court has relief from stay to the extent necessary,
and may pursue its lawful remedies to enforce and
collect Debtor's pre-confirmation obligations."

An Unpaid Creditor, on April 5 2017, noticed a payment default(Dkt No. 935). Debtors requested an extension of time to cure, and it was granted, extending to July 28, 2017, the deadline for cure.

Debtors failed to make a cure, so on July 29, 2017, they were in material default as to all Creditors.

No Creditor took any action thereafter to collect on its default. The Unpaid Creditors obligations have been in material default for more than five years.

DEFAULT WAS CREATED UNDER CALIFORNIA LAW

Under California law, a four-year statute of limitation applies to actions for breach of contract(Cal. CCP 337). "Ordinarily a cause of action for breach of contract accrues on the failure of the promisor to do the thing contracted for at the time and in the manner contracted." <u>Professional Collection Consultants v. Lauron</u>,8 Cal. App. 5th 958,966(2017).

Here, as to the Unpaid Creditors, under California law, were there no Plan, the breach commencing the running of the statute of limitation would have commenced on October 11, 2015.

- 4 -

## THE PLAN CREATED A PROHIBITION TO CREDITOR ENFORCEMENT

The Plan's default, notice, and opportunity for cure protocol explicitly prohibited enforcement activity until that procedure had been exhausted such that a payment delinquency matured into material default.

California CCP 356 states that "When the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance or prohibition is not part of the time limited for the commencement of the action."

Here, the Unpaid Creditor implemented the default and notice procedure that resulted in a matured material default as of July 29, 2017.

On that date, all Creditors were released from the strictures of the Plan and any possible bankruptcy stays, and free to pursue non-bankruptcy enforcement of their pre-confirmation obligations. At that point the four-year statute of limitation began accruing.

## 108(c) IS NOT APPLICABLE

108(c) provides for an extension of an applicable statute of limitations period that has not expired "before the date of the filing of the petition." By its terms, it is inapplicable to post-petition debts. In re Gilman, 603 BR 437,445(9th Cir. BAP 2019), affd 836 Fed.Appx. 511(2020).
In *Gilman*, the creditor, having prevailed in bankruptcy litigation, moved, pursuant to Cal. CCP 685.080 for an award of

fees.  The issue was whether the creditor's motion was timely, given a two year limitation for the making of such a motion. The creditor argued that the two year period was extended by 108(c) so that it was entitled to recover all its fees rather than just the fees cabined within the two year window.  The court disagreed.  "Creditors sought approval under CCP § 685.080 for attorneys' fees incurred postpetition. By its plain language, Section 108(c) extends prepetition statutes of limitation or duration at risk of expiring postpetition; it applies if "such period has not expired before the date of the filing of the petition ...." 11 U.S.C. § 108(c). Because all of the fees were incurred postpetition, CCP § 685.080's two-year period did not commence prepetition and, again, § 108(c) does not apply." *Gilman,Id*.

Here, the Plan created new contractual obligations.  <u>In re Hillis Motors</u>, 997 F.2d.581,588(9th Cir 1993).  These new obligations were post-petition.  Therefore, 108(c)did not apply to extend the statute of limitations period for the newly created obligations created by the Plan.

CONCLUSION

The Court should grant the Motion and direct the clerk to enter discharges for Debtors.

Dated:  1/8/2022                    /s/Stanley Zlotoff

- 6 -